IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>      Plaintiff,<br><br>   vs.<br><br>SUMO-NAN LLC, a Hawaii limited liability company; NAN, INC., a Hawaii corporation, *et al.*<br><br>      Defendants. | CIVIL NO. 14-00520 DKW-KSC<br><br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART LIBERTY MUTUAL'S MOTION TO DISMISS COUNTERCLAIM AND MOTION TO STRIKE [DKT. NO. 36]; AND (2) DENYING SU-MO BUILDERS, INC., SU YONG YI, AND MAUREEN DEE YI'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 58]** |

**ORDER (1) GRANTING IN PART AND DENYING IN PART
LIBERTY MUTUAL'S MOTION TO DISMISS COUNTERCLAIM AND
MOTION TO STRIKE [DKT. NO. 36]; AND (2) DENYING
SU-MO BUILDERS, INC., SU YONG YI, AND MAUREEN DEE YI'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 58]**

## INTRODUCTION

The parties dispute their obligations under a payment and performance bond

issued by Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") relating

to a construction project, as well as various indemnity agreements between Plaintiff

1

and Defendants.   Defendants and Counterclaimants Su-Mo Builders, Inc., Su Yong Yi, and Maureen D. Yi seek summary judgment on the claims asserted against them by Liberty Mutual.   Liberty Mutual seeks dismissal of the counterclaims filed by Su-Mo Builders, Inc., Su Yong Yi, and Maureen D. Yi.[1]   For the reasons set forth below, Liberty Mutual's motion is GRANTED in part and DENIED in part.   Su-Mo Builders, Inc., Su Yong Yi, and Maureen D. Yi's motion for summary judgment is DENIED.

## BACKGROUND

On November 11, 2014, Liberty Mutual filed its Complaint for (1) Breach of Contract of Indemnity; (2) Unjust Enrichment; and (3) Quia Timet against defendants Sumo-Nan LLC ("Sumo-Nan"); Nan, Inc.; Laumaka LLC; Patrick Shin, aka Nan Chul Shin ("Patrick Shin"); Mariko Kaneko Shin; Patrick Shin Trustee of the Patrick Shin Trust ("Shin Trust"); Su-Mo Builders, Inc. ("Sumo"); Su Yong Yi; and Maureen D. Yi.   Liberty Mutual's claims arise from a Miller Act bond it issued on behalf of Sumo-Nan in connection with a construction project at Tripler Army

_____

[1]Liberty Mutual also seeks to dismiss the counterclaims filed by Nan, Inc., Laumaka LLC, Patrick Shin, aka Nan Chul Shin, Mariko Kaneko Shin, and Patrick Shin Trustee of the Patrick Shin Trust (dkt. no. 38), and the counterclaims filed by Sumo-Nan LLC (dkt. no. 40).   The Court defers ruling on those motions to dismiss until a ruling is issued on Counterclaimants Laumaka LLC, Nan, Inc., Patrick Shin, Mariko Kaneko Shin, Patrick Shin Trustee of the Patrick Shin Trust, and Sumo-Nan LLC's pending Motion to Amend Counterclaims (dkt. no. 76).

Medical Center, Contract No. W9128A-11-C-0006 ("TAMC Project"). The Miller

Act required Sumo-Nan to furnish to the government a performance and payment

bond. *See* 40 U.S.C. § 3131 *et seq*.

Liberty Mutual alleges that, as partial consideration for its agreement to

furnish bonds on behalf of Sumo-Nan, Liberty Mutual and all defendants executed

General Agreements of Indemnity and certain Amendments (collectively, "GAI").

*See* Complaint ¶ 17 & Exs. A-1 to A-10 attached to Complaint (GAI). According to

Liberty Mutual, under the GAI, each of the defendants, jointly and severally, agreed

to indemnify Liberty Mutual against any liability for losses, fees, costs, and

expenses that Liberty Mutual incurred as a consequence of issuing the bonds on

behalf of Sumo-Nan or as a consequence of a breach of the GAI. Complaint ¶ 19.

On or about May 26, 2011, Liberty Mutual, as surety, issued to Sumo-Nan, as

principal, a Performance and Labor & Material Payment Bond No. 023-017-103

naming as obligee the United States of America, in the penal sum of $15,996,619.00.

Complaint ¶ 20 & Ex. B attached to Complaint (Bond).

According to Liberty Mutual, Sumo-Nan was unable to meet its obligations

on the TAMC Project, and as a result, Liberty Mutual received claims on the bond,

including demands from subcontractors and suppliers of Sumo-Nan, in excess of

$1,638,409.00. Complaint ¶¶ 25-27. Liberty Mutual made a demand to

defendants to deposit cash or other property as collateral security, to protect Liberty Mutual from claims on the bond, but defendants have failed and/or refused to deposit collateral with Liberty Mutual. Complaint ¶¶ 29-30 & Ex. C attached to Complaint (10/2014 Demand Letter).

