IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SUMO-NAN LLC, a Hawaii limited liability company; NAN, INC., a Hawaii corporation, *et al.*<br><br>Defendants. | CIVIL NO. 14-00520 DKW-KSC<br><br>ORDER GRANTING IN PART AND DENYING IN PART LIBERTY MUTUAL INSURANCE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS AND MOTIONS TO STRIKE PLEADINGS |

**ORDER GRANTING IN PART AND DENYING IN PART
LIBERTY MUTUAL INSURANCE COMPANY'S MOTIONS TO
DISMISS COUNTERCLAIMS AND MOTIONS TO STRIKE PLEADINGS**

**INTRODUCTION**

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") seeks

dismissal of the two separate counterclaims filed by defendants (1) Sumo-Nan LLC

("Sumo-Nan"); and (2) Nan, Inc.; Laumaka LLC; Patrick Shin, aka Nan Chul Shin

("Patrick Shin"); Mariko Kaneko Shin; and Patrick Shin, Trustee of the Patrick Shin

Trust ("Shin Trust"). The parties dispute their obligations under a payment and performance bond issued by Liberty Mutual relating to a construction project, as well as under various indemnity agreements. For the reasons set forth below, Liberty Mutual's motions are GRANTED in part and DENIED in part.

## BACKGROUND

The Court and the parties are familiar with the factual background of this dispute, which is set forth in the Court's previous Order Granting In Part and Denying In Part Liberty Mutual's Motion to Dismiss Defendants' Su-Mo Builders, Inc., Su Yong Yi, and Maureen D. Yi's Counterclaim and to Strike Pleadings, entered on May 20, 2015 ("Order"). *See* Dkt. No. 87. The Court recounts the following information relevant to the instant motions.

On November 11, 2014, Liberty Mutual filed its Complaint for (1) Breach of Contract of Indemnity; (2) Unjust Enrichment; and (3) Quia Timet against defendants Sumo-Nan; Nan, Inc.; Laumaka LLC; Patrick Shin; Mariko Kaneko Shin; and the Shin Trust; as well as the Sumo Defendants. Liberty Mutual's claims arise from a Miller Act bond it issued on behalf of Sumo-Nan in connection with a construction project at Tripler Army Medical Center, Contract No. W9128A-11-C-0006 ("TAMC Project"). The Miller Act required Sumo-Nan to furnish to the government a performance and payment bond. *See* 40 U.S.C. § 3131

*et seq*.; *see also United States ex rel. Int'l Bus. Machines Corp. v. Hartford Fire Ins. Co*., 112 F. Supp. 2d 1023, 1029 (D. Haw. 2000) ("Under the Miller Act . . . , a general contractor on a federal construction project must post a bond to protect all suppliers of labor and material for the project.").

Liberty Mutual alleges that, as partial consideration for its agreement to furnish bonds on behalf of Sumo-Nan, Liberty Mutual and all defendants executed General Agreements of Indemnity and certain Amendments (collectively, "GAI"). *See* Complaint ¶ 17 & Exs. A-1 to A-10 attached to Complaint (GAI).   According to Liberty Mutual, under the GAI, each of the defendants, jointly and severally, agreed to indemnify Liberty Mutual against any liability for losses, fees, costs, and expenses that Liberty Mutual incurred as a consequence of issuing the bond on behalf of Sumo-Nan or as a consequence of a breach of the GAI.   Complaint ¶ 19. On or about May 26, 2011, Liberty Mutual, as surety, issued to Sumo-Nan, as principal, a Performance and Labor & Material Payment Bond No. 023-017-103 naming as obligee the United States of America, in the penal sum of $15,996,619.00. Complaint ¶ 20 & Ex. B attached to Complaint (Bond).

According to Liberty Mutual, Sumo-Nan was unable to meet its obligations on the TAMC Project, and as a result, Liberty Mutual received claims on the bond, including demands from subcontractors and suppliers of Sumo-Nan, in excess of

$1,638,409.00.   Complaint ¶¶ 25-27.   Liberty Mutual made a demand to defendants to deposit cash or other property as collateral security, to protect Liberty Mutual from claims on the bond, but defendants have failed and/or refused to deposit collateral with Liberty Mutual.   Complaint ¶¶ 29-30 & Ex. C attached to Complaint (10/2014 Demand Letter).

Liberty Mutual alleges that defendants failed to perform under the TAMC Project contract, the GAI, and the bond, whereas Liberty Mutual performed its obligations under the GAI and the bond.   Complaint ¶¶ 33-36.   It seeks damages for breach of contract (Count 1) and unjust enrichment (Count 2), and an injunction preventing defendants from transferring assets to circumvent their obligations to Liberty Mutual (Count 3).

