IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>       Plaintiff,<br><br><br>     vs.<br><br><br>SUMO-NAN LLC, a Hawaii limited liability company; NAN, INC., a Hawaii corporation, *et al.*<br><br>       Defendants. | CIVIL NO. 14-00520 DKW-KSC<br><br>ORDER (1) GRANTING IN PART AND DENYING IN PART LIBERTY MUTUAL'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SU-MO BUILDERS, INC., SU YONG YI, AND MAUREEN DEE YI [DKT. NO. 94]; AND (2) GRANTING LIBERTY MUTUAL'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SUMO-NAN, LLC, NAN, INC., LAUMAKA LLC, PATRICK SHIN, MARIKO KANEKO SHIN, AND PATRICK SHIN, TRUSTEE, PATRICK SHIN TRUST [DKT. NO. 116] |

**ORDER (1) GRANTING IN PART AND DENYING IN PART LIBERTY MUTUAL'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SU-MO BUILDERS, INC., SU YONG YI, AND MAUREEN DEE YI [DKT. NO. 94]; AND (2) GRANTING LIBERTY MUTUAL'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SUMO-NAN, LLC, NAN, INC., LAUMAKA LLC, PATRICK SHIN, MARIKO KANEKO SHIN, AND PATRICK SHIN, TRUSTEE, PATRICK SHIN TRUST [DKT. NO. 116]**

<u>INTRODUCTION</u>

The parties are again before the Court on Liberty Mutual's motions to dismiss

Counterclaims filed by (1) Su-Mo Builders, Inc., Su Yong Yi, and Maureen D. Yi

1

(the "Sumo Defendants"); and (2) Nan, Inc., Laumaka LLC, Patrick Shin, aka Nan Chul Shin, Mariko Kaneko Shin, Patrick Shin, Trustee of the Patrick Shin Trust, and Sumo-Nan LLC (the "Nan Defendants").   For the reasons set forth below, Liberty Mutual's motions are GRANTED in part and DENIED in part and the Sumo Defendants and Nan Defendants are granted limited leave, for the last time, to file amended counterclaims.

## BACKGROUND

The Court and the parties are familiar with the factual and procedural background of this case, which is set forth in the Court's previous orders addressing the parties' counterclaims.   *See* 2015 WL 5209345 (D. Haw. Sept. 4, 2015); 2015 WL 4093337 (D. Haw. July 6, 2015); and 2015 WL 2449480 (D. Haw. May 20, 2015).   The Court briefly recounts matters relevant to the instant motions.

On November 11, 2014, Liberty Mutual filed its Complaint for (1) Breach of Contract of Indemnity; (2) Unjust Enrichment; and (3) Quia Timet against defendants Sumo-Nan LLC ("Sumo-Nan"); Nan, Inc.; Laumaka LLC; Patrick Shin, aka Nan Chul Shin ("Patrick Shin"); Mariko Kaneko Shin; Patrick Shin, Trustee of the Patrick Shin Trust ("Shin Trust"); Su-Mo Builders, Inc. ("Sumo"); Su Yong Yi; and Maureen D. Yi.   Liberty Mutual's claims arise from a Miller Act bond it issued on behalf of Sumo-Nan in connection with a construction project at Tripler Army

2

Medical Center, Contract No. W9128A-11-C-0006 ("TAMC Project").   The Miller

Act required Sumo-Nan to furnish to the government a performance and payment

bond as part of its construction project contract.   *See* 40 U.S.C. § 3131 *et seq*.

Liberty Mutual alleges that, as partial consideration for its agreement to

furnish a bond on behalf of Sumo-Nan, Liberty Mutual and all defendants executed

General Agreements of Indemnity, including certain Amendments (collectively,

"GAI").   *See* Complaint ¶ 17 & Exs. A-1 to A-10 attached to Complaint (GAI).

According to Liberty Mutual, under the GAI, each of the defendants, jointly and

severally, agreed to indemnify Liberty Mutual against any liability for losses, fees,

costs, and expenses that Liberty Mutual incurred as a consequence of issuing the

bonds on behalf of Sumo-Nan or as a consequence of a breach of the GAI.

Complaint ¶ 19.   On or about May 26, 2011, Liberty Mutual, as surety, issued to

Sumo-Nan, as principal, a Performance and Labor & Material Payment Bond No.

023-017-103 naming the United States of America as obligee, in the penal sum of

$15,996,619.00.   Complaint ¶ 20 & Ex. B attached to Complaint (Bond).

According to Liberty Mutual, Sumo-Nan was unable to meet its obligations

on the TAMC Project, and as a result, Liberty Mutual received claims on the bond,

including demands from Sumo-Nan's subcontractors and suppliers, exceeding

$1,638,409.00.   Complaint ¶¶ 25-27.   Liberty Mutual made a demand to

defendants to deposit cash or other property as collateral security, to protect Liberty Mutual from claims on the bond, but defendants have failed and/or refused to deposit collateral with Liberty Mutual. Complaint ¶¶ 29-30 & Ex. C attached to Complaint (10/2014 Demand Letter).

Liberty Mutual alleges that defendants failed to perform under the TAMC Project contract, the GAI, and the bond, whereas Liberty Mutual performed its obligations under the GAI and the bond. Complaint ¶¶ 33-36. It seeks damages for breach of contract (Count 1) and unjust enrichment (Count 2), and an injunction preventing defendants from transferring assets to circumvent their obligations to Liberty Mutual (Count 3).

The Court previously dismissed the counterclaims filed by the Sumo and Nan Defendants, and granted them leave to amend. *See* 2015 WL 4093337 ("7/6/15 Order"); 2015 WL 2449480 ("5/20/15 Order"). The Sumo Defendants filed their Amended Counterclaim on June 15, 2015, and the Nan Defendants filed their Amended Counterclaim on July 24, 2015. Liberty Mutual moves to dismiss both.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   555

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570

(2007)).   "[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions."   *Id.*   Accordingly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual

allegations that only permit the court to infer "the mere possibility of misconduct"

do not constitute a short and plain statement of the claim showing that the pleader is

entitled to relief as required by Rule 8(a)(2).   *Id*. at 679.

## DISCUSSION

### I.   Liberty Mutual's Motion to Dismiss Sumo Defendants' Counterclaim

The Sumo Defendants allege the following counterclaims against Liberty

Mutual: (1) breach of contract (Count I); (2) fraud and misrepresentation (Count II);

3) fraudulent inducement (Count III); (4) intentional misrepresentation (Count IV)[1];

(5) negligent misrepresentation (Count V); (6) promissory estoppel (Count VI); (7)

breach of the implied covenant of good faith and fair dealing (Count VII)[2]; (8)

breach of fiduciary duty (Count VIII); (9) abuse of process (Count IX); and (10)

declaratory relief and/or declaratory judgment (Count X).   Liberty Mutual's motion

to dismiss these counterclaims is granted in part and denied in part, and the Sumo

Defendants are granted limited leave to amend certain causes of actions, as

described more fully below.

## A.    Count I (Breach of Contract)

The Sumo Defendants allege that they performed their obligations under the

2003 GAI "by paying or causing others to pay Liberty's premiums . . . and have been

ready to provide indemnity in accordance with Amendment No. 2."   Sumo

Counterclaim ¶ W.2.   They contend that "Liberty has materially breached the 2003

GAI, as amended, by demanding the Sumo Defendants indemnify Liberty for claims

---

[1]In their Opposition, the Sumo Defendants agree that the allegations in Counts II and IV are duplicative, and ask that they be consolidated.   The Hawaii Supreme Court has referred to intentional misrepresentation as interchangeable with fraudulent misrepresentation.   *See Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc*., 115 Hawai'i 232, 263, 167 P.3d 225, 256 (Haw. 2007).

