IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SUMO-NAN LLC, a Hawaii limited liability company; NAN, INC., a Hawaii corporation, *et al.*<br><br>Defendants. | CIVIL NO. 14-00520 DKW-KSC<br><br>ORDER GRANTING LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I AGAINST DEFENDANT SUMO-NAN LLC |

**ORDER GRANTING LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I AGAINST DEFENDANT SUMO-NAN LLC**

**INTRODUCTION**

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") seeks partial summary judgment on its breach of contract claim against Sumo-Nan LLC, based upon Sumo-Nan's failure to indemnify. After Sumo-Nan failed to pay construction contractors associated with a project that Sumo-Nan had contracted to build for the Department of the Army, Liberty Mutual stepped in, allegedly paying these

contractors more than $1.6 million, pursuant to a Miller Act Bond it had issued to Sumo-Nan.  Because Sumo-Nan is obligated to indemnify Liberty Mutual under the applicable agreements of indemnity, Liberty Mutual's motion is GRANTED.

## BACKGROUND

Liberty Mutual brings claims for (1) Breach of Contract of Indemnity; (2) Unjust Enrichment; and (3) Quia Timet (by means of an injunction preventing the transfer of assets) against defendants Nan, Inc.; Laumaka LLC; Patrick Shin; Mariko Kaneko Shin; and the Shin Trust (collectively, the "Nan Defendants"); Su-Mo Builders, Inc., Su Yong Yi, and Maureen D. Yi (collectively, the "Sumo Defendants"); and Sumo-Nan.  The instant motion seeks summary judgment on Count I as to Sumo-Nan only.[1]

Liberty Mutual's claims arise from a Miller Act bond it issued on behalf of Sumo-Nan in connection with a construction project at Tripler Army Medical Center, Contract No. W9128A-11-C-0006 ("TAMC Project").  The Miller Act required Sumo-Nan to furnish the government with such a performance and payment bond.  *See* 40 U.S.C. § 3131 *et seq.*; *see also United States ex rel. Int'l*

---

[1] Su-Mo Builders, Inc. and Nan, Inc. entered into a joint venture to operate Sumo-Nan.  Su-Mo Builders, Inc. is the managing joint venturer with a 51% participation interest in the profits and losses.  Nan, Inc. is 49 % owner of Sumo-Nan.  Declaration of Travis Remick ¶ 14.

*Bus. Machines Corp. v. Hartford Fire Ins. Co.*, 112 F. Supp. 2d 1023, 1029 (D. Haw. 2000) ("Under the Miller Act . . . , a general contractor on a federal construction project must post a bond to protect all suppliers of labor and material for the project."). Liberty Mutual has issued over seventy construction surety bonds (totaling over $149,000,000) on behalf of joint ventures between Su-Mo Builders, Inc. and Nan, Inc., in which Su-Mo Builders, Inc. was the managing joint venturer. Remick Decl. ¶ 18. And Liberty Mutual has issued Miller Act bonds for two other joint venture projects under the Sumo-Nan name, in addition to the TAMC Project bond at issue in this case. Remick Decl. ¶ 17.

As partial consideration for its agreement to furnish bonds on behalf of Sumo-Nan, Liberty Mutual and all defendants executed General Agreements of Indemnity, including certain Amendments (collectively, "GAI"). The Nan Defendants executed the 2003 GAI, dated October 10, 2003; and Sumo-Nan was added as a Principal and Indemnitor by its execution of Amendment No. 9, dated March 25, 2010. *See* Ex. 3 (2003 GAI), Ex. 4 (Amendment No. 9), attached to Remick Decl. Under the GAI, each of the defendants, jointly and severally, agreed to indemnify Liberty Mutual against any liability for losses, fees, costs, and expenses that Liberty Mutual incurred as a consequence of issuing bonds on behalf of Sumo-Nan or as a consequence of a breach of the GAI.