Liberty Mutual alleges that defendants failed to perform under the TAMC Project contract, the GAI, and the bond, whereas Liberty Mutual performed its obligations under the GAI and the bond. Complaint ¶¶ 33-36. It seeks damages for breach of contract (Count 1) and unjust enrichment (Count 2), and an injunction preventing defendants from transferring assets to circumvent their obligations to Liberty Mutual (Count 3).

Sumo, Su Yong Yi and Maureen D. Yi (collectively "Sumo Defendants") filed an Answer and Counterclaim against Liberty Mutual on December 2, 2014 ("Sumo Counterclaim"). Sumo Defendants allege that they had no dealings with Liberty Mutual or Nan as to the 2003 GAI. Counterclaim ¶¶ 2-4. Sumo and Nan entered into a Mentor/Protégé Agreement on May 5, 2006, and thereafter created three different joint ventures. Counterclaim ¶¶ 7, 13-15 & Ex. C attached to Sumo Counterclaim (Mentor/Protégé Agreement). The three joint ventures were awarded over $225,000,000 in government work and an accounting of profits is presently the subject of litigation between Nan and Sumo. Counterclaim ¶ 16.

According to Sumo Defendants, Nan contacted Liberty Mutual regarding bonding needs for the joint ventures.   Counterclaim ¶ 12.   Sumo Defendants allege that neither Liberty Mutual nor Nan asked Sumo Defendants to assume any liability for bonds issued on behalf of Sumo-Nan.   Counterclaim ¶¶ 25-26.   Sumo Defendants contend that they never signed any indemnity agreement covering bonds issued for Sumo-Nan.   Counterclaim at 24, ¶ 1.   The Sumo Counterclaim asserts the following claims against Liberty Mutual: breach of contract (Counterclaim 1); (2) fraud and misrepresentation (Counterclaim 2); and (3) punitive damages (Counterclaim 3).

Liberty Mutual asks the Court to dismiss the Sumo Counterclaim and strike exhibits thereto.   Sumo Defendants seek summary judgment with respect to the Liberty Mutual complaint.

## STANDARD OF REVIEW

### I.    Liberty Mutual's Motion to Dismiss and Motion to Strike

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570

(2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

Under Rule 12(f), a court has discretion to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 974 (9th Cir. 2010) (citation omitted).

## II.  Sumo Defendants' Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

# DISCUSSION

## I.  Liberty Mutual's Motion to Dismiss and Motion to Strike

Liberty Mutual seeks dismissal of the Sumo Counterclaim and asks the Court to strike references to matters prohibited by Federal Rule of Evidence 408.   For the reasons set forth below, the motion is granted with respect to dismissal and denied with respect to the motion to strike, and Sumo Defendants are granted leave to file an amended counterclaim.

### A.  Counterclaim 1 (Breach of Contract)

A breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract.   *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also Otani v. State Farm Fire & Cas. Co*., 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, however, the complaint must, at minimum, cite the

contractual provision allegedly violated.   Generalized allegations of a contractual

breach are not sufficient . . . the complaint must specify what provisions of the

contract have been breached to state a viable claim for relief under contract law.”)).

Liberty Mutual argues that Sumo Defendants fail to satisfy the third, fourth,

and fifth elements required to maintain their breach of contract claim.   In

opposition, Sumo Defendants argue that they are not indemnitors on the bond –

rather, they are indemnitors only for bonds issued on behalf of Su-Mo/Nan JV and

Sumo Builders, Inc., but not the bond issued to Sumo-Nan, LLC, which is the

subject of this case.   Sumo Defendants argue that they have performed their

contractual obligations of indemnity, and sufficiently alleged performance to

maintain a claim for breach of contract.   *See* Mem. in Opp. to Liberty Mutual

Motion at 17-18.   The Court disagrees.

The Sumo Counterclaim alleges that Liberty Mutual is in breach of the GAI.

Sumo Defendants, however, do not allege that they performed under the GAI, which

particular provisions of the GAI that Liberty Mutual breached, or when and how

Liberty Mutual breached the GAI and damaged Sumo Defendants.   Rather, Sumo

Defendants appear to allege that the filing of the Liberty Mutual complaint itself

caused their damages, but does not specify how the filing of such complaint violated

any provision of the GAI.   *See* Sumo Counterclaim at 25-26, ¶¶ U.1.-2. (“As a

result of this Complaint, the Sumo Defendants are subject to a claim in excess of $1,000,000.00. As a result of this Complaint, Sumo is in a situation where Liberty is seeking wrongfully to tie up the assets of the Sumo Defendants which now jeopardizes the bonding ability of Sumo and its ability to continue its business.").