Nan, Inc., Laumaka LLC, Patrick Shin, aka Nan Chul Shin, Mariko Kaneko Shin, and the Shin Trust (collectively "Nan Defendants") filed their Answer, Crossclaim against the Sumo Defendants, and Counterclaim against Liberty Mutual on December 15, 2014.   Sumo-Nan filed its Answer and Counterclaim against Liberty Mutual on December 16, 2014.   Liberty Mutual asks the Court to dismiss the counterclaims filed by the Nan Defendants and Sumo-Nan and to strike portions thereof.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 555 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

## DISCUSSION

Liberty Mutual seeks dismissal of the Nan Defendants' and Sumo-Nan's Counterclaims and asks the Court to strike references to matters prohibited by

Federal Rule of Evidence 408. For the reasons set forth below, the motions are granted with respect to dismissal and denied with respect to the requests to strike. Defendants are granted leave to file amended counterclaims consistent with this Order.

## I.     The Nan Defendants' Counterclaims Are Dismissed

The Nan Defendants allege the following counterclaims against Liberty Mutual: (1) complete or *pro tanto* discharge (Count I); (2) breach of contract (Count II); (3) contractual breach of implied covenant of good faith and fair dealing (Count III); (4) misrepresentation (Count IV); (5) unjust enrichment (Count V); (6) unfair and deceptive trade practices (Count VI); (7) declaratory relief (Count VII); and (8) punitive damages (Count VIII). The Court addresses each in turn.

### A.     Complete or *Pro Tanto* Discharge (Count I)

The Nan Defendants allege that Liberty Mutual's conduct increased the risk of loss to them "by decreasing their potential ability to cause [Sumo Defendants] to bear the cost of performance," and as a result the Nan Defendants "have been discharged, completely or *pro tanto*, from their obligations under the GAI." Nan Defendants' Counterclaim ¶¶ 20-21. Liberty Mutual moves to dismiss the claim for discharge because the Nan Defendants are not sureties.

"A performance bond surety may discharge its obligation to the government on a defaulted contract either by taking over and completing performance of the contract or, if it lets the government reprocure the contract, by assuming liability for the costs of completion that exceed the original contract price." *Hartford Fire Ins. Co. v. United States*, 108 Fed. Cl. 525, 531 (2012) (citing *Westchester Fire Ins. Co. v. United States*, 52 Fed. Cl. 567, 574 (2002)). "The theory of discharge began as a state law *defense* that a surety could assert to avoid enforcement of its bond obligation on the grounds that the obligee (the beneficiary of the bond) had taken improper actions which prejudiced the surety by increasing its financial risk." *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1313 (Fed. Cir. 2011). Notably, however, to the extent an affirmative cause of action exists for discharge, it is limited to a surety.

> [O]ver time, the state law theory of impairment of suretyship/*pro tanto* discharge evolved to encompass not only a defense, but also an affirmative cause of action that allows a surety to seek damages from an obligee after fully performing its bond obligation despite having an impairment of suretyship defense. *See* Restatement (Third) of Suretyship and Guaranty § 37(4) ("If the obligee impairs the [surety's] suretyship status . . . the [surety] has a claim against the obligee with respect to such performance to the extent that such impairment would have discharged the [surety] with respect to that performance."); *id.* cmt. a (noting that "this section and §§ 39-44 provide rules discharging the [surety] from liability . . . and providing for recovery from the obligee if the loss has already occurred

7

because the [bond] obligation has been performed"). When a surety fully performs even though it would have had a right to withhold some amount of performance had it asserted a *pro tanto* discharge defense, the surety has effectively overpaid on its bond obligation. In such cases, "the [surety] is harmed and, but for [a cause of action to recover the excess amount paid], the obligee would receive a windfall." *Id.* at § 37(4) cmt. d. Thus, the surety' affirmative cause of action for impairment of suretyship stems not from an equitable assignment of rights (like equitable subrogation), but rather is based on an implied-in-law contract theory—i.e., a recovery in the nature of quantum meruit or quantum valebant.

*Lumbermens Mut. Cas. Co*, 654 F.3d at 1314-15 (alterations in original); *see also id.* at 1317 ("If a surety concludes that the government has improperly impaired its collateral, the surety has the right to withhold payment on the bond, to the extent the surety has been prejudiced, based on the defense of impairment of suretyship/*pro tanto* discharge.").

Generally, a surety is one who is liable for the debt or obligation of another, whether primarily or secondarily, conditionally or unconditionally. *Am. Motorists Ins. Co. v. Club at Hokuli`a, Inc.,* 2011 WL 3518164, at *4 (D. Haw. Aug. 11, 2011) ("In general, 'a suretyship relationship exists whenever a person becomes responsible for the debt of another.'") (citation omitted); *United States for Use & Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc*., 290 F.3d 1199, 1206 (9th Cir. 2002) (Noting that "general rules of suretyship law apply to Miller Act cases[.]")