[2]In their Opposition, the Sumo Defendants withdrew Count VII as a stand-alone claim, and instead incorporate it into their Count I claim for breach of contract.   Sumo Defs.' Opp. at 26. Accordingly, Liberty Mutual's motion is GRANTED with respect to Count VII.

6

made on a bond issued to or on behalf of Sumo-Nan LLC."   Sumo Counterclaim

¶ W.5.   With respect to the 2011 GAI, the Sumo Defendants allege "no bonds were

ever issued under that document to any entity," and "Liberty did not provide any

consideration to the Sumo Defendants for the 2011 GAI and thus it was and is not a

valid contract."   Sumo Counterclaim ¶¶ W.8-9.

A breach of contract claim must set forth (1) the contract at issue; (2) the

parties to the contract; (3) whether plaintiff performed under the contract; (4) the

particular provision of the contract allegedly violated by defendants; and (5) when

and how defendants allegedly breached the contract.   *See Evergreen Eng'rg, Inc. v.*

*Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also*

*Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In

breach of contract actions, however, the complaint must, at minimum, cite the

contractual provision allegedly violated.   Generalized allegations of a contractual

breach are not sufficient . . . the complaint must specify what provisions of the

contract have been breached to state a viable claim for relief under contract law.")).

Liberty Mutual argues that the Sumo Defendants have failed to plausibly allege

performance, identify specific contractual provisions breached, or satisfy the

elements of the breach of the implied covenant of good faith and fair dealing.

7

With respect to performance, the Court previously dismissed the Sumo Defendants' breach of contract claim for failure to sufficiently allege their own performance.   *See* 5/20/15 Order at 8-11.   Although the Sumo Defendants allege that they paid premiums and stand ready to "provide indemnity when due," they have not cured the pleading deficiency.   The payment of premiums due is not the legal equivalent of performance of the terms of a contract.   Further, any future promise to perform, *i.e*., "prepared to provide indemnity when due," is an acknowledgement that performance has yet to occur.   *See* Sumo Counterclaim ¶ W.2.

The Sumo Defendants also again fall short of sufficiently identifying a contract; the specific paragraph or provision within that contract that was breached; when the breach occurred; and how the breach occurred.   To the extent they point to Amendment No. 2, paragraph 1, as the source of the contractual provision that was breached, the counterclaim remains deficient.   Although they allege that Liberty Mutual improperly sought indemnification for the bond issued to Sumo-Nan LLC—rather than a bond issued to "Su-Mo/Nan JV; Su-Mo Builders, Inc."—the allegations appear implausible in the face of Amendment No. 2, which applies to Su-Mo/Nan JV; Su-Mo Builders, Inc.; Su Yong Yi; Maureen Dee Yi and "any of the Indemnitors or Principals' subsidiaries or affiliates, whether present or future, and

8

whether directly or indirectly held."   Sumo Counterclaim, Ex. A-2 at 4 (Amendment No. 2).   To the extent the Sumo Defendants allege that Liberty Mutual's demand for indemnification is the "breach," they fail to state an affirmative claim for breach of contract, and, at best, appear to set forth a defense to such a claim.   That is, if indemnity is not called for by the GAI, the Sumo Defendants may have a defense to a claim for breach of contract asserted by Liberty Mutual.

Finally, with respect to the breach of the implied covenant of good faith and fair dealing, the allegations that "Liberty has refused and failed to act in good faith and deal fairly with Sumo Defendants in relation to Liberty's performance and contractual obligations under the 2003 GAI and 2011 GAI as it relates to bonds issued to Sumo-Nan, LLC," is insufficiently vague.   *See* Sumo Counterclaim ¶ CC.5.   Under Hawai'i law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."   *Best Place, Inc. v. Penn Am. Ins. Co*., 82 Hawai'i 120, 123-24, 920 P.2d 334, 337-38 (1996) (citations omitted).   There is insufficient factual matter to determine whether Liberty Mutual acted to deprive the Sumo Defendants of the benefits of the 2003 GAI or 2011 GAI, as currently alleged.

In sum, the Sumo Defendants once more fail to state a claim for breach of contract against Liberty Mutual in Counterclaim 1, and Liberty Mutual's Motion is

9

GRANTED as to that claim.   However, because amendment may be possible, the dismissal is with leave to amend one final time to allow Sumo Defendants to attempt to state a claim for breach of contract.   *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

## B.   Counts II, III, IV & V (Fraud and Misrepresentation)

The Court granted the Sumo Defendants leave to amend their previously dismissed claims for fraud and misrepresentation.   The Sumo Defendants, however, have once again failed to plead fraud and intentional misrepresentation with the required particularity.   Liberty Mutual's motion to dismiss the counterclaims sounding in intentional fraud and misrepresentation is granted, and the Sumo Defendants are granted leave to amend.   Dismissal is denied with respect to negligent misrepresentation.

### 1.   Fraud and Intentional Misrepresentation (Counts II & IV), and Fraudulent Inducement (Count III)

Counts II and IV allege that "Liberty, by their acts and omissions, falsely represented that indemnity from the Sumo Defendants was only being provided as to certain entities, which did not include Sumo/Nan LLC," and that "[i]f Liberty and its agents had not fraudulently misrepresented that the 2011 GAI would only be

applicable to bonds issued to Sumo Builders, Inc., Sumo Defendants would not have signed the 2011 GAI."   Sumo Counterclaim ¶¶ X.3, X.8.   They claim that "Liberty represented to the bonding agent Grossi that the 2011 GAI was only applicable as to individual bonds issued to Sumo Builders, Inc.," in order to "induce Sumo Defendants to execute the 2003 GAI (in other capacities and/or the 2011 GAI."   Sumo Counterclaim ¶¶ Z.4, Z.8.   Count III alleges that "Liberty made false representations of material fact to Sumo Defendants when presenting Amendment no. 2 to Sumo Defendants and its agents through Nan, and in discussions relating to Amendment no. 2 with Sumo Defendants and their agents and/or fiduciary business partners as to the extent of indemnity provided under the 2003 GAI," and "[w]ere it not for Liberty's fraudulent representations, Sumo Defendants would not have signed the 2003 GAI or the 2011 GAI in any capacity."   Sumo Counterclaim ¶¶ Y.2, Y.7.

According to the Sumo Defendants, the "false or misleading information provided by Liberty was transmitted through Nan or Aon.   Further, Liberty contends that Aon acted as an agent on behalf of Sumo Defendants, thus any misrepresentations Liberty made in its dealings with Aon would have been transmitted to and relied upon by Sumo Defendants."   Sumo Defendants' Opposition at 19; *see also* Sumo Defendants' Counterclaim ¶ G.4 ("[Su Yong Yi]

was told . . . that Liberty told Nan to get the signatures of the Sumo Defendants.").
The Sumo Defendants, in other words, rely upon an indirect reliance theory, which does not require direct communication between Liberty Mutual and the Sumo Defendants.   *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 772-73 (S.D.N.Y. 2011) ("The indirect reliance doctrine states that a claim for fraud may lie even when a plaintiff does not directly rely on a fraudulent representation made by the defendant, if (1) the plaintiff received the information from someone who had received it from the defendant, and (2) the defendant intended the misrepresentation to be conveyed to [the plaintiff].'") (quoting *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994)).