On or about May 26, 2011, Liberty Mutual, as surety, issued to Sumo-Nan, as principal, a Performance and Labor & Material Payment Bond No. 023-017-103, naming as obligee the United States of America, in the penal sum of $15,996,619.00. The Bond is signed by Su Yong Yi as the Managing Partner of Sumo-Nan.  *See* Ex. 5 (Bond), attached to Remick Decl.

Sumo-Nan was unable to meet its obligations on the TAMC Project, and as a result, Liberty Mutual received claims on the Bond, including demands from subcontractors and suppliers of Sumo-Nan, in excess of $1,638,409.00. Declaration of Sam Barker ¶¶ 12-14; Ex. 8 (10/31/14 Letter).  Liberty Mutual made a demand to defendants to deposit cash or other property as collateral security, to protect Liberty Mutual from claims on the Bond, but defendants have not complied with that demand.  Barker Decl. ¶¶ 7-10; Ex. 8 (10/31/14 Letter).  Liberty Mutual contends that all defendants failed to perform under the TAMC Project, the GAI, and the Bond, whereas Liberty Mutual performed its obligations under the GAI and the Bond.  Complaint ¶¶ 33-36.  Liberty Mutual now seeks partial summary judgment on its Count I claim for breach of contract against Sumo-Nan.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

### I.  Breach of GAI by Sumo-Nan (Count I)

Because there are no genuine issues of material fact with respect to Sumo-Nan's liability, Liberty Mutual is entitled to partial summary judgment on its Count I claim that Sumo-Nan breached its obligations under the GAI.

Liberty Mutual presents unrebutted evidence satisfying the elements of its breach of contract claim against Sumo-Nan, including: (1) the contracts at issue (the Bond, 2003 GAI and Amendment No. 9); (2) the parties to the contracts (Liberty Mutual and Sumo-Nan); (3) Liberty Mutual's performance under the contracts; (4) the particular provision violated by Sumo-Nan (indemnity provision); and (5) when and how Sumo-Nan breached the GAI by refusing to indemnify Liberty Mutual. *See Evergreen Eng'rg, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012); *see also* Liberty Mutual Concise Statement of Facts ("CSOF") ¶¶ 3-10.

Sumo-Nan does not dispute that it is a party to the GAI (under Amendment No. 9), or that it failed to reimburse or exonerate Liberty Mutual once Liberty Mutual had made payments on the Bond.   In fact, although Sumo-Nan acknowledges that it has "defaulted" under the GAI, it contends that its non-performance is excused by Liberty Mutual's purported conduct.   In opposition to the motion, Sumo-Nan, with neither evidentiary support nor factual clarity, makes repeated circular assertions to excuse its non-performance: "[Liberty Mutual's] failure to properly identify the Sumo Defendants as Indemnitors which caused Nan's discharge as indemnitor, prevented [Sumo-Nan] from performing under the GAI by or through its indemnitors, and was the sole cause of [Sumo-Nan's] default." Sumo-Nan Mem. in Opp. at 8; *see also* Sumo-Nan CSOF ¶ 14 ("[Liberty Mutual] prevented [Sumo-Nan] from performing under the GAI by or through its indemnitors, and is the sole cause of [Sumo-Nan's] default."); Freestone Decl. ¶ 5 ("[Liberty Mutual] has prevented [Sumo-Nan] from performing its obligations under the GAI by or through its Indemnitors, and is the sole cause of [Sumo-Nan's] default."); Sumo-Nan Mem. in Opp. at 3 ("[Liberty Mutual] prevented [Sumo-Nan] from performing its obligations to pay its subcontractor's claims by or through its Indemnitors.   [Liberty Mutual's] acts and omissions violated the Implied Condition Rule, and is the proximate cause of [Sumo-Nan's] default under the GAI.").