Moreover, to the extent Sumo Defendants allege misconduct by Nan, it fails to state a claim for breach of contract against Liberty Mutual. For example, the Sumo Counterclaim alleges that Liberty Mutual negotiated the terms of the GAI and/or bond exclusively with Nan, and did not deal directly with Sumo Defendants or discuss documents with Sumo Defendants. *See, e.g.,* Sumo Counterclaim at 3, ¶ C.3. ("Liberty at no time had any dealings with the Sumo Defendants as to the 2003 GAI of the 2003 GAI Amendments"). Such allegations, however, failure to identify any misconduct by Liberty Mutual with respect to any agreement between the parties, and fails to state a plausible claim for breach of contract.

To the extent Sumo Defendants claim that Liberty Mutual wrongfully accomplished amendments to the 2003 GAI without the agreement of Sumo Defendants, in violation of the 2003 GAI, they fail to account for the March 2, 2011 GAI executed by Sumo, Su Yong Yi and Maureen D. Yi ("2011 GAI"). The 2011 GAI states:

This General Agreement (hereinafter the "Agreement") is made and entered into by the following individuals, partnerships, corporations, and/or other business entities, as applicable, Su-Mo Builders, Inc.; Su Yong Yi; Maureen D. Yi (individually and collectively hereinafter called the "Indemnitors(s)") jointly and severally, in favor of Liberty Mutual Insurance Company and any other company that is part of or added to the Liberty Mutual Group, severally not jointly, and for which Liberty Mutual Surety underwrites surety business (individually and collectively hereinafter called the "Surety") with respect to any surety bond, undertaking, recognizance, instrument of guarantee or other surety obligations (hereinafter called the "Bond(s)") requested from and/or issued by the Surety before or after the date of this Agreement, for I) Su-Mo Builders, Inc.; Su Yong Yi; Maureen D. Yi; and any Indemnitor added hereto by Amendment; II) any of the Indemnitors of Principals' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and III) any other entity or person in response to a request from any Indemnitor or Principal named herein, and, as to all of the foregoing, whether they act alone or in joint venture with others and whether or not said others are named herein (Individually and collectively hereinafter called the "Principal(s)").

Ex. A-10 to Complaint (2011 GAI) at 1. Sumo Defendants' opposition is silent with respect to the 2011 GAI. Nor is it alleged in the Sumo Counterclaim that Sumo Defendants performed their obligations under the 2011 GAI. Accordingly, at this stage in the litigation, Sumo Defendants' breach of contract claim based on any prohibition on oral amendments to the GAI lacks facial plausibility in the face of the uncontested 2011 GAI.

Sumo Defendants fail to state a claim for breach of contract against Liberty Mutual in Counterclaim 1 and Liberty Mutual's Motion is GRANTED as to that claim.   Because amendment may be possible, the dismissal is with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

### B.    Counterclaim 2 (Fraud and Misrepresentation)

In their second counterclaim, Sumo Defendants allege that the "actions of Liberty [Mutual] are based upon false and fraudulent representations as against the Sumo Defendants and warrant a cause of action for fraud and misrepresentation." Sumo Counterclaim at 27, ¶ W.2.   The Sumo Counterclaim, however, does not allege any specific representations made by Liberty Mutual to Sumo Defendants or otherwise identify the circumstances constituting fraud.

> Rule 9(b) of the Federal Rules of Civil Procedure requires that, when fraud or mistake is alleged, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed.R.Civ.P. 9(b).   An allegation of fraud is sufficient under Rule 9(b) if it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."   *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (internal citations and quotations omitted).   To sufficiently identify the circumstances that constitute fraud, a plaintiff must identify such facts as the

11

times, dates, places, or other details of the alleged fraudulent activity. *Id.* A plaintiff must plead these evidentiary facts and must explain why the alleged conduct or statements are fraudulent:

> Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994).

> *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Allegations of fraud based on information and belief do not satisfy Rule 9(b) if the factual bases for the belief are not included. *Neubronner*, 6 F.3d at 672.

*Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1036-37 (D. Haw. 2012). Sumo Defendants do not allege fraudulent misrepresentation with the specificity required by Rule 9(b). *See, e.g., Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1042 (9th Cir. 2010) (stating that plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice").

Nor do Sumo Defendants allege any representations made by Liberty Mutual to themselves.

> To survive a motion to dismiss an intentional or fraudulent
> misrepresentation claim, a plaintiff must allege that (1) false
> representations were made by the defendant, (2) with knowledge
> of their falsity (or without knowledge of their truth or falsity), (3)
> in contemplation of the plaintiff's reliance upon them, and (4)
> the plaintiff detrimentally relied on them. *Hawaii's Thousand
> Friends v. Anderson,* 70 Haw. 276, 286, 768 P.2d 1293, 1301
> (1989).