(citing *Am. Cas. Co. of Reading v. Arrow Road Construction Co.*, 309 F.2d 923, 924 (9th Cir. 1962)). A surety bond is a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government). *See Hartford Fire Ins. Co. v. United States*, 108 Fed. Cl. 525, 531 (2012); *United States Sur. Co. v. United States*, 83 Fed. Cl. 306, 310 (2008). Specifically, the legal relationship of suretyship is formed when:

> pursuant to contract (the "secondary obligation"), an obligee has recourse against a person ("the secondary obligor") or that person's property with respect to the obligation (the "underlying obligation") of another person (the "principal obligor") to that obligee[.]

Restatement (Third) of Suretyship and Guaranty § 1(1)(a) (1996) ( "Restatement"). That is, under the bond, the surety is obligated to the obligee if the principal obligor fails to perform. In this case, the bond was issued by Liberty Mutual as surety or secondary obligor, for Sumo-Nan as principal obligor, with the United States Department of the Army as the obligee. It is clear that Liberty Mutual alone is the surety under the bond.

In opposition, Nan Defendants offer no relevant authority supporting their action for discharge under the Miller Act or any other applicable state or federal law. They argue that "Liberty Mutual has a suretyship duty not to impair the Nan Defendants right of recourse against another co-obligor." Joint Opp. at 5. The

9

apparent basis for this relationship is the 2003 GAI, *see id.*, however, the GAI

creates obligations of indemnity between the various defendants and Liberty

Mutual, in contrast to the tripartite surety relationship under the bond.   Liberty

Mutual is defined as the "Surety," and Nan Defendants are defined as "Indemnitors"

in the 2003 GAI.   *See* Ex. A-1 at 1.   Under the plain language of the GAI, the

various Indemnitors are jointly and severally liable to Liberty Mutual.   *See id.*

("The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified

the Surety from and against any and all liability for losses, fees, costs, and expenses

of whatsoever kind or nature[.]"); *id*. at 3 ("No Indemnitor shall make any defense to

the enforcement of this Agreement based on the execution of Other Agreements or

related to the addition or the release of any Indemnitor, and each Indemnitor

explicitly confirms its joint and several liability for Bonds issued by the Surety as

provided in this Agreement.   Principals and Indemnitors also waive and

subordinate all rights of Indemnity, subrogation and contribution against each other

until all obligations to the Surety under the agreement, at law or in equity, have been

satisfied in full.").

Accordingly, the Indemnitors under the GAI are not sureties, and have no

stand-alone cause of action for discharge, nor can they assert the suretyship defense

of *pro tanto* discharge.   To be clear, because the Nan Defendants are not

"co-sureties" with Liberty Mutual, and as a matter of law, cannot claim the rights or defenses of a surety, amendment of this claim would be futile. The Nan Defendants' Count I is DISMISSED without leave to amend.

## B. **Breach of Contract (Count II)**

Count II alleges that –

> 9. Upon information and belief, Liberty agreed to cause Sumo, Su Yong Yi and Maureen Dee Yi to be bound as Indemnitors under the GAI on said Bonds ("Agreement").

> 10. Upon information and belief, Liberty represented that Sumo, Su Yong Yi and Maureen Dee Yi are Indemnitors under the GAI on said Bonds ("Representation").

> 11. Liberty's Agreement and/or Representation were partial consideration for Nan's agreement to pay Liberty premiums to issue said Bonds.

> ****

> 23. Nan has paid all of Liberty's premiums in full.

> 24. Despite Nan's repeated demands, Liberty wrongfully insisted that Sumo, Su Yong Yi and Maureen Dee Yi were not Indemnitors under the GAI and failed and refused to demand exoneration and/or indemnification from them under the GAI on the Bonds.

> 25. Liberty breached its Agreement with Nan to cause Sumo, Su Yong Yi and Maureen Dee Yi to be bound as Indemnitors under the GAI on the Bonds.

Nan Defendants' Counterclaim.

A breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by defendants; and (5) when and how defendants allegedly breached the contract. *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, however, the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient . . . the complaint must specify what provisions of the contract have been breached to state a viable claim for relief under contract law.")).

Liberty Mutual moves to dismiss Count II because the Nan Defendants do not satisfy the third, fourth, and fifth elements required for a breach of contract claim. As to the third element, Nan Defendants do not allege that they performed under the GAI, and have not posted the collateral required by the GAI. Instead, they allege that they paid premiums due on the bond.