Assuming that Hawaiʻi courts would recognize the indirect reliance doctrine, the Sumo Defendants do not allege that (1) they received information from Aon, Nan, or another agent, who received it from Liberty Mutual, or that (2) Liberty Mutual intended the false information to be conveyed to the Sumo Defendants. That is, the Sumo Defendants do not allege that Liberty Mutual intended for Nan (or another agent) to convey to the Sumo Defendants that Liberty Mutual would not enforce the terms of the 2003 or 2011 GAI.   Nor are the allegations specific in all instances with respect to who communicated the (mis-)information to the Sumo Defendants.   For example, it is not clear who made representations relating to

12

Amendment No. 2, other than "a representative from Nan," Sumo Counterclaim ¶ G.1, and "The Nan Officer," *id.* ¶ G.3.   With respect to the 2011 GAI, the Sumo Defendants allege that they were "induced into signing the 2011 GAI by a bonding agent from Aon Risk Services, Inc. named Michael Grossi," and that Grossi sent an email on February 28, 2011 stating, "This agreement was for bonds only for Sumo [Builders, Inc.]."   Sumo Counterclaim ¶¶ S.4, S.8.   There is no allegation, however, that Liberty Mutual intended for this representation to be communicated to the Sumo Defendants.   Moreover, the parties appear to dispute the capacity in which Grossi was purportedly acting, and whether he was an agent for Liberty Mutual, the Sumo Defendants, or both.

Rule 9(b) of the Federal Rules of Civil Procedure requires that, when fraud or mistake is alleged, "a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."   Fed.R.Civ.P. 9(b).   A plaintiff must plead these evidentiary facts and must explain why the alleged conduct or statements are fraudulent:

> Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted).   "[A] plaintiff must set forth more than the neutral facts necessary to identify

13

>the transaction.   The plaintiff must set forth what is false or misleading about the statement, and why it is false."
>*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994).

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

*Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1036-37 (D. Haw. 2012); *see, e.g., Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1042 (9th Cir. 2010) (stating that plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice").   Such factual allegations are missing in large part from the amended counterclaim.   The Sumo Defendants again fall short of alleging—with respect to *each* allegedly fraudulent misrepresentation—who made the misrepresentation to whom, in what capacity the person was acting when he or she made the representation, and when it was made.   As a result of these deficiencies, the Sumo Defendants again fail to state claims based on fraud in Counts II, III, and IV, and Liberty Mutual's Motion is GRANTED.   However, because amendment may be possible, the dismissal is with leave to amend one final time to sufficiently allege claims sounding in fraud.

### 2.   Negligent Misrepresentation (Count V)

In a negligent misrepresentation claim, Hawai'i law requires that "(1) false information be supplied as a result of the failure to exercise reasonable care or

competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Blair v. Ing*, 95 Hawai'i 247, 269, 21 P.3d 452, 474 (2001) (citing Restatement (Second) of Torts § 552); *see also Peace Software, Inc. v. Hawaiian Elec. Co., Inc.*, 2009 WL 3923350, at *6 (D. Haw. Nov. 17, 2009) (relying on *Blair* for the Hawai'i standard for negligent misrepresentation).

Because a negligent misrepresentation claim does not require intent, it is generally not subject to Rule 9(b). *See id.* at *8; *see also Bush v. Rewald*, 619 F. Supp. 585, 608 (D. Haw. 1985); *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232 (D. Haw. 2010) ("As the Ninth Circuit in *Vess* explains, 'where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).'"). Although Liberty Mutual argues that Rule 9(b)'s heightened pleading standard should apply in this case, the allegations supporting the Sumo Defendants' negligent misrepresentation claim are not exclusively grounded in fraud, and not categorically subject to Rule 9(b). *Cf. Smallwood*, 730 F. Supp. 2d at 1232 (Dismissing purported negligent misrepresentation claim where "allegations are grounded in fraud and not pled with specificity" and concluding that "Plaintiff has not alleged a negligent misrepresentation claim because Plaintiff's allegations in this regard all

15

sound in fraud."); *see also id.* ("'Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of 8(a).'   Furthermore, . . . the heightened pleading standard 'does not apply, of course, to pleadings in the alternative or to claims that do not actually rest on the allegedly fraudulent event.'") (citations and quotations omitted); *see also* Fed. R. Civ. P. 8(d) (permitting alternative and inconsistent statements of a claim)).

The Sumo Defendants adequately state a claim for negligent misrepresentation.   Count V includes factual allegations supporting the legal conclusion that Liberty Mutual failed to exercise reasonable care in communicating information to the Sumo Defendants—including that indemnity would apply only to certain entities under the various GAI and that Grossi had a fiduciary relationship with Liberty Mutual—and that the Sumo Defendants did not receive the full contents of the 2003 GAI until September 15, 2014.   The Sumo Defendants also allege their reliance upon, and own losses caused by, the allegedly negligent misrepresentations.   Accordingly, they state a claim in Count V, and Liberty Mutual's motion is DENIED.

**C.**      **Count VI (Promissory Estoppel)**

Count VI alleges that Liberty Mutual and its agents "made promises to the Sumo Defendants, either through Nan or through Sumo Defendants' agents,"

16

relating to the "entities for which indemnity would be required, the scope of the [2003 and 2011] GAI, and the co-indemnity provided by other indemnitors," all "in order to induce action and/or forbearance on the part of the Sumo Defendants." Sumo Counterclaim ¶¶ BB.2, BB.3.   They contend that they reasonably relied to their detriment on these promises.   *Id.* ¶ BB.4.   The Sumo Defendants ask that Liberty Mutual "be estopped from asserting that its promises are unenforceable and this Court should enforce Liberty's promises."   *Id.* ¶ BB.6.

> In Hawaii, "[a] promissory estoppel may arise as an application of the general principle of equitable estoppel to certain situations where a promise has been made, even though without consideration, if it was intended that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice."   *In re Herrick*, 82 Hawai'i 329, 337, 922 P.2d 942, 950 (Haw. 1996).
>
> The elements of a promissory estoppel claim are: "(1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice."   *Id.* at 337-38, 922 P.2d at 950-51.

*Clemmons v. Haw. Med. Servs. Ass'n*, F. Supp. 2d 1126, 1144 (D. Haw. 2011).   The Court agrees with the Sumo Defendants that the elements of this claim do not require evidence of direct communication by Liberty Mutual to the Sumo Defendants; it is enough that "the promisor should reasonably expect to induce action or forbearance

on the part of the promisee or a third person." *Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.,* 100 Hawai'i 149, 164-65, 58 P.3d 1196, 1211-12 (2002).

Liberty Mutual contends that no "promise" is sufficiently alleged.   A "promise" is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made. . . .   [A] promisor manifests an intention if he believes or has reason to believe that the promisee will infer that intention from his words or conduct." *Kahale v. ADT Auto. Servs., Inc.*, 2 F. Supp. 2d 1295, 1301 (D. Haw. 1998) (internal citation and quotation marks omitted).

The Court agrees with Liberty Mutual that the Sumo Defendants have not alleged with sufficient detail the specifics of the promises made in the various communications, made through multiple channels (including Nan officers, Aon, and Grossi), between Liberty Mutual and the Sumo Defendants.   That is, there are no allegations that Liberty Mutual made any specific representations or promises *to* Grossi, Aon, or Nan, which in turn, were relied upon by the Sumo Defendants.   Nor are there allegations that Liberty Mutual made any specific representations or promises *via* Grossi, Aon, or Nan, *to* the Sumo Defendants.   It is not clear that Liberty Mutual manifested an intention to act or refrain from acting in a specified way, despite the Sumo Defendants' belief that a "promise" had been made.