More specifically, Sumo-Nan argues that Liberty Mutual is not entitled to summary judgment because it fails to establish the third, fourth, and fifth elements of its breach of contract claim:

> By violating the Implied Condition, [Liberty Mutual] has failed to satisfy Element 3 requiring [Liberty Mutual] to perform "all the terms covenants and <u>conditions</u> on its part to be performed under the GAI and TAMC Bond." Elements 4 and 5 have not been satisfied because [Liberty Mutual's] violation of the Implied Condition Rule has excused [Sumo-Nan] from any obligation to hold harmless Liberty for claims made on the TAMC Bond." *Stanford Carr Development v. Unity House*, 141 P.3d 459, 477 (Hawaii 2006).

Sumo-Nan Mem. in Opp. at 7 (some citations omitted).

With respect to the third element — Liberty Mutual's performance — Sumo-Nan does not elaborate further on the specific "terms covenants and conditions" of the GAI or the Bond that Liberty Mutual failed to perform. To the contrary, the summary judgment record demonstrates that Liberty Mutual issued the Bond; received claims on the Bond; provided Sumo-Nan written notice of the claims under the Bond; and paid claims on the Bond. *See* Exs. 5-8. Sumo-Nan creates no genuine issue of fact with respect to Liberty Mutual's performance through mere allegations that lack any evidentiary basis.

To the extent Sumo-Nan contends that its own performance is excused because Liberty Mutual violated the "Implied Condition Rule," the argument is

without merit. Sumo-Nan cites *Stanford Carr Development v. Unity House* and *Ikeoka v. Kong*, positing that its "non-performance of the contract was through no fault of its own, and [Liberty Mutual], without legal excuse, <u>actually</u> prevented [Sumo-Nan] from performing." Sumo-Nan Mem. in Opp. at 6. Neither the law nor the facts put forward by Sumo-Nan support its assertion.

First, while *Stanford Carr Development v. Unity House*, 111 Hawai'i 286, 141 P.3d 459 (2006), and *Ikeoka v. Kong*, 47 Haw. 220, 386 P.2d 855(1963), generally address estoppel and other affirmative defenses, they provide no basis to excuse Sumo-Nan's non-performance here. Neither case supports Sumo-Nan's asserted defense of the "Implied Condition Rule."[2]

---

[2]*Stanford Carr Development* examined jury instructions for the affirmative defenses of breach of the duty of good faith and fair dealing and prevention of performance in the context of partnership liability and fiduciary duty. Those duties are not implicated here. In any event, in *Stanford Carr Development*, the Hawaii Supreme Court held that, even if the jury instructions as given were improperly worded in the context of a "lender-borrower relationship," rather than between fiduciaries, there was substantial evidence to support the jury's verdict that the defendant actually prevented plaintiff's performance. The instruction "prevention of performance" stated in part: "To prevail on the affirmative defense, Plaintiffs must prove that their non-performance of the contract was through no fault of the Plaintiffs and that Defendant . . . without legal excuse, actually prevented Plaintiffs from performing." 111 Hawai'i 286, 304, 141 P.3d 459, 477 (2006). The court catalogued the extensive record evidence of defendant's conduct "supporting the jury's verdict that [defendant's] self-serving actions were a breach of the duty of good faith and fair dealing and impaired the success of the Trovare Project, thus causing [plaintiff's] failure to pay back its loan." *Id.* at 304, 141 P.3d at 477. Sumo-Nan fails to present any remotely similar evidence here and raises no genuine issue of material fact on this point.