*Illinois Nat'l Ins. Co*., 870 F. Supp. 2d at 1037. To the extent Sumo Defendants

allege that any representations were made, they appear to relate to Nan, rather than

Liberty Mutual. *See, e.g.,* Sumo Counterclaim at 20, ¶ O.7. ("Nan asked only

SuYong in his capacity as President of Sumo, Managing Venturer for Sumo-Nan,

LLC to sign this document on behalf of Sumo-Nan, LLC."); ¶ O.9. ("Nan never

asked the Sumo Defendants to review or approve or sign this document."); ¶ T.1.

("Liberty had no communication with the Sumo Defendants and left all

communication as to the 2003 GAI and the amendments to Nan."). Sumo

Defendants do not allege any communication with or refusal by Liberty Mutual to

provide documents to them.

In sum, Sumo Defendants fail to state a claim for fraud or fraudulent

misrepresentation against Liberty Mutual and fail to allege fraud with particularity.

Liberty Mutual's Motion is GRANTED as to Counterclaim 2. Because amendment

may be possible, this dismissal is with leave to amend.

## C.    Counterclaim 3 (Punitive Damages)

Sumo Defendants' Counterclaim 3 seeks punitive damages, alleging that:

> 2.    The actions of Liberty are intentionally taken and with
> total disregard for the rights of the Sumo Defendants and . . .
> Liberty has persisted with the pursuit of this Complaint against
> the Sumo Defendants.
>
> 3.    Such actions on the part of Liberty entitle the Sumo
> Defendants to recover such damages, fees and costs as warranted
> for malice.

Sumo Counterclaim at 27.

Counterclaim 3 requests relief that is derivative of Sumo Defendants' other claims.   A claim for punitive damages is not an independent tort, but a remedy that is incidental to another cause of action.   *See Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.,* 879 P.2d 1037, 1049 (Haw. 1994) (citing *Kang v. Harrington*, 587 P.2d 285, 291 (Haw. 1978) (holding that a claim for punitive damages "is not an independent tort, but is purely incidental to a separate cause of action"); *see also United States ex rel. Lockyer v. Haw. Pac. Health*, 490 F. Supp. 2d 1062, 1088-89 (D. Haw. 2007) (holding that, to the extent that the complaint could be read to allege a separate and independent cause of action for punitive damages, the defendant would be entitled to summary judgment on that count); *Hale v. Hawaii Publs., Inc*., 468 F. Supp. 2d 1210, 1233 (D. Haw. 2006) (granting motion for summary judgment as to a separate

claim for punitive damages, but noting that the plaintiff could seek punitive damages as part of prayer for relief).

Liberty Mutual's motion is GRANTED, and Counterclaim 3 is dismissed without leave to amend to include a stand-alone claim for punitive damages. Because punitive damages *may* be available as a remedy for other causes of action, Sumo Defendants are granted leave to include such a request in their amended counterclaim, if supported by the allegations therein.

### D.    Motion to Strike

In addition to seeking dismissal, Liberty Mutual asks the Court to strike portions of the Sumo Counterclaim and Exhibits E, G, H, and I attached thereto, pursuant to Rule 12(f), which provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

> The function of a 12(f) motion is to avoid the waste of time and money spent on litigating spurious issues by dispensing with those issues before trial. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Grounds for a motion to strike must be readily apparent from the face of the pleadings or from materials that may be judicially noticed. *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 554 (D. Haw. 1998).
>
> A matter will not be stricken from a pleading unless it is clear that it can have no possible bearing on the subject matter of the litigation. *Id.* A matter is "immaterial" if it "has no essential

or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2004). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. *Wailua Assocs.*, 183 F.R.D. at 553 (noting that an allegation is impertinent when it is irrelevant). Thus, courts will generally grant a motion to strike only when the moving party has proved that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002); *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

*Clemmons v. Hawaii Med. Servs. Ass'n*, 273 F.R.D. 653, 656 (D. Haw. 2011).

Liberty Mutual contends that the exhibits – letters between counsel – should be stricken because they are "statement[s] made during compromise negotiations" and are therefore inadmissible under Federal Rule of Evidence 408(a) to prove or disprove the validity or amount of a disputed claim, or to impeach by a prior inconsistent statement or a contradiction. For example, Exhibit E is an October 22, 2014 letter from Samuel P. King, Jr. (counsel for Nan, Inc., Laumaka LLC, Patrick Shin, Mariko Kaneko Shin, and Patrick Shin Trustee of the Patrick Shin Trust) to Roy Ogawa (counsel for Liberty Mutual); and Exhibit I is a November 26, 2014 letter from Bert Kobayashi, Jr. (counsel for Sumo Defendants) to Roy Ogawa, with the October 22, 2014 letter from Mr. King as an Enclosure. Liberty Mutual also

asks the Court to strike Paragraph T of the Counterclaim on the basis that it is

immaterial, impertinent, prejudicial, scandalous, and also violates Federal Rule of

Evidence 408 as it references the settlement communication letters.