With respect to the fourth element, the source of the particular provision violated is unclear. The Nan Defendants allege that, although Liberty Mutual received payment of all Sumo-Nan bond premiums, Liberty Mutual "breached its Agreement with Nan, Laumaka, and Shin to cause [the Sumo Defendants] to be

properly and adequately bound as Indemnitors under the GAI on the bonds." Nan

Defendants' Counterclaim ¶¶ 24-25. The Nan Defendants do not point to a specific

provision in the GAI. The alleged "Agreement" breached by Liberty Mutual is

amorphous and vague. It is unclear whether such promises were oral or written, or

whether they were an inducement or condition of Nan Defendants' execution of the

GAI. In any event, the GAI includes an integration clause, which expressly

provides that it "may not be changed or modified orally. No change or

modification shall be effective unless made by written amendment executed to form

a part hereof." Ex. A-1 at 4. To the extent the Agreement was oral, there is no

allegation or evidence that it was memorialized in writing. Accordingly, in the face

of the express provisions in the GAI, the allegations that Liberty Mutual breached an

Agreement—made at an unspecified time, between unspecified individuals with the

authority to bind the parties, and not memorialized in any writing—fail to satisfy

Federal Rule of Civil Procedure 8 or to otherwise state a plausible claim for breach

of contract.

Liberty Mutual's Motion is GRANTED as to Count II. Because amendment

may be possible, the dismissal is with leave to amend. *See Lopez v. Smith*, 203 F.3d

1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it

appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

### C.     <u>Breach of Covenant of Good Faith and Fair Dealing (Count III)</u>

In Count III, the Nan Defendants allege that an "implied covenant of good faith and fair dealing exists in the GAI[,]" and that Liberty Mutual's "wrongful conduct constitutes a breach of the implied covenant of good faith and fair dealing." Nan Defendants' Counterclaim ¶¶ 27-28.

Under Hawaiʻi law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." *Best Place, Inc. v. Penn Am. Ins. Co*., 82 Hawaiʻi 120, 123-24, 920 P.2d 334, 337-38 (1996) (citations omitted). This district court has noted that the tort of bad faith for breach of the covenant of good faith and fair dealing has not been recognized in Hawaiʻi outside of the insurance context. *Sunday's Child, LLC v. Irongate Azrep BW LLC*, 2014 WL 688582, at *5 n.5 (D. Hawaiʻi Feb. 4, 2014) (citing *Jou v. Nat'l Interstate Ins. Co. of Haw*., 114 Hawaiʻi 122, 129, 157 P.3d 561, 568 (App. 2007)). Count III is therefore DISMISSED to the extent that it attempts to allege a tort claim. The dismissal is with prejudice because this Court finds that it is not possible for the Nan Defendants to cure the defects in the tort claim by amendment.

To the extent the Nan Defendants reframe Count III as a breach of contract cause of action, the Count is dismissed for the same reasons addressed with respect to Count II. *See* Joint Opp. at 10 ("Count III also properly alleges that Liberty Mutual breached the implied covenant of good faith and fair dealing by, *inter alia*, improperly documenting the Sumo Defendants' co-obligor status under the 2003 GAI, and by asserting that the Sumo Defendants were not Indemnitors under the 2003 GAI."). The Nan Defendants fail to allege the elements of a breach of contract claim and Count III is DISMISSED with leave to amend to state a claim for breach of contract.

### D. <u>Misrepresentation (Count IV)</u>

In Count IV, the Nan Defendants allege that –

> 32. In inducing Nan, Laumaka, and Shin to enter into the GAI and/or pay Liberty's premiums, Liberty represented that it would cause Sumo, Su Yong Yi, and Maureen Dee Yi to be properly and adequately bound as Indemnitors under the GAI on the Bonds.

> 33. Liberty's representation that it would cause Sumo, Su Yong Yi, and Maureen Dee Yi to be properly and adequately bound as Indemnitors under the GAI on the Bonds was false.

> 34. Liberty's representation that Sumo, Su Yong Yi, and Maureen Dee Yi were properly and adequately bound as Indemnitors under the GAI on the Bonds was false.

35. Nan, Laumaka, and Shin justifiably or reasonably relied upon the representations by Liberty that Sumo, Su Yong Yi, and Maureen Dee Yi were properly and adequately bound as Indemnitors under the GAI on the Bonds.

Nan Defendants' Counterclaim.

Liberty Mutual moves to dismiss Count IV on the ground that neither intentional nor negligent misrepresentation are properly alleged. With respect to intentional misrepresentation, the Nan Defendants have not sufficiently alleged the circumstances constituting fraud.

Rule 9(b) of the Federal Rules of Civil Procedure requires that, when fraud or mistake is alleged, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). An allegation of fraud is sufficient under Rule 9(b) if it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (internal citations and quotations omitted). To sufficiently identify the circumstances that constitute fraud, a plaintiff must identify such facts as the times, dates, places, or other details of the alleged fraudulent activity. *Id.* A plaintiff must plead these evidentiary facts and must explain why the alleged conduct or statements are fraudulent:

Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false

16

> or misleading about the statement, and why it is false."
> *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*,
> 42 F.3d 1541, 1548 (9th Cir. 1994).
>
> *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.
> 2003).   Allegations of fraud based on information and belief do
> not satisfy Rule 9(b) if the factual bases for the belief are not
> included.   *Neubronner*, 6 F.3d at 672.

*Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1036-37 (D. Haw. 2012).   The Nan Defendants do not allege intentional or fraudulent misrepresentation with the specificity required by Rule 9(b).   *See, e.g., Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1042 (9th Cir. 2010) (stating that plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice").

Moreover, Count IV does not allege facts showing that Liberty Mutual intentionally made false statements to induce the Nan Defendants' reliance in paying premiums on the bond, or that Liberty Mutual knew or had reason to know in 2011 that the Sumo Defendants would not indemnify Liberty Mutual.   *See Shoppe v. Gucci America, Inc.*, 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000) (The elements of an intentional misrepresentation claim under Hawai'i law are: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's

17

reliance upon these false representations, and (4) plaintiff did rely upon them.”).

Accordingly, Count IV is DISMISSED with leave to amend the claim for intentional

or fraudulent misrepresentation.

The elements of negligent misrepresentation under Hawai‘i law are as

follows: “(1) false information [was] supplied as a result of the failure to exercise

reasonable care or competence in communicating the information; (2) the person for

whose benefit the information is supplied suffered the loss; and (3) the recipient

relies upon the misrepresentation.” *Smallwood v. Ncsoft Corp*., 730 F. Supp. 2d

1213, 1231 (D. Haw. 2010). Here, the Nan Defendants’ conclusory allegations are

insufficient to survive a motion to dismiss. As to the first element, there are no

factual allegations demonstrating an absence of reasonable grounds for believing

any alleged misstatements to be true. That is, the Nan Defendants offer nothing to

contradict or counter the allegations of Liberty Mutual’s Complaint and the terms of

the GAI, which facially support its belief that the Sumo Defendants had agreed to

indemnify Liberty Mutual. Therefore, the Nan Defendants’ Counterclaim fails to

state a claim for negligent misrepresentation in Count IV. Accordingly, Count IV

is DISMISSED with leave to amend the claim for negligent misrepresentation.

### E.    Unjust Enrichment (Count V)

The Nan Defendants' Count V claim for unjust enrichment alleges that Liberty Mutual "received the benefit of receiving payment of its premiums in full from Nan, but have failed to bind Sumo, Su Yong Yi and Maureen Dee Yi as Indemnitors under the GAI on the bonds, and have therefore been unjustly enriched."   Nan Defendants' Counterclaim ¶ 39.   Liberty Mutual argues that this claim is frivolous because the bond premiums are set by law and there is no allegation that the Nan Defendants overpaid on the bond, or that Liberty Mutual failed to performed its obligations.

An unjust enrichment claim consists of two elements: "(a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs."   *Cootey v. Countrywide Home Loans, Inc*., 2011 WL 2441707, at *12 (D. Haw. June 14, 2011) (citing *Porter v. Hu*, 116 Hawai'i 42, 53, 169 P.3d 994, 1005 (App. 2007)).   There are no factual allegations here that the premiums were paid to Liberty Mutual without adequate legal basis, that Liberty Mutual did not perform its obligations under the bond, or otherwise demonstrating that the retention of premiums would be unjust.   Any alleged breach of the purported "promise that Sumo, Su Yong Yi and Maureen Dee Yi would be bound as Indemnitors under the GAI on the bonds," fails to state a plausible claim for the

19

equitable remedy of unjust enrichment.    Accordingly, the Nan Defendants'

conclusory allegations fail to state a claim for unjust enrichment, and Count V is

DISMISSED with leave to amend.

### F.    Unfair and Deceptive Trade Practices (Count VI)

Liberty Mutual moves to dismiss the claim for unfair and deceptive trade

practices under Haw. Rev. Stat. ("HRS") §§ 480-2 and 480-13 on the ground that

Patrick Shin, Mariko Kaneko Shin, and the Shin Trust are not "consumers" entitled

to bring such a claim.    The Nan Defendants' opposition is silent on this point.