18

Moreover, it is not enough to state the legal conclusion that "Liberty could easily foresee that these promises would be relied upon," without further factual enhancement.   *See* Sumo Defendants Opposition at 26.   Accordingly, the Court finds that the Sumo Defendants have not sufficiently alleged that Liberty Mutual made a promise, foreseeing that the Sumo Defendants would rely on that promise, and Count VI is DISMISSED.   Because amendment may be possible, leave to amend the promissory estoppel claim is granted.

### D.    <u>Count VIII (Breach of Fiduciary Duty)</u>

Count VIII alleges that under the 2003 and 2011 GAI, Liberty was appointed as attorney-in-fact for defined Indemnitors and Principals, and, accordingly, owed the Sumo Defendants a fiduciary duty arising from its status as attorney-in-fact. Sumo Counterclaim ¶¶ DD.2, DD.3.   More specifically, under the 2003 GAI, paragraph EIGHTEENTH states:

> ATTORNEY-IN-FACT – The Indemnitors and Principals hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the full right and authority, but not the obligation, to exercise all the rights of the Indemnitors and Principals assigned, transferred and set over to the Surety in this Agreement, with full power and authority to execute on behalf of and sign the name of any Indemnitor and/or Principal to any voucher, financing statement, release, satisfaction, check, bill of sale of all or any property by the Agreement assigned to the Surety, or other documents or papers deemed necessary and proper by the Surety in order to give full

19

effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors and Principals hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact and agree to protect and hold harmless the Surety for acts herein granted as attorney-in-fact.

Sumo Counterclaim, Ex. A (2003 GAI) at 4.

Based upon this provision, the Sumo Defendants allege that Liberty Mutual "had a fiduciary duty to explain and establish the 'entire fairness' of any transaction involving Sumo Defendants, including any amendments to the 2003 GAI and the execution of the 2011 GAI" and breached its fiduciary duty "by failing to provide all portions of the GAI, and by failing to explain its intentions as to the 2011 GAI, by failing to explain those documents, and by seeking indemnification from Sumo Defendants as to Sumo/Nan LLC where no indemnification is due."   Sumo Counterclaim ¶¶ DD.4, DD.5.

Paragraph EIGHTEENTH, however, imposes no facial obligation on the part of Liberty Mutual to explain the terms of the GAI and its Amendments (or the relationship between the GAI and Amendments), which is the specific conduct underlying the alleged breach of fiduciary duty.   In other words, the purported obligations created by Paragraph EIGHTEENTH do not encompass the conduct of which the Sumo Defendants complain.   In their Opposition, the Sumo Defendants

20

assert that Liberty Mutual "further breached that duty when it wrongfully paid claims as to Sumo Defendants," which is "directly related to the scope of that power-of-attorney obtained by Liberty[.]"   Sumo Defendants' Opposition at 27. These allegations related to the improper payment of claims are absent, however, from the Sumo Defendants' Counterclaim.

On the basis of the foregoing, Liberty Mutual's Motion is GRANTED, and Count VIII is DISMISSED.   However, because amendment may be possible, the dismissal is with leave to amend.

### E.   Count IX (Abuse of Process)

The Sumo Defendants allege in Count IX that they are entitled to receive their legal fees and costs for Liberty Mutual's "abuse of process," based on the "frivolous allegations" asserted by Liberty Mutual in the instant lawsuit, which was filed "(1) for an ulterior purpose, and (2) filed willfully, improperly and contrary to the proper and regular conduct of these legal proceedings."   Sumo Counterclaim ¶¶ EE.8, EE.9.

"[T]here are two essential elements in a claim for abuse of process: '(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding.'"   *Young v. Allstate Ins. Co*., 119 Hawai'i 403, 412, 198 P.3d 666, 675 (2008) (quoting *Chung v. McCabe Hamilton & Renny*

*Co.*, 109 Hawai'i 520, 529, 128 P.3d 833, 842 (2006)).   *Young* further explains this

second element as follows:

> "[s]ome definite act or threat not authorized by the process, or
> aimed at an objective not legitimate in the use of the process, is
> required; and there is no liability where the defendant has done
> nothing more than carry out the process to its authorized
> conclusion, even though with bad intentions."

119 Hawai'i at 414, 198 P.3d at 677 (quoting Prosser & Keeton on Torts § 121, at

898).

The Sumo Defendants describe the abuse here as Liberty Mutual's decision to

file the instant lawsuit.   In opposition, they argue that "Liberty improperly filed this

lawsuit against Sumo Defendants."   Sumo Defendants' Opposition at 28.

Something more, however, is required.   *See Ancier v. Egan*, 2014 WL 6872977, at

*5 (D. Haw. Dec. 4, 2014) ("In construing the requirement of a wilful act, the courts

have endeavored to curb and remedy serious abuses of the judicial process while

avoiding undue restraints on the ability of litigants to vigorously assert their

interests.   The requirement that plaintiffs prove something more than an improper

motive and the absence of meritorious grounds ensures against an uncontrolled

expansion of liability.") (quoting *Coleman v. Gulf Ins. Grp.*, 718 P.2d 77, 89 (Cal.

22

1986)).[3]   In short, taking an adverse litigation position does not create the basis for an abuse of process claim.   Were it otherwise, every civil action could include such a claim.   Accordingly, Liberty Mutual's motion is GRANTED, and Count IX is DISMISSED with prejudice because the Court finds that granting leave to amend this claim would be futile in light of the form of abuse described by the Sumo Defendants.

## F.   Count X (Declaratory Relief)

Count X seeks a declaratory judgment that the Sumo Defendants "are not Indemnitors under the 2003 GAI or the 2011 GAI as to Sumo-Nan LLC, and/or are not obligated to indemnify Liberty against any liability, loss, or expense."   Sumo Counterclaim ¶ FF.4.   This claim relates to and duplicates existing causes of action—the rights and obligations of the parties under the various GAI and

---

[3]Prosser and Keeton, upon which *Young* and *Ancier* relied, describe the extent of a sufficiently willful act, and provide examples demonstrating "something more" –

> [t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.   There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

*Ancier*, 2014 WL 6872977, at *6 (quoting Prosser and Keeton, at 898).

23

Amendments will be adjudicated as part of Liberty Mutual's claims—and on that

basis, Liberty Mutual seeks dismissal of Count X.

> The declaratory judgment statute, HRS § 632-1 (1993), grants
> courts of record the power to make "binding adjudications of
> right" in justiciable cases, under three types of situations:
>
> > [1] where an actual controversy exists between contending
> > parties, or [2] where the court is satisfied that antagonistic
> > claims are present between the parties involved which
> > indicate imminent and inevitable litigation, or [3] where in
> > any such case the court is satisfied that a party asserts a
> > legal relation, status, right, or privilege in which the party
> > has a concrete interest and that there is a challenge or
> > denial of the asserted relation, status, right, or privilege by
> > an adversary party who also has or asserts a concrete
> > interest therein.
>
> *Rees v. Carlisle*, 113 Hawai'i 446, 458, 153 P.3d 1131, 1143
> (2007) (quoting HRS § 632-1) (emphases added).   A court must
> be "satisfied also that a declaratory judgment will serve to
> terminate the uncertainty or controversy giving rise to the
> proceeding."   *Id.* at 457, 153 P.3d at 1142.   Also, "[a]s the
> declaratory judgment statute thus makes clear, there must be
> some 'right' at issue in order for the court to issue relief."   *Id.*

*Cnty. of Hawaii v. Ala Loop Homeowners*, 123 Hawai'i 391, 433, 235 P.3d 1103,

1145 (2010) (Acoba, J., concurring in part and dissenting in part).   HRS § 632-1 is

no broader than the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

> *Kaleikau v. Hall*, 27 Haw. 420 (1923), explains that courts
> should not exercise jurisdiction over Hawaii state law
> declaratory judgment actions where the wrongful acts
> complained of have already been committed and are

24

> encompassed by other causes of action.  *Id*. at 428; *see also
> Kaaa v. Waiakea Mill Co*., 29 Haw. 122, 127 (1926) ("[T]his
> court has held that the courts will not entertain jurisdiction under
> the Declaratory Judgment Act when it appears that the wrongs
> complained of have already been committed and that a cause of
> action already exists, but will leave the injured party to seek
> redress according to the established methods of procedure.").