Likewise, *Ikeoka* does not assist Sumo-Nan. Under the so-called "prevention doctrine," a condition precedent can be waived or excused if the promisor's conduct prevents or hinders fulfillment of the condition. *See Ikeoka v. Kong*, 47 Haw. 220, 228, 386 P.2d 855, 860 (1963)

Second, Sumo-Nan sets forth no *facts* demonstrating any act or omission by Liberty Mutual that prevented Sumo-Nan's performance. Even if "Nan and [Sumo-Nan] were informed by [Liberty Mutual] that due to a 'scrivener's error' the Sumo Defendants had been excluded as indemnitors under the GAI," Sumo-Nan's performance was not thereby excused. Freestone Decl. ¶ 3. Nothing in any of the agreements offered by the parties obligated Liberty Mutual to pursue each of its indemnitors, or each of its indemnitors in any particular order, much less offered Sumo-Nan absolution in the event Liberty Mutual chose to pursue it first. Moreover, whatever Liberty may have done initially, it has, in fact, sought indemnification from the Sumo Defendants under the GAI.[3]  *See, e.g.*, Complaint;

---

("[N]o one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance."). "It is a general principle of contract law that if one party to a contract hinders, prevents or makes impossible performance by the other party, the latter's failure to perform will be excused." *American Elec. Co., LLC v. Parsons RCI, Inc.*, 2015 WL 1966466, at * 10 (D. Haw. Apr. 30, 2015) (quoting 13 Williston on Contracts § 39:3 (4th ed., updated 2014)); *see also* Restatement (Second) of Contracts § 245 cmt. a (1981) ("Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him under § 205 may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence."). As discussed elsewhere, even construing Sumo-Nan's arguments liberally, Liberty Mutual's purportedly wrongful actions did not hinder Sumo-Nan's performance. *Cf.* 13 Williston on Contracts § 39:3 ("Under the doctrine, a contracting party whose performance of its promise is prevented by the other party is not obligated to perform and is excused from any further offer of performance."). Accordingly, the doctrine of prevention does not bar or estop Liberty Mutual's breach of contract claim against Sumo-Nan.

[3]Indeed, given the contractual right to do so, pursuing any other course, as alleged by Sumo-Nan, simply makes no sense.

Sumo Defendants' Answer; Barker Decl. ¶ 6-10. Thus, Sumo-Nan fails to create a genuine issue of fact that an "implied condition" of the 2003 GAI or Amendment No. 9 was "violated" by Liberty Mutual and that this somehow prevented Sumo-Nan from performing its obligations.[4]

Regardless of the status of either the Nan Defendants or Sumo Defendants as indemnitors, Sumo-Nan itself is bound under Amendment No. 9 by the terms of the 2003 GAI. It fails to present any evidence to the contrary. Any argument relating to *Nan, Inc.*'s purported discharge is untethered from Sumo-Nan's independent obligation under the GAI. To be clear, in opposition to the motion, Sumo-Nan presents no facts showing that Liberty Mutual did anything to prevent *Sumo-Nan*'s performance. Under the GAI, Sumo-Nan (as indemnitor and principal), is obligated to:

> exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs

---

[4] The source of the "implied condition" is vague, but appears to be an undated "request" by Nan, Inc. to Liberty Mutual—not an agreement between the parties—to seek indemnification from the Sumo Defendants:

> Nan, Inc. is 49% owner of [Sumo-Nan] and was ready, willing and able to pay [Sumo-Nan's] subcontractors' claims under the TAMC Bond, but requested that [Liberty Mutual] also demand exoneration and indemnification from the Sumo Defendants as co-guarantors under the GAI.

Freestone Decl. ¶ 2.

> and expenses of whatsoever kind or nature including, but not limited to pre- and post-judgment interest from the date of breach of this Agreement or a breach of any other written agreements between or for the benefit of the Surety and the Indemnitor(s) and/or Principal(s) . . . court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements . . .   If the Surety determines, it its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which the Indemnitors and Principals will be obligated to Indemnify the Surety under the terms of this Agreement or Other Agreements, the Indemnitors and/or Principals shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability . . . .

Ex. 3 (2003 GAI).   When Liberty Mutual requested collateral security to cover losses caused by claims made on the Bond, Sumo-Nan did not comply, failing to deposit cash or other property to cover Liberty Mutual's expenditures.  *See* Complaint ¶ 29; Sumo-Nan Answer ¶ 4; Liberty Mutual Ex. 8.   Sumo-Nan breached the GAI by failing to indemnify, exonerate, and hold harmless Liberty Mutual.   Accordingly, Liberty Mutual is entitled to summary judgment on Count I against Sumo-Nan.