Federal Rule of Evidence 408(a) provides:

> (a) Prohibited uses.—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
>> (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>>
>> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

At this early stage of the litigation, without so much as an offer of any of the

challenged information or documents into evidence, much less an explanation of

what any such offer would be intended to prove, the Court cannot discern whether

the information that Liberty Mutual seeks to strike is or will be inadmissible under

Rule 408(a).[2]  *See Henrikson v. Turbomeca, S.A.,* 2006 WL 3929541, at *3 (E.D.

Cal. Dec. 13, 2006) ("Put simply, the determination as to whether evidence is

inadmissible is not ripe for decision until an offer has actually been made to

introduce the challenged material into evidence."); *Lopez v. Hartley*, 2010 WL

4718396, at *5 (E.D. Cal. Nov. 12, 2010) ("Evidence should not be submitted to the

Court until this action reaches an appropriate stage in litigation for the submission of

_____

[2]The Court notes that there appears to be disagreement regarding whether Rule 12(b)(7) is a proper vehicle to strike purported compromise negotiations under Federal Rule of Evidence 408(a).  *See, e.g., Brkovich v. Dynacom Indus., Inc*., No. 2011 WL 7052128, at *2 (W.D. Pa. Nov. 10, 2011) (striking as immaterial and impertinent portions of complaint and exhibits that reference offers of compromise); *Fid. Nat'l Title Co. v. Law Title Ins. Co.,* 2005 WL 1126899, at *6 (N.D. Ill. May 3, 2005) (granting under Rule 408(a) a motion to strike a letter offering settlement that was attached to the complaint, stating that "a contrary conclusion would undermine the Rule's purpose of encouraging settlement negotiations"); *Stewart v. Wachowski*, 2004 WL 5618386, at *2 (C.D. Cal. Sept. 28, 2004) ("Courts have used Rule 12(f) to strike allegations from complaints that detail settlement negotiations within the ambit of Rule 408.") (citing cases); *but cf. B.W.P. Distributors, Inc. v. OE Plus, Ltd.,* 2009 WL 1154102, at *10 (S.D.N.Y. Mar. 31, 2009) ("[I]t is not clear that evidence relating to the challenged allegations . . . would be offered in order to prove liability for or invalidity of [a] claim that is purportedly being negotiated in the conversations.  Thus, at this preliminary stage, the questions raised by Counterclaim- Defendants would be more easily determinable after adequate discovery."); *Agan v. Katzman & Korr, P.A.,* 328 F. Supp. 2d 1363, 1374 (S.D. Fla. 2004) (denying motion to strike, finding that "the fact that they are not properly subject to a motion to strike at the pleading stage does not mean that the district court cannot entertain these arguments as to their admissibility at trial on a motion in limine"); *Eskofot A/S v. E.I. Du Pont De Nemours & Co*., 872 F. Supp. 81, 94 (S.D.N.Y. 1995) ("When confronted with a motion to strike a portion of a pleading, a court should consider whether there is any possibility that the pleading could form the basis for admissible evidence. . . .  Although the Court, views it as possible that the disputed paragraphs will ultimately be stricken, pursuant to Fed.R.Civ.P. 12(f) and Fed.R.Evid. 408, it finds that it would be improper to do so, on the facts of this case, at the present point in the proceeding."); *Lipsky v. Commonwealth United Corp*., 551 F.2d 887, 893 (2d Cir. 1976) ("Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. . . .  And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone").

evidence, such as in response to a motion for summary judgment, at trial, or when specifically requested by the Court. Further, if and when this action reaches an appropriate stage in litigation for the submission of evidence, Plaintiff will not be able to refer to exhibits attached to his complaint as evidence.").

To the extent Liberty Mutual argues that it is prejudiced by the contents of the Sumo Counterclaim and exhibits thereto, the Court notes that the allegations in a counterclaim or complaint are not "evidence" presented to the jury. As it is not the practice of the Court to admit civil pleadings into evidence, Liberty Mutual's concern that these exhibits will mislead the jury is not warranted at present, but may be raised later, if necessary. *See, e.g., McCrae Associates, LLC v. Universal Capital Mgmt., Inc.*, 554 F. Supp. 2d 249, 257 (D. Conn. 2008) ("Moreover, because a complaint is not submitted to the jury, the danger of unfair prejudice is minimal."); *Nat'l Council of Young Israel v. David Wolf*, 963 F. Supp. 276, 282 (S.D.N.Y. 1997) ("Inasmuch as the Court does not submit pleadings to the jury in civil cases, it is difficult to see how a defendant is prejudiced by the presence in the complaint of material such as that at issue here."); Wright & Miller § 1382 (stating that "if the complaint will not be submitted to the jury, . . . there is less need to strike").