Although the Nan Defendants' Counterclaim fails to cite to the relevant statutory

provision, HRS § 480-2(a) provides that "[u]nfair methods of competition and

unfair or deceptive acts or practices in the conduct of any trade or commerce are

unlawful."    Section 480-13 provides a private right of action for violations of

section 480-2.    To maintain this cause of action, a plaintiff must demonstrate: (1) a

violation of section 480-2; (2) injury to the consumer caused by such a violation; and

(3) proof of the amount of damages.    *Davis v. Wholesale Motors, Inc.*, 949 P.2d

1026, 1038 (Haw. App. 1997) (citations omitted); *see also Hoilien v. Bank of Am.*,

2011 WL 3494523, at *8 (D. Haw. Aug. 10, 2011).

Although "[a]ny person" may bring an action for unfair methods of

competition in violation of § 480-2, only consumers, the attorney general, or the

20

director of the office of consumer protection may bring an action for unfair or deceptive acts or practices in violation of section 480-2. HRS § 480-2(d), (e); *see also Davis v. Four Seasons Hotel, Ltd*., 228 P .3d 303, 307 (Haw. 2010). A "consumer" is a "natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment ." HRS § 480-1. The Nan Defendants' Counterclaim includes no factual allegations to support a claim by Patrick Shin, Mariko Kaneko Shin, and the Shin Trust as "consumers," who "primarily for personal, family, or household purposes" purchased good or services or made a personal investment. Rather, the bond and GAI appear to have been executed for purely commercial purposes, in order to secure the contract for the TAMC Project. As currently alleged, the Nan Defendants' lack standing as "consumers" and fail to state a claim for unfair and deceptive acts or practices in violation of HRS § 480-2. Accordingly, Count VI is DISMISSED with leave to amend.

### G. <u>Declaratory Relief (Count VII)</u>

Count VII seeks declaratory relief under HRS Chapter 632, alleging that the Nan Defendants "are entitled to a declaratory judgment that they have been released and discharged, *pro tanto*, and/or are not Indemnitors under the GAI or other law,

and/or are not obligated to indemni[f]y Liberty against and liability, loss, or expense

arising under the Bonds or other law."   Nan Defendants' Counterclaim ¶ 50.

> The declaratory judgment statute, HRS § 632-1 (1993), grants courts of record the power to make "binding adjudications of right" in justiciable cases, under three types of situations:
>
>> [1] where an actual controversy exists between contending parties, or [2] where the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or [3] where in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which the party has a concrete interest and that there is a challenge or denial of the asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein.
>
> *Rees v. Carlisle*, 113 Hawai'i 446, 458, 153 P.3d 1131, 1143 (2007) (quoting HRS § 632-1) (emphases added).   A court must be "satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding."   *Id.* at 457, 153 P.3d at 1142.   Also, "[a]s the declaratory judgment statute thus makes clear, there must be some 'right' at issue in order for the court to issue relief."   *Id.*

*Cnty. of Hawaii v. Ala Loop Homeowners*, 123 Hawai'i 391, 433, 235 P.3d 1103,

1145 (2010) (Acoba, J., concurring in part and dissenting in part).

The Court notes that HRS § 632-1 is no broader than the federal Declaratory

Judgment Act, 28 U.S.C. § 2201.

> Kaleikau v. Hall, 27 Haw. 420 (1923), explains that courts
> should not exercise jurisdiction over Hawaii state law
> declaratory judgment actions where the wrongful acts
> complained of have already been committed and are
> encompassed by other causes of action.   Id. at 428; see also
> Kaaa v. Waiakea Mill Co., 29 Haw. 122, 127 (1926) ("[T]his
> court has held that the courts will not entertain jurisdiction under
> the Declaratory Judgment Act when it appears that the wrongs
> complained of have already been committed and that a cause of
> action already exists, but will leave the injured party to seek
> redress according to the established methods of procedure.").

*Gray v. OneWest Bank, Fed. Sav. Bank*, 2014 WL 3899548, at *13 (D. Haw. Aug.

11, 2014); *see also Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir.

1996) ("A declaratory judgment offers a means by which rights and obligations may

be adjudicated in cases brought by any interested party involving an actual

controversy that has not reached a stage at which either party may seek a coercive

remedy and in cases where a party who could sue for coercive relief has not yet done

so.") (citation and quotation signals omitted).

Here, the allegations supporting the Nan Defendants' affirmative claim for

declaratory relief mirror the defenses asserted in their Answer.   To the extent they

make the same allegations that serve as their defenses to Liberty Mutual's claims, it

appears that these issues will be addressed by presently existing causes of action.

That is, the Court will adjudicate the rights and obligations of the parties under the

GAI, and there is no basis for an affirmative claim seeking the remedy of declaratory

relief.   If the Nan Defendants eventually prevail on an independent claim, the Court will necessarily render a judgment providing (*i.e*., "declaring") appropriate remedies.   To the extent Count VII is redundant or duplicative of existing causes of action in this matter, it is DISMISSED with leave to amend, if appropriate.