*Gray v. OneWest Bank, Fed. Sav. Bank*, 2014 WL 3899548, at *13 (D. Haw. Aug.

11, 2014); *see also Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir.

1996) ("A declaratory judgment offers a means by which rights and obligations may

be adjudicated in cases brought by any interested party involving an actual

controversy that has not reached a stage at which either party may seek a coercive

remedy and in cases where a party who could sue for coercive relief has not yet done

so.") (citation and quotation signals omitted).

Here, the allegations supporting the Sumo Defendants' affirmative claim for

declaratory relief mirror their defenses to Liberty Mutual's claims relating to the

GAI and Amendments.   Thus, it appears that these issues will be addressed by

presently existing causes of action.   That is, the Court will adjudicate the rights and

obligations of the parties under the GAI, and there is no basis for an affirmative

claim seeking the remedy of declaratory relief.   Moreover, regardless of the party or

parties that eventually prevail on such independent claims, the Court will necessarily

render a judgment providing (*i.e.*, "declaring") appropriate remedies.   Because

Count X is redundant or duplicative of existing causes of action in this matter, it is DISMISSED without leave to amend.

### G. <u>Summary</u>

Liberty Mutual's motion is DENIED as to the claim for negligent misrepresentation (Count V).   The motion is GRANTED in part and the Sumo Defendants' Counterclaim is DISMISSED with leave to amend the following claims: Count I (breach of contract); Counts II and IV (intentional/fraudulent misrepresentation); Count III (fraudulent inducement); Count VI (promissory estoppel); and Count VIII (breach of fiduciary duty).   The remaining claims are DISMISSED without leave to amend: Count VII (breach of the implied covenant of good faith and fair dealing); Count IX (abuse of process); and Count X (declaratory judgment).   The Sumo Defendants are granted until November 20, 2015 to file a further amended counterclaim.

## II.    <u>Liberty Mutual's Motion to Dismiss the Nan Defendants' Counterclaim</u>

The Nan Defendants allege the following counterclaims against Liberty Mutual: (1) suretyship status as guarantor by operation of law (Count I); (2) intended third-party beneficiary (Count II); (3) assumpsit (Count III); (4) breach of Shin Release (Count IV); and (5) abuse of process.

As a preliminary matter, the parties agree that the Nan Defendants do not assert any counterclaims on behalf of Sumo-Nan LLC.   Accordingly, the motion is GRANTED with respect to Sumo-Nan LLC.

## A.   Count I (Suretyship Status as Guarantor)

The Court previously dismissed the Nan Defendants' counterclaim for suretyship discharge without leave to amend because the Nan Defendants are not sureties or "co-sureties," have no stand-alone cause of action for discharge, and cannot assert the suretyship defense of *pro tanto* discharge.   *See* 7/6/2015 Order at 6-11.   The Nan Defendants attempt to allege a new claim, which they characterize as based upon "suretyship status" as guarantors: "To prevent the impairment of Nan's suretyship status from causing the Nan Defendants a loss, the Nan Defendants are discharged as secondary obligors-guarantors under the guaranty by operation of law."   Nan Counterclaim ¶ 30; *cf.* Original Nan Counterclaim [dkt. no. 29] ¶ 21 ("As a direct and proximate result of Liberty's acts and omissions, Nan, Laumaka, and Shin have been discharged, completely or *pro tanto*, from their obligations under the GAI.").   Liberty Mutual seeks dismissal of this claim as a rehash of the one already dismissed by this Court without leave to amend, and because the Nan Defendants are not entitled to the rights or defenses of sureties as "secondary obligors."   The Court concludes that, to the extent the Nan Defendants attempt to

27

state an affirmative claim[4] based upon their purported rights arising from

"suretyship status as a guarantor," they have failed to do so.

As a preliminary matter, the Court reaffirms its prior ruling that Liberty

Mutual is the only "surety" in this action.   Generally, a surety is one who is liable

for the debt or obligation of another, whether primarily or secondarily, conditionally

or unconditionally.   *Am. Motorists Ins. Co. v. Club at Hokuli`a, Inc.,* 2011 WL

3518164, at *4 (D. Haw. Aug. 11, 2011) ("In general, 'a suretyship relationship

exists whenever a person becomes responsible for the debt of another.'") (citation

omitted).   A surety bond is a three-party relationship, in which the surety becomes

liable for the principal's debt or duty to the third party obligee.   *See Hartford Fire*

*Ins. Co. v. United States,* 108 Fed. Cl. 525, 531 (2012); *United States Sur. Co. v.*

_____

[4]To the extent an affirmative cause of action exists for discharge, it permits a surety to seek damages from an obligee after fully performing its bond obligation despite having an impairment of suretyship defense.   *See* Restatement (Third) of Suretyship and Guaranty § 37(4) ("If the obligee impairs the [surety's] suretyship status . . . the [surety] has a claim against the obligee with respect to such performance to the extent that such impairment would have discharged the [surety] with respect to that performance."); *id.* cmt. a (noting that "this section and §§ 39-44 provide rules discharging the [surety] from liability . . . and providing for recovery from the obligee if the loss has already occurred because the [bond] obligation has been performed").   When a surety fully performs, even though it would have had a right to withhold some amount of performance had it asserted a *pro tanto* discharge defense, the surety has effectively overpaid on its bond obligation. In such cases, "the [surety] is harmed and, but for [a cause of action to recover the excess amount paid], the obligee would receive a windfall."   *Id.* at § 37(4) cmt. d.   *See Lumbermens Mut. Cas. Co,* 654 F.3d at 1314-17 ("If a surety concludes that the government has improperly impaired its collateral, the surety has the right to withhold payment on the bond, to the extent the surety has been prejudiced, based on the defense of impairment of suretyship/*pro tanto* discharge.").

*United States*, 83 Fed. Cl. 306, 310 (2008).   Under the bond, the surety is obligated

to the obligee if the principal obligor fails to perform.   The legal relationship of

suretyship is formed when:

> pursuant to contract (the "secondary obligation"), an obligee has
> recourse against a person ("the secondary obligor") or that
> person's property with respect to the obligation (the "underlying
> obligation") of another person (the "principal obligor") to that
> obligee[.]

Restatement (Third) of Suretyship and Guaranty § 1(1)(a) (1996) ( "Restatement").

In this case, the bond was issued by Liberty Mutual as surety or secondary obligor,

for Sumo-Nan as principal obligor, with the United States Department of the Army

as the obligee.   Once again, it is clear that Liberty Mutual alone is the surety under

the bond.

Notwithstanding this clarity, the Nan Defendants seek "suretyship status" as

"secondary obligors" under the Restatement (Third) of Suretyship and Guaranty § 1,

and retitle the 2003 GAI as "the guaranty."   *See* Nan Counterclaim ¶ 13.   The

Restatement section covering transactions giving rise to suretyship status provides:

> (1) This Restatement applies (except as provided in § 3) and a
> secondary obligor has suretyship status whenever:
>
> > (a) pursuant to contract (the "secondary obligation"), an
> > obligee has recourse against a person (the "secondary
> > obligor") or that person's property with respect to the

29

obligation (the "underlying obligation") of another person (the "principal obligor") to that obligee; and

(b) to the extent that the underlying obligation or the secondary obligation is performed the obligee is not entitled to performance of the other obligation; and

(c) as between the principal obligor and the secondary obligor, it is the principal obligor who ought to perform the underlying obligation or bear the cost of performance.