## II. Sumo-Nan's Rule 56(d) Request is Denied

Sumo-Nan requests time to conduct additional discovery pursuant to Federal Rule of Civil Procedure 56(d) because Liberty Mutual's "motion is premature and should be denied on the ground that the facts essential to justify Sumo-Nan LLC's opposition to [the motion] cannot be presented because [Sumo-Nan's] discovery of Liberty Mutual's employees and witness residing on the mainland [has] not been completed[.]" Sumo-Nan Mem. in Opp. at 9. Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Whether to deny a Rule 56(d) request for further discovery by a party opposing summary judgment is within the discretion of the district court. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920-21 (9th Cir. 1996). To obtain a continuance under Rule 56(d), the party opposing a motion for summary judgment must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Blough v. Holland Realty, Inc*, 574 F.3d 1084, 1091 n.5 (9th Cir.

2009) (citation omitted). "A party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Moreover, "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists." *Nidds*, 113 F.3d at 921. The movant must also show diligence in previously pursuing discovery. *See Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56[d] motion.").

Sumo-Nan's effort falls short of the rule's requirements. Counsel's declaration does not identify particular facts that the requested discovery would reveal. Rather, it conclusorily states in pertinent part:

> 3. Facts essential to justify Sumo Nan LLC's ("SNLLC") opposition to Liberty Mutual's Motion for Partial Summary Judgment cannot be presented because Nan, Inc.'s depositions of Liberty Mutual's employees, agents and witnesses residing on the mainland, have not been conducted pending determination of the relevant issues raised by the affirmative defenses and counterclaims filed by SNLLC,[5] the Sumo Defendants and Nan, Inc. herein.

---

[5]The Court notes that Sumo-Nan did not assert any counterclaims against Liberty Mutual. *See* 11/4/2015 Order at 27 ("[T]he parties agree that the Nan Defendants do not assert any counterclaims on behalf of Sumo-Nan LLC.").

13

> 4. Nan's proposed depositions include, without limitation, Liberty Mutual employee, Sam Barker, its designated representatives regarding the form of the Liberty Mutual General Agreement of Indemnity, including drafting and interpretations thereof. To minimize SNLLC's fees and travel expenses, all the issues need to be identified before taking the depositions of Liberty Mutual's employees and agents residing on the mainland. Accordingly, SNLLC respectfully requests that the court deny the motion, and allow SNLLC time to conduct discovery of Liberty Mutual as to SNLLC's affirmative defenses, including the depositions of its employees and designated witnesses.

Declaration of Samuel P. King, Jr. ¶¶ 3-4.

The declaration notably fails to identify any discoverable facts, fails to identify the basis for believing that such facts exist, and fails to discuss what the specific discovery sought would establish. Nor does the declaration establish the requisite diligence. "Rule [56(d)] is not a license for a fishing expedition in the hopes that one might find facts to support its claims." *Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 732 F. Supp. 2d 1107, 1125 (D. Haw. 2010); *see also Tatum*, 441 F.3d at 1100-01 (finding that an attorney declaration was insufficient to support a Rule 56 continuance where the declaration failed to specify specific facts to be discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment).

Accordingly, the Court DENIES Sumo-Nan's request for a Rule 56(d) continuance.

## CONCLUSION

For the foregoing reasons, Liberty Mutual's motion for partial summary judgment against Sumo-Nan LLC is GRANTED as to Count I.

IT IS SO ORDERED.

DATED: November 18, 2015 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Liberty Mutual Insurance Company v. Sumo-Nan LLC, et al.;* Civil No. 14-00520 DKW KSC; **ORDER GRANTING LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I AGAINST DEFENDANT SUMO-NAN LLC**