In any event, because the Court has granted Liberty Mutual's motion to dismiss the Sumo Counterclaim, the motion to strike is moot, and the Court declines

to additionally strike the exhibits and allegations challenged by Liberty Mutual's motion. *See Wailua Assocs. v. Aetna Casualty and Surety Co.,* 183 F.R.D. 550, 553-54 (D. Haw. 1998) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied[.]").

### E.   Summary

Liberty Mutual's motion is GRANTED in part and the Sumo Counterclaim is DISMISSED with leave to amend.   Liberty Mutual's motion is DENIED to the extent it requests that certain exhibits and references thereto in the Sumo Counterclaim be stricken.   Sumo Defendants are granted until June 15, 2015 to file an amended counterclaim.

## II.   Sumo Defendants' Motion for Summary Judgment

The Court next turns to Sumo Defendants' motion seeking summary judgment on the three claims set forth in Liberty Mutual's complaint: (1) breach of contract of indemnity; (2) unjust enrichment; and (3) Quia Timet.   Sumo Defendants contend that they are entitled to summary judgment because "no document exists in which the Sumo Defendants agreed to be personally responsible for bonds issued to Sumo-Nan, LLC."   Sumo Defendants' Reply at 2.

## A. <u>Breach of Contract (Count 1)</u>

Sumo Defendants argue that they are entitled to summary judgment on Count 1 because Liberty Mutual cannot establish two elements of its breach of contract claim: (1) the existence of a valid contract; and (2) that defendant's failure to perform the contract was unjustified or unexcused.   In opposition, Liberty Mutual points to three General Agreements of Indemnity executed by Sumo Defendants: a June 14, 2007 GAI ("2007 GAI"); September 16, 2009 GAI ("2009 GAI"); and March 2, 2011 GAI ("2011 GAI").   Under the 2007 GAI, Sumo Defendants were added as "Indemnitors" and "Principals" to the pre-existing 2003 GAI:

> Su-Mo/Nan JV; Su-Mo Builders, Inc.; Su Yong Yi; Maureen Dee Yi are hereby added to the Agreement as Indemnitor(s) and Principal(s) and shall be bound by all of its terms only for Bonds issued to or on behalf of Su-Mo/Nan JV; Su-Mo Builders, Inc. Notwithstanding any language in the Agreement to the contrary, the Indemnitors listed in this paragraph shall not be obligated as Indemnitors for Bonds issued to any Principal other than set forth above without a written request to the Surety for such Bonds.

Liberty Mutual Concise Statement of Facts ("CSF"), Ex. A-4 (2007 GAI).   Sumo Defendants argue that the last sentence in the 2007 GAI quoted above specifically excludes Sumo Builders, Su Yong YI, and Maureen Dee Yi from any obligation to indemnify Liberty Mutual on any bond written to Sumo-Nan as principal.   Liberty Mutual argues that the term "Principal" is undefined in the 2007 GAI, and that the

Court therefore must look to the 2003 GAI, which includes the following definition

of the term:

> ii) any of the Indemnitors or Principals' subsidiaries or affiliates,
> whether present or future, and whether directly or indirectly
> held; iii) any other entity or person in response to a request from
> any Indemnitor or Principal named herein, and, as to all of the
> foregoing, whether they act alone or in joint venture with others
> and whether or not said others are named herein (individually
> and collectively hereinafter called the "Principal(s)").

Liberty Mutual CSF, Ex. A-1 (2003 GAI).   Liberty Mutual contends that the

various GAIs obligate the Sumo Defendants for the bond issued to Sumo-Nan as an

"affiliate."

Liberty Mutual also points to the 2009 GAI and 2011 GAI, under which the

Sumo Defendants agreed to indemnify Liberty Mutual:

> with respect to any surety bond, undertaking, recognizance,
> instrument of guarantee or other surety obligations (hereinafter
> called the "Bond(s)) requested from and/or issued by the Surety
> before or after the date of this agreement for I) Su-Mo Builders;
> Inc., Su Yong Yi; Maureen Dee Yi; and any Indemnitor added
> hereto by Amendment; II) any of the Indemnitors or Principals'
> subsidiaries or affiliates, whether present or future, and whether
> directly or indirectly held; and, III) any other entity or person in
> response to a request from any Indemnitor or Principal named
> herein, and, as to all of the foregoing, whether they act alone or
> in joint venture with others and whether or not said others are
> named herein (individually and collectively hereinafter referred
> to as "Principal(s)").