### H.    Punitive Damages (Count VIII)

Count VIII requests relief that is derivative of the Nan Defendants' other counterclaims.   *See* Nan Defendants' Counterclaim ¶ 52 ("In performing the acts described herein, Liberty has acted willfully, wantonly, and in conscious indifference to the consequences of its acts.").   A claim for punitive damages is not an independent tort, but a remedy that is incidental to another cause of action.   *See Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.,* 879 P.2d 1037, 1049 (Haw. 1994) (citing *Kang v. Harrington*, 587 P.2d 285, 291 (Haw. 1978) (holding that a claim for punitive damages "is not an independent tort, but is purely incidental to a separate cause of action")); *see also United States ex rel. Lockyer v. Haw. Pac. Health*, 490 F. Supp. 2d 1062, 1088-89 (D. Haw. 2007) (holding that, to the extent that the complaint could be read to allege a separate and independent cause of action for punitive damages, the defendant would be entitled to summary judgment on that count); *Hale v. Hawaii Publs., Inc.*, 468 F. Supp. 2d 1210, 1233 (D. Haw. 2006)

(granting motion for summary judgment as to a separate claim for punitive damages, but noting that the plaintiff could seek punitive damages as part of prayer for relief).

Liberty Mutual's motion is GRANTED, and Count VIII is dismissed without leave to amend to include a stand-alone claim for punitive damages. Because punitive damages *may* be available as a remedy for other causes of action, Nan Defendants are granted leave to include such a request in their amended counterclaim, if supported by the allegations therein.

The Court next turns to Liberty Mutual's motion to dismiss the Sumo-Nan Counterclaim.

## II.    The Sumo-Nan Counterclaims Are Dismissed

Sumo-Nan alleges the following counterclaims against Liberty Mutual: (1) complete or *pro tanto* discharge (Count I); (2) breach of contract (Count II); (3) contractual breach of implied covenant of good faith and fair dealing (Count III); (4) misrepresentation (Count IV); and (5) declaratory relief (Count V). For reasons similar to those addressed above with respect to the Nan Defendants' Counterclaim, the Liberty Mutual motion to dismiss is granted.

### A.    Complete or *Pro Tanto* Discharge (Count I)

Sumo-Nan's Count I repeats the allegations made in the same claim filed by the Nan Defendants, asserting that "Liberty Mutual's acts or omissions have

increased the risk of loss of [Sumo-Nan] by decreasing their potential ability to cause [Sumo Defendants] to bear the cost of performance," and as a result, Sumo-Nan "has been discharged, completely or *pro tanto*, from their obligations under the GAI." Sumo-Nan Counterclaim ¶¶ 18-19. The Court has already ruled that Liberty Mutual is the only surety involved in this matter, and that an affirmative claim for discharge is limited to a surety. It is undisputed that Sumo-Nan is the principal under the bond. Sumo-Nan cannot claim the rights or defenses of a surety, and amendment of this claim would be futile. Therefore, Sumo-Nan's Count I is DISMISSED without leave to amend.

**B.** **Breach of Contract (Count II)**

Sumo-Nan's Count II alleges that –

6. [Sumo-Nan] agreed to execute the GAI on the condition that Liberty would cause Sumo, Su Yong Yi, and Maureen Dee Yi to be properly and adequately bound as Indemnitors under the GAI.

7. Liberty agreed to cause Sumo, Su Yong Yi and Maureen Dee Yi to be properly and adequately bound as Indemnitors under the GAI on said Bonds ("Agreement").

8. Liberty represented that Sumo, Su Yong Yi and Maureen Dee Yi are properly and adequately bound as Indemnitors under the GAI on said Bonds ("Representation").

9. Liberty's Agreement and/or Representation were partial consideration for [Sumo-Nan's] agreement to execute the GAI.

****

22. Liberty has received consideration for the Agreement by [Sumo-Nan's] execution of the GAI.

23. Liberty breached its Agreement with [Sumo-Nan] to cause Sumo, Su Yong Yi and Maureen Dee Yi to be bound as Indemnitors under the GAI on the Bonds.

Sumo-Nan Counterclaim.

As discussed above with respect to the Nan Defendants' breach of contract claim, the alleged "Agreement" breached by Liberty Mutual is amorphous and vague. To the extent Sumo-Nan alleges a breach of a condition of their "Agreement" to execute the GAI, they fail to satisfy the elements of a claim for breach of contract. Count II is DISMISSED with leave to amend to state a claim for breach of contract.

## C.   Breach of Covenant of Good Faith and Fair Dealing (Count III)

In Count III, which is substantively identical to the Nan Defendants' claim, Sumo-Nan alleges that Liberty Mutual's "wrongful conduct constitutes a breach of the implied covenant of good faith and faith dealing." Sumo-Nan Counterclaim ¶ 27. For the reasons set forth previously, Count III DISMISSED with prejudice to

the extent that it attempts to allege a tort claim.     To the extent Sumo-Nan recasts Count III as a breach of contract claim, Sumo-Nan fails to allege facts meeting the required elements, and Count III is DISMISSED with leave to amend to state a claim for breach of contract.