(2) An obligee has recourse against a secondary obligor or its property with respect to an underlying obligation whenever:

(a) the principal obligor owes performance of the underlying obligation; and

(b) pursuant to the secondary obligation, either:

(i) the secondary obligor has a duty to effect, in whole or in part, the performance that is the subject of the underlying obligation; or

(ii) the obligee has recourse against the secondary obligor or its property in the event of the failure of the principal obligor to perform the underlying obligation; or

(iii) the obligee may subsequently require the secondary obligor to either purchase the underlying obligation from the obligee or incur the duties described in subparagraph (i) or (ii).

(3) If the criteria of subsection (2) are fulfilled, the secondary obligor has suretyship status:

(a) regardless of the form of the transaction fulfilling the criteria;

(b) regardless of any term used by the parties to describe the secondary obligor or the secondary obligation;

(c) whether the secondary obligation is conditional or unconditional;

(d) whether or not the secondary obligation is known to the principal obligor;
(e) whether or not the obligee has notice that the secondary obligor has suretyship status; and

(f) whether or not satisfaction of the principal obligor's duty pursuant to the underlying obligation is limited to a particular fund or property.

Restatement (Third) of Suretyship and Guaranty § 1.   The comments and

illustrations to this section make clear that the Nan Defendants are not entitled to

"suretyship status" as secondary obligors.[5]   For example, several of the illustrations

_____

[5]*See* Restatement (Third) of Suretyship and Guaranty § 1, cmt. d ("The obligation of the principal obligor is always the "underlying obligation"; similarly, the obligation of the secondary obligor is always the "secondary obligation."   This means that when the principal obligor and the secondary obligor are both liable on the same contract (as is the case, for example, when the secondary obligor "cosigns" for the principal obligor) that contract creates both the underlying obligation and the secondary obligation.   In many contexts, it is common to have the suretyship relationship created by a "surety bond."   Typically, in such a case, the principal obligor alone has a separate duty to the obligee, and the principal obligor and the secondary obligor both execute a "bond" pursuant to which they each agree to be liable (often, up to a stated limit) in the event of the default of the principal obligor as to the separate duty.   In that case, the obligation of the secondary obligor on the surety bond is the secondary obligation, while the obligations of the principal obligor on the surety bond and on the separate duty together constitute the underlying obligation. Thus, while the principal obligor is liable on the same contract that creates the secondary

describe fact patterns similar to that present here -- in which there is a construction project for Company O to be performed by Company P, where Company P obtains a performance bond from Company S.   In this scenario, Company O is the obligee; Company P is the principal obligor; and the bond issuer, Company S, is the secondary obligor.   *See* Restatement (Third) of Suretyship and Guaranty § 1 cmt. c, illus. 1.

Here, suretyship relationship is created by the bond: Liberty Mutual is the surety and secondary obligor; Sumo-Nan LLC is the principal obligor; and the United States Department of the Army is the obligee.   But the Nan Defendants' attempt to create a suretyship relationship from the 2003 GAI—serving as the "guaranty"—does not transform them into a secondary obligor by operation of law. The Nan Defendants incorrectly assert that Liberty Mutual "as the 'obligee' of [Sumo-Nan's] obligation, … has alleged that it has recourse against Nan under a separate collateral agreement as a 'secondary obligor' or 'guarantor' of [Sumo-Nan's] duty to reimburse or exonerate Liberty with respect to the underlying obligation."   Nan Defendants' Opposition at 14.   As discussed above, the United States government—not Liberty Mutual—is the obligee.   Although the Nan

---

obligation, the principal obligor's duty arising from its status as a party to the contract is part of the underlying obligation.").

Defendants persist in their argument (Nan Defendants' Opposition at 15-16) that they "have 'suretyship status' as a secondary obligor under the Restatement § 1(1), and/or as a guarantor, by operation of law," the Court is not convinced.

The Nan Defendants try to reframe the 2003 GAI as endowing them the rights of "a 'secondary obligor' and/or 'guarantor' of [Sumo-Nan's] duty to reimburse Liberty against losses as a surety under the Bond."   Nan Defendants' Opposition at 16.   Under this theory, Liberty Mutual (rather than the United States government) is the obligee; Sumo-Nan LLC is the principal obligor; and the Nan Defendants are the secondary obligors.   This creative reading of the 2003 GAI, however, does not result in an affirmative claim, as alleged in Count I.   Under the GAI, the Nan Defendants are indemnitors, jointly and severally liable to the surety, Liberty Mutual.   The GAI, unlike the bond, does not create a tripartite relationship. Regardless of the terms used in the various GAI, they are contracts of indemnity, properly viewed in the context in which they were issued, not in a vacuum, and they do not create "suretyship status" for the Nan Defendants.   Were it otherwise, virtually every indemnity agreement that involves spreading the risk otherwise borne by the surety would entitle the indemnitor itself to surety status, instead of the entity assuming the obligation, in whole or in part, of the surety.   Nothing in the Restatement supports such a crabbed reading.

33

Moreover, even if the Nan Defendants could assert the rights and defenses of a surety or guarantor, they fail to state a claim under Restatement § 37 for impairment of suretyship status.   They allege that "Liberty [initially] failed and/or refused to tender the [Sumo-Nan] default to the Sumo Defendants for indemnification as secondary obligors-guarantors under the guaranty."   Nan Counterclaim ¶ 22.   However, "Liberty subsequently tendered the [Sumo-Nan] default to the Sumo Defendants for indemnification as secondary obligors-guarantors under the guaranty, and filed the instant Complaint alleging, *inter alia*, that it is entitled to recourse against the Sumo Defendants under the guaranty to indemnify Liberty against the [Sumo-Nan] default.   The Sumo Defendants are secondary obligors-guarantors under the guaranty."   Nan Counterclaim ¶ 27.   The Nan Defendants summarily conclude that "the acts and omissions of Liberty Mutual as stated herein have impaired the Nan Defendants' suretyship status as secondary obligors-guarantors under the guaranty by increasing their risk of loss, by increasing their potential cost of performance, and by decreasing their potential ability to cause the Sumo Defendants to bear the cost of performance under the guaranty to indemnify Liberty against the [Sumo-Nan] default."   Nan Counterclaim ¶ 29.   Nothing, however, is factually alleged to support such an impairment claim.   There is no allegation, for instance, suggesting

34

how or why the Nan Defendants' risk of loss has been impaired by Liberty Mutual's "subsequent tender," nor is there an indication of why that tender has interfered with the Nan Defendants' efforts to require other indemnitors to bear the cost of which Liberty claims entitlement.   *See* Restatement (Third) of Suretyship and Guaranty § 37(a).

Because the Nan Defendants cannot claim the rights or defenses of a surety, and cannot claim status as a secondary obligor under the Restatement, amendment of this claim would be futile.   Liberty Mutual's motion is GRANTED, and Count I is DISMISSED without leave to amend.

### B.   <u>Count II (Intended Third Party Beneficiary)</u>

Although Count II is entitled, "intended third party beneficiary," the Nan Defendants contend that their claim is as a "sole" beneficiary.   *See* Nan Defendants' Opposition at 21-22.   Their amended counterclaim alleges that –

> 14.   On or before June 7, 2007, Liberty knew that the Nan Defendants had required that the Sumo Defendants be added as secondary obligors-guarantors under the guaranty as a condition precedent by the Nan Defendants for Liberty to issue the Bond for [Sumo-Nan] LLC (the "Condition").