Liberty Mutual CSF, Ex. A-10 (2011 GAI); *see also* Ex. B-1 (2009 GAI) (same language).   According to Liberty Mutual, "Principal" includes Su-Mo's affiliates, "present or future," whether they act alone or "in joint ventures with others."   In opposition to the motion for summary judgment, Liberty Mutual presents evidence that Sumo-Nan LLC Joint Venture is an "affiliate" and a joint venturer owned and controlled by Sumo.   *See* Declaration of Sam Barker ¶ 15; Ex. H (2011 Joint Venture Agreement).   Liberty Mutual also presents evidence that the bond was issued to Sumo-Nan in response to a request from Aon Risk Services Inc. of Hawaii, the licensed broker and agent for Sumo and Nan for construction surety bonds.   *See* Declaration of Michael T. Oliver, Jr. ¶¶ 5-12; Declaration of Travis Remick ¶¶ 3-18. The bond itself was signed by Su Yong Yi as "Managing Partner" for the Principal, Sumo-Nan.   Liberty Mutual CSF, Ex. D (Bond).   Sumo Defendants dispute the applicability of the Joint Venture Agreement and Liberty Mutual's interpretation of the GAI, and the intent of the parties to be bound by certain agreements.

Based upon the current record before the Court, and construing the facts in the light most favorable to Liberty Mutual, the Court finds that issues of fact preclude summary judgment on the claim for breach of contract of indemnity.   Accordingly, the motion for summary judgment is DENIED as to Count 1 of Liberty Mutual's complaint.

### B. __Unjust Enrichment (Count 2)__

Sumo Defendants seek summary judgment on Count 2 because "the bond was issued for the benefit of Su-Mo/Nan LLC, a joint venture of Sumo and Nan . . . [and] the profits and losses of Su-Mo/Nan LLC are shared by Sumo and Nan."   Sumo Defendants Motion at 7.   They contend that, because Su Yong Yi and Maureen Yi are "owners of Sumo," the "retention of the benefit, assuming the Complaint references the payments made as to the bond issued on behalf of Su-Mo/Nan LLC are not 'unjust' as to the Sumo Defendants."   *Id.*

An unjust enrichment claim consists of two elements: "(a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs."   *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 2441707, at *12 (D. Haw. June 14, 2011) (*citing Porter v. Hu*, 116 Hawaiʻi 42, 53, 169 P.3d 994, 1005 (App. 2007)).   The complaint alleges in Count 2 that Liberty Mutual issued the bond on behalf of Sumo-Nan at the request of all defendants, and incurred significant losses as a result.   Complaint ¶ 39.

> 40.   To date, Liberty has paid numerous claims against the Bond.   The losses incurred to date by Liberty remain un-reimbursed by the Defendants and the total losses incurred by Liberty will likely have a reasonable value of at least $1,600,000.00.

41.     The Defendants received the benefits of Liberty's performance, and continue to enjoy the benefits there under, but have not compensated Liberty for the losses incurred and to be incurred in settling claims made against the Bond.   The Defendants, therefore, have been unjustly enriched.

42.     Liberty has made repeated requests for exoneration and indemnification, but the Defendants have failed and refused to exonerate and indemnify Liberty.

Complaint ¶¶ 40-42.

There appears to be no dispute that Liberty Mutual conferred a benefit upon all defendants by paying claims made against the bond.   *See* Barker Decl. ¶ 13 & Ex. G (Claims Against Bond Spreadsheet).   To the extent Sumo Defendants argue that the retention of any benefit – including payments made on the bond – is not "unjust" as to them, they have not established that they are entitled to summary judgment.   In opposition, Liberty Mutual points to the Joint Venture Agreement between Sumo and Nan, which expressly states that those parties "will be jointly and severally liable to the surety . . . on such bonds and indemnity agreements."   Liberty Mutual Mem. in Opp. at 18; Ex. H (TAMC Joint Venture Agreement).

On the current record, there are issues of fact as to whether Sumo Defendants' alleged retention of bonded contract funds and refusal to indemnify Liberty Mutual is unjust as matter of law.   Construing the facts in the light most favorable to Liberty Mutual, the Court finds that issues of fact preclude summary judgment on

the claim for unjust enrichment.    Accordingly, the motion for summary judgment is

DENIED as to Count 2 of Liberty Mutual's complaint.