### D.     Misrepresentation (Count IV)

In Count IV, the Nan Defendants allege that –

> 30.     In inducing [Sumo-Nan] to enter into the GAI, Liberty represented that it would cause Sumo, Su Yong Yi, and Maureen Dee Yi to be properly and adequately bound as Indemnitors under the GAI on the Bonds.

> 31.     Liberty's representation that it would cause Sumo, Su Yong Yi, and Maureen Dee Yi to be properly and adequately bound as Indemnitors under the GAI on the Bonds was false.

> 32.     Liberty's representation that Sumo, Su Yong Yi, and Maureen Dee Yi were properly and adequately bound as Indemnitors under the GAI on the Bonds was false.

> 33.     [Sumo-Nan] justifiably or reasonably relied upon the representations by Liberty that Sumo, Su Yong Yi, and Maureen Dee Yi were properly and adequately bound as Indemnitors under the GAI on the Bonds.

Sumo-Nan does not allege intentional or fraudulent misrepresentation with the specificity required by Rule 9(b).   Further, Count IV does not allege specific facts showing that Liberty Mutual intentionally made false statements to induce

Sumo-Nan to sign the GAI, or that Liberty Mutual knew or had reason to know that the Sumo Defendants would not indemnify Liberty Mutual. Accordingly, Count IV is DISMISSED with leave to amend the claim for intentional or fraudulent misrepresentation.

As to negligent misrepresentation, again, there are no factual allegations demonstrating an absence of reasonable grounds for believing any alleged misstatements to be true. That is, Sumo-Nan's bare allegations fail to contradict or counter the allegations of Liberty Mutual's Complaint and the terms of the GAI, which facially support its belief that the Sumo Defendants had agreed to indemnify Liberty Mutual, to wit, the Sumo Defendants executed the GAI attached to Liberty Mutual's complaint. Therefore, Sumo-Nan's Counterclaim fails to state a claim for negligent misrepresentation in Count IV. Accordingly, Count IV is DISMISSED with leave to amend the claim for negligent misrepresentation.

## E.     Declaratory Relief (Count V)

Count V seeks declaratory relief under HRS Chapter 632, alleging that Sumo-Nan is "entitled to a declaratory judgment that they have been released and discharged, *pro tanto*, and/or is not an Indemnitor under the GAI or other law, and/or is not obligated to indemni[f]y Liberty against and liability, loss, or expense arising under the Bonds or other law." Sumo-Nan Counterclaim ¶ 38.

For the reasons discussed above with respect to the Nan Defendants' identical claim for declaratory relief, this claim is DISMISSED. If Sumo-Nan eventually prevails on an independent claim, the Court will necessarily render a judgment providing (*i.e.*, "declaring") appropriate remedies. To the extent Count V is redundant or duplicative of existing causes of action in this matter, it is DISMISSED with leave to amend, if appropriate.

### III. Liberty Mutual's Motions to Strike Are Denied

Liberty Mutual asks the Court to strike portions of the counterclaims. Under Rule 12(f), a court has discretion to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (citation omitted).

For the reasons previously explained in the Court's May 20, 2015 Order, the Court declines to strike portions of the pleadings at this early stage of the litigation. *See* Order at 15-20. In any event, because the Court has granted Liberty Mutual's motions to dismiss, the motions to strike are moot, and the Court declines to additionally strike the allegations challenged by Liberty Mutual's motions. *See*

*Wailua Assocs. v. Aetna Casualty and Surety Co.,* 183 F.R.D. 550, 553-54 (D. Haw. 1998) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied[.]").

## IV.    Summary of Rulings

Liberty Mutual's motions are GRANTED, and both the Nan Defendants' Counterclaim and Sumo-Nan's Counterclaim are DISMISSED with leave to amend certain claims, as set forth in this Order.   The Nan Defendants and Sumo-Nan are granted until July 17, 2015 to file an amended counterclaim encompassing those counts for which the Court has granted leave.   Liberty Mutual's motions are DENIED to the extent they request that certain paragraphs in each of the counterclaims be stricken.

## CONCLUSION

For the foregoing reasons, Liberty Mutual's motions to dismiss [dkt. nos. 38 & 40] are GRANTED, and the Nan Defendants' and Sumo Nan Counterclaims are DISMISSED with leave to amend.   Liberty Mutual's motions to strike certain portions of the Nan Defendants' and Sumo-Nan's Counterclaims are DENIED.

Defendants are granted until **July 17, 2015** to file any amended counterclaim in accordance with this order.

IT IS SO ORDERED.

DATED: July 2, 2015 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

_Liberty Mutual Insurance Company v. Sumo-Nan LLC, et al.;_
Civil No. 14-00520 DKW KSC;
**ORDER GRANTING IN PART AND DENYING IN PART LIBERTY MUTUAL INSURANCE COMPANY'S MOTIONS TO DISMISS COUNTERCLAIMS AND MOTIONS TO STRIKE PLEADINGS**