> 15.   Liberty allegedly performed the Condition under Amendment #2 dated June 7, 2007, to the guaranty, and/or under Amendment #9 dated March 25, 2010 to the guaranty, and/or under the [GAI] dated March 2, 2011.

. . .

33.    As a result of Liberty's agreement to perform the Condition, the Nan Defendants, as secondary obligors-guarantors under the guaranty to indemnify Liberty against the [Sumo-Nan] default are intended [sole] beneficiaries of the Sumo Defendants' agreement to perform as secondary obligors-guarantors under the guaranty to indemnify Liberty against the [Sumo-Nan] default by operation of law.

. . .

36.    Liberty has breached Nan's intended [sole] beneficiary agreement and/or the covenant of good faith and fair dealing implied therein, and/or has failed to comply with some or all standards or practices in the industry, including the execution of the guaranty by the Sumo Defendants . . . and interpreting, performing and enforcing the Sumo Defendants' secondary obligation under the guaranty to indemnify Liberty against the [Sumo-Nan] default.

Nan Counterclaim.

The Nan Defendants acknowledge that they are not intended third-party beneficiaries and that there is no agreement that grants them the rights of such beneficiaries.   To the extent they allege that Liberty Mutual breached a contractual duty, however, the amended counterclaim does not adequately state a claim for breach of contract.   As noted above, a breach of contract claim must set forth (1) the contract at issue; (2) the parties to the contract; (3) whether plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by

defendants; and (5) when and how defendants allegedly breached the contract.   *See Otani*, 927 F. Supp. at 1335.   Despite two prior amendments to state a claim for breach of contract, the Nan Defendants again fail to allege the basic elements that would support such a claim.

According to the Nan Defendants, the amended counterclaim "clearly alleges that the contract is 'Liberty's agreement to perform the Condition,'" and that the Condition is "an agreement between Nan and Liberty Mutual to add the Sumo Defendants as secondary obligors-guarantors for Nan's sole benefit[.]"   Nan Defendants' Opposition at 20 (quoting Nan Counterclaim).   This conclusory allegation is not supported by sufficient factual matter to support the elements of the Nan Defendants' claim.   They do not allege who made the purported "agreement between Nan and Liberty Mutual," the particular provision violated, or facts demonstrating their own performance.   To the extent the Condition is based upon an oral agreement, the contractual provision or agreement has not been satisfactorily alleged.[6]

---

[6]The Court previously noted that:

> the GAI includes an integration clause, which expressly provides that it "may not be changed or modified orally.   No change or modification shall be effective unless made by written amendment executed to form a part hereof."   Ex. A-1 at 4.   To the extent the Agreement was oral, there is no

Liberty Mutual's motion is GRANTED as to Count II, and the claim is

DISMISSED.   To the extent this cause of action entitled, "intended third-party

beneficiary," is intended as a breach of contract claim, the Nan Defendants again fail

to allege the basic elements of the claim, and have failed to follow the guidance set

forth in the Court's prior order.   Because amendment may be possible, the Nan

Defendants are granted leave, one final time, to attempt to state a claim for breach of

contract.

## C.   **Count III (Assumpsit)**

Entitled "assumpsit," Count III appears to allege a claim based upon implied

contract.   The "implied contract" is defined in the amended counterclaim as

follows:

> As a result of Liberty's agreement to perform the Condition,
> Liberty assumed control over the Nan Defendants' right of
> recourse against the Sumo Defendants as secondary
> obligor-guarantors under the guaranty to indemnify Liberty
> against the [Sumo-Nan] default, and assumed control over the

---

allegation or evidence that it was memorialized in writing.   Accordingly, in
the face of the express provisions in the GAI, the allegations that Liberty
Mutual breached an Agreement—made at an unspecified time, between
unspecified individuals with the authority to bind the parties, and not
memorialized in any writing—fail to satisfy Federal Rule of Civil
Procedure 8 or to otherwise state a plausible claim for breach of contract.

7/6/2015 Order at 13.

> execution of the guaranty by the Sumo Defendants as secondary
> obligors-guarantors, and assumed control over determining,
> interpreting, performing, and enforcing the Sumo Defendants'
> status as secondary obligors-guarantors under the guaranty to
> indemnify Liberty against the [Sumo-Nan] default, by operation
> of law (the "implied contract").

Nan Counterclaim ¶ 39.   The Nan Defendants then allege that:

> Liberty's breach of its duty to adhere to all standards or practices
> in the industry applicable to the implied contract and applicable
> to the execution of the guaranty by the Sumo Defendants as the
> secondary obligors-guarantors under the guaranty, determination
> of their status as secondary obligors-guarantors, and interpreting,
> performing and enforcing the Sumo Defendants' secondary
> obligation under the guaranty to indemnify Liberty against the
> [Sumo-Nan] default.

Nan Counterclaim ¶ 42.   Liberty Mutual also "breached its covenant of good faith

and fair dealing in the implied contract."   *Id.* ¶ 43.

To state a claim for breach of an implied contract, a plaintiff must allege the

breach of "an agreement in fact," which is not expressed, but "is implied or

presumed" based upon the actions of the parties.   *Durette v. Aloha Plastic*

*Recycling, Inc.,* 105 Hawai'i 490, 504, 100 P.3d 60, 74 (2004); *Kemp v. State of*

*Hawaii Child Support Enforcement Agency*, 111 Hawai'i 367, 391, 141 P.3d 1014,

1038 (2006).   Although the Nan Defendants allege that there was an "agreement to

perform the Condition," state that "Liberty allegedly performed the Condition," and

identify "Liberty and the Nan Defendants as the parties to the contract" (Nan

Defendants' Opposition at 22-23), this claim suffers from the same defects identified with respect to Count II.   Among other things, the "Condition" or other agreement is not sufficiently set forth on the face of the amended counterclaim. Further, entities do not act--persons do, on behalf of entities. Simply stating that "Liberty" acted, or that the "Nan Defendants" acted does little to satisfy the pleading requirement in the context of a breach of contract claim, whether express or implied. Here, *which* persons acted, *what they did* to suggest a contract was reached, and *when* are among the requisite details absent from the amended counterclaim.   *See generally Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.,* 870 F. Supp. 1015, 1035 (D. Haw. 2012) ("Relying on *Au v. Au*, 63 Haw. 210, 221, 626 P.2d 173, 181 (1981), which held that a breach of contract claim may be dismissed when the contractual provision is not specified, the district court dismissed the breach of contract claim because the insured only "levie[d] general allegations of a contractual breach" instead of pointing to contractual provisions.") (citing *Otani*, 927 F. Supp. at 1335-36).

In short, the Nan Defendants' breach of an implied contract theory is dismissed for the same reasons addressed with respect to Count II—the Nan Defendants' failure to allege the elements of a breach of contract claim, and the facts on which such a claim is based.   Count III is DISMISSED with leave to amend to

state a claim for breach of an implied contract.   No additional opportunities beyond

this one will be afforded to re-allege or clarify this claim.

### D.   <u>Count IV (Breach of Shin Release)</u>

In Count IV, the Nan Defendants allege that –

> 46.   By amendment to the guaranty, Liberty agreed to release
> the Shin Defendants as secondary obligors-guarantors under the
> guaranty from all "financial obligation to the Surety unless and
> until the occurrence of the Triggering Event" ("Shin Release").

> 47.   The Shin Defendants have no financial obligation to
> Liberty unless and until the occurrence of the Triggering Event.