### C.    Quia Timet (Count 3)

In Count 3, Liberty Mutual alleges that all defendants are obligated under the

doctrine of Quia Timet to post collateral security in favor of Liberty Mutual for

losses and expenses to be incurred on the bond.    Complaint ¶ 47.    According to

Liberty Mutual, defendants seek to avoid their GAI indemnity obligations "by

transferring and/or conveying their assets to satisfy obligations other than those

covered by the Bond or otherwise included within the scope of the GAI, or

liquidating their assets and avoiding the jurisdiction of this Court."    Complaint

¶ 48.    Liberty Mutual asks the Court to enjoin defendants from transferring assets.

"The doctrine of quia timet 'allows a person to seek equitable relief from

future probable harm to a specific right or interest.'"    *Hudson Ins. Co. v. Simmons*

*Const., LLC*, 2012 WL 869383, at *3 (D. Ariz. Mar. 14, 2012) (quoting Black's Law

Dictionary 1367 (9th ed. 2009)).    "Quia timet allows the surety to prevent the

principal from dissipating . . . funds if the surety knows it will be called upon to 'pay

the debt or perform the obligation' on the bond, suspects that the principal has some

or all of the necessary funds to do so, and fears that the principal may abscond with

26

those funds." *Am. Contractors Indem., Co. v. Bigelow*, 2011 WL 5546052, at *10 (D. Ariz. Apr. 11, 2011) (citation omitted).

To the extent the Sumo Defendants argue that no cause of action for Quia Timet is recognized under these circumstances, the Court disagrees. *See, e.g., Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1002 (N.D. Cal. 2010) ("Bills quia timet are ordinarily applied to prevent anticipated mischief, not to redress wrongs after they have occurred. Bills quia timet are most often filed in surety cases, where a surety, after the debt for which he is liable has become due, seeks to compel the principal to pay the debt.") (citation omitted). Ninth Circuit cases have applied the doctrine in the surety context to both principals and indemnitors.[3] *See, e.g., Milwaukie Const. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 965-66 (9th Cir. 1966). At this early stage of the litigation, Sumo Defendants have not established that they are entitled to judgment as a matter of law on this claim.

To the extent Sumo Defendants argue that no contract exists to establish a surety relationship between them and Liberty Mutual, the Court rejects this

_____

[3]Although bills of quia timet do not appear frequently in this jurisdiction's case law, they do not appear to be altogether foreclosed, under the circumstances. *See Am. Motorists Ins. Co. v. The Club at Hokuli'a, Inc*., 2010 WL 5389221, at *8 n.1 (D. Haw. Dec. 21, 2010) ("The court is uncertain as to whether quia timet, is a viable cause of action in Hawaii, as the most recent Hawaii state appellate published ruling on the availability of a bill quia timet appears to have been in 1926.") (citing *Jellings v. Baldwin*, 29 Haw. 494 (1926)).

contention for the reasons discussed above.   Moreover, in opposition, Liberty

Mutual presents additional documents supporting its belief that Sumo Defendants

are disposing of assets in a way that prejudices Liberty Mutual.   *See* Liberty Mutual

CSF, Exs. I & J (State Court Complaint and Counterclaim).   Sumo Defendants'

reply brief is silent with respect to this claim.

On the current record, there are genuine issues of material fact and Sumo

Defendants fail to meet their burden on summary judgment as to Count 3.

Accordingly, the motion for summary judgment is DENIED as to Count 3 of Liberty

Mutual's complaint.

### D.   **Summary**

Sumo Defendants' motion for summary judgment is DENIED.   Liberty

Mutual's request for a continuance pursuant to Federal Rule of Civil Procedure

56(d) is DENIED as moot.

## CONCLUSION

For the foregoing reasons, Liberty Mutual's motion (Dkt. No. 36) is

GRANTED in part and the Sumo Counterclaim is DISMISSED with leave to

amend.   Liberty Mutual's motion (Dkt. No. 36) is DENIED in part to the extent it

requests that certain exhibits and references thereto in the Sumo Counterclaim be

stricken.   Sumo Defendants are granted until **June 15, 2015** to file an amended

counterclaim in accordance with this order.   Sumo Defendants' motion for summary judgment is DENIED.   (Dkt. No. 58)

IT IS SO ORDERED.

DATED: May 20, 2015 at Honolulu, Hawaiʻi.

_____
Derrick K. Watson
United States District Judge

---

Liberty Mutual Ins. V. Sumo-Nan LLC et al., Civil No. 14-00520 DKW-KSC;
**ORDER (1) GRANTING IN PART AND DENYING IN PART
LIBERTY MUTUAL'S MOTION TO DISMISS COUNTERCLAIM AND
MOTION TO STRIKE [DKT. NO. 36]; AND (2) DENYING
SU-MO BUILDERS, INC., SU YONG YI, AND MAUREEN DEE YI'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 58]**