> 48.   At the time Liberty filed the instant action against the Shin
> Defendants, the Triggering Event had not occurred.

> 49.   Liberty's instant action against the Shin Defendants as
> secondary obligors-guarantors under the guaranty to indemnify
> it against the [Sumo-Nan] default constitutes a breach of the Shin
> Release and of the covenant of good faith and fair dealing
> implied in the Shin Release.

Nan Counterclaim.

Although it is not specifically identified as the contractual provision breached

on the face of their amended counterclaim, the Nan Defendants appear to point to

Amendment No. 6 to the GAI as the source of the "Shin Release."   This

Amendment defines the "Triggering Event" as "distributions, payments of

dividends or bonuses, redemption of stock, loans, or sale of assets of NAN to Patrick

41

Shin, or per Mr. Shin's direction and other than in the normal course of business, that reduce the Tangible Net Worth below the Capital Retention Value." *See* Complaint, Ex. A-7 (Amendment No. 6, dated 12/8/2008).   It also sets forth the following "Contingent Indemnity" provision, which the Nan Defendants appear to describe as the release:

> The obligations of Indemnitors Patrick Shin, Mariko Kaneko Shin, Patrick Shin Trust (hereinafter "Contingent Indemnitors") under the Agreement are amended so that Contingent Indemnitors shall have no financial obligation to the Surety unless and until the occurrence of the Triggering Event.   Upon such Triggering Event, Contingent Indemnitors shall immediately and automatically, without any further action or notice by the Surety, become liable under the Agreement as Indemnitor with their financial obligations to the Surety limited only by the greater of a) the amount of the triggering breach; or b) the maximum amount of the triggering breach and any subsequent breach or breaches.   This liability shall continue until such time as the Surety releases the Contingent Indemnitors in writing, notwithstanding any subsequent cure of the breach.

*Id.*   The Nan Defendants contend that under this paragraph, the Shins individually have "no financial obligation to the Surety" because the Triggering Event has not occurred.

Under the plain language of the Contingent Indemnity provision quoted above, Patrick Shin, Mariko Kaneko Shin, and the Patrick Shin Trust remain "Indemnitors" under the GAI.   That is, this provision does not manifest an intention

42

by Liberty Mutual to "release the Shin Defendants" as alleged in their amended counterclaim.   Nan Counterclaim ¶ 46.

To the extent the Nan Defendants allege that Amendment No. 6 does not impose indemnification obligations on the Shins until the occurrence of the Triggering Event, and that Liberty Mutual does not allege in its complaint that the Triggering Event has occurred, it appears to the Court that the Nan Defendants are, in fact, complaining about the absence of a condition precedent.[7]   The condition precedent defense, or failure to perform a condition precedent, is not the same as an affirmative claim for breach of contract.   *See* 13 Williston on Contracts § 38:7 (4th ed.) ("While the failure of a condition to occur excuses performance by the party whose performance is dependent on its occurrence, the failure of the condition does not, absent a promise that it would occur or would be performed, give rise to a breach of contract, subjecting the other party to liability for damages. . . . Moreover, because a promisor's duty does not become absolute unless and until the condition

_____

[7]To the extent the Nan Defendants deny that a condition precedent occurred or was performed with respect to Liberty Mutual's claims, their allegations may be subject to Rule 9(c) of the Federal Rules of Civil Procedure, which states, "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or have been performed.   But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." There is no affirmative requirement that plaintiffs plead that conditions precedent have been met. *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1124 (9th Cir. 1998) ("Rule 9(c) does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made.").

43

precedent occurs, the failure or nonoccurrence of the condition is a defense to an action against the promisor for breach of its promise."); *see also* 8 Corbin on Contracts § 30.13 (revised ed. 1999) (addressing failure to perform a condition precedent and breach of contract); *Handley v. Ching*, 2 Haw. App. 166, 169, 627 P.2d 1132, 1135 (1981) ("[A] condition precedent to an obligation to perform a contract calls for the performance of some act or the happening of some event after a contract is entered into, upon the performance or happening of which the obligation to perform immediately is made to depend."); *Lexington Ins. Co. v. Centex Homes*, 795 F. Supp. 2d 1084, 1094 (D. Haw. 2011) ("Hawaii courts, following the Second Restatement of Contracts, define a 'condition precedent' as 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'") (quoting *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 246, 921 P.2d 146, 166 (1996)).

Because the absence of a condition precedent does not give rise to a breach of contract claim, Count IV is DISMISSED without leave to amend.

### E.   **Count V (Abuse of Process)**

The Nan Defendants allege an abuse of process claim based on the filing of the instant action by Liberty Mutual, "knowing that the Triggering Event had not occurred and willfully and/or recklessly impair[ing] the Nan Defendants' suretyship

44

status."   Nan Counterclaim ¶ 53.   They assert that Liberty Mutual "filed the instant action against the Shin Defendants to coerce the Nan Defendants into accepting Liberty's misconduct and impairment of their suretyship status[.]"   *Id.* ¶ 54.

As discussed above with respect to the Sumo Defendants' abuse of process claim, Liberty Mutual's decision to file the instant lawsuit itself cannot sustain an abuse of process claim.   The Shin Defendants are parties to the GAI along with the other Nan Defendants.   Liberty Mutual cannot be liable for abuse of process where it has done nothing more than seek to enforce the contractual obligations to which it believes Defendants, including the Nan Defendants, are subject.   *See Young*, 119 Hawai'i at 414, 198 P.3d at 677.   To the extent the allegations are based on the impairment of their suretyship status, the Court has determined that the Nan Defendants have no such status, and, accordingly, that too may not serve as the basis of an abuse of process claim.

Liberty Mutual's motion is GRANTED, and Count V is DISMISSED without leave to amend.

## **CONCLUSION**

The Sumo Defendants' Counterclaims are DISMISSED, in part, with leave to amend the following claims: Count I (breach of contract); Counts II and IV (intentional/fraudulent misrepresentation); Count III (fraudulent inducement),

45

Count VI (promissory estoppel); and Count VIII (breach of fiduciary duty). Liberty Mutual's Motion to Dismiss Count V (negligent misrepresentation) is DENIED.   The Sumo Defendants' remaining claims are DISMISSED without leave to amend: Count VII (breach of the implied covenant of good faith and fair dealing); Count IX (abuse of process); and Count X (declaratory judgment).

The Nan Defendants' Counterclaims are DISMISSED with leave to amend the following claims: Counts II and III (breach of contract and/or implied contract). The remaining claims are DISMISSED without leave to amend: Count I (suretyship status as guarantor by operation of law); Count IV (breach of Shin release); and Count V (abuse of process).

//          //

//          //

//          //

46

To the extent granted leave to amend, the Sumo and Nan Defendants (not including Sumo-Nan LLC) may file further amended counterclaims **no later than November 20, 2015**.

IT IS SO ORDERED.

DATED: November 4, 2015 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
United States District Judge

_____

*Liberty Mutual Insurance Company v. Sumo-Nan, LLC, a Hawaii limited liability company, et al.*; Civil No. 14-00520 DKW-KSC; **ORDER (1) GRANTING IN PART AND DENYING IN PART LIBERTY MUTUAL'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SU-MO BUILDERS, INC., SU YONG YI, AND MAUREEN DEE YI [DKT. NO. 94]; AND (2) GRANTING LIBERTY MUTUAL'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM OF SUMO-NAN, LLC, NAN, INC., LAUMAKA LLC, PATRICK SHIN, MARIKO KANEKO SHIN, AND PATRICK SHIN, TRUSTEE, PATRICK SHIN TRUST [DKT. NO. 116]**