IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>SUMO-NAN LLC, a Hawaii limited liability company; NAN, INC., a Hawaii corporation, *et al.*<br><br>                    Defendants. | CIVIL NO. 14-00520 DKW-KSC<br><br>**ORDER DETERMINING DEFENDANTS' REMAINING OBLIGATIONS TO LIBERTY MUTUAL** |

## ORDER DETERMINING DEFENDANTS' REMAINING OBLIGATIONS TO LIBERTY MUTUAL

## INTRODUCTION

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") seeks a determination of Defendants' remaining obligations pursuant to the parties' April 22, 2016 Stipulation.   Dkt. No. 207.   Under the Stipulation, the Court is to determine the amount of interest, fees and costs that Defendants[1] owe to Liberty

---

[1]Defendants are Nan, Inc., Laumaka LLC, Patrick Shin, Mariko Kaneko Shin, and the Shin Trust (collectively, the "Nan Defendants"); Su-Mo Builders, Inc., Su Yong Yi, and Maureen D. Yi (collectively, the "Sumo Defendants"); and Sumo-Nan, LLC ("Sumo-Nan").   Su-Mo Builders,

Mutual following Defendants' April 2016 payment of principal.   Because the terms

of the Stipulation and governing indemnity agreement are clear and unambiguous,

the Court determines that Liberty Mutual is entitled to the following amounts of

interest, fees and costs:

| Category | Amount |
|---|---|
| Interest on Payment Bond claim payments | $243,817.22 |
| Attorneys' Fees | $434,418.48 |
| Consulting Fees | $16,631.50 |
| Travel Expenses | $1,293.51 |
| Additional Litigation Costs | $7,251.58 |
| **TOTAL** | $703,412.29 |

Liberty Mutual is additionally entitled to interest on its fees and costs, which

shall accrue until payment of Liberty Mutual's fees and costs, as set forth in this

order.

## BACKGROUND

**I.   Procedural Background**

Because the parties are familiar with the proceedings in this protracted

litigation, the Court briefly recounts only those matters relevant to the instant

Motion.   Liberty Mutual's claims arise from a Miller Act bond it issued on behalf of

---

Inc. and Nan, Inc. entered into a joint venture to operate Sumo-Nan.   Su-Mo Builders, Inc. is the managing joint venturer with a 51% participation interest in the profits and losses.   Nan, Inc. owns 49% of Sumo-Nan.   *See* Order Granting Liberty Mutual's Motion For Partial Summary Judgment As To Count I Against Defendant Sumo-Nan LLC, *available at* 2015 WL 7303523, at *5 n.1 (D. Haw. Nov. 18, 2015).

Sumo-Nan in connection with a construction project at Tripler Army Medical Center

("TAMC Project").   On May 26, 2011, Liberty Mutual, as surety, issued to

Sumo-Nan, as principal, a Performance and Labor & Material Payment Bond No.

023-017-103, in the penal sum of $15,996,619.00, naming the United States of

America as obligee.   As partial consideration for its agreement to furnish bonds on

behalf of Sumo-Nan, Liberty Mutual and Defendants executed General Agreements

of Indemnity, including certain Amendments (collectively, "GAI").   Under the

GAI, each of the Defendants, jointly and severally, agreed to indemnify Liberty

Mutual against any liability for losses, fees, costs, and expenses that Liberty Mutual

incurred as a consequence of issuing bonds on behalf of Sumo-Nan or as a

consequence of a breach of the GAI.

Sumo-Nan was unable to meet its obligations on the TAMC Project, and, as a

result, Liberty Mutual received and paid claims on the Bond, including demands

from Sumo-Nan's subcontractors and suppliers.   Liberty Mutual also made a

demand to Defendants to deposit cash or other property as collateral security to

protect Liberty Mutual from claims on the Bond.   When Defendants did not comply

with that demand, and did not indemnify Liberty Mutual for claims paid, Liberty

Mutual filed suit for: (1) Breach of Contract of Indemnity; (2) Unjust Enrichment;

3

and (3) Quia Timet (by means of an injunction preventing the transfer of assets). Defendants then counterclaimed.

Following several rounds of dispositive motions, the parties entered into a Stipulation (1) to Dismiss Su-Mo Builders, Inc., Su Yong Yi and Maureen Dee Yi's Second Amended Counterclaim against Liberty Mutual Insurance Company [Dkt. No. 163], (2) to Dismiss Second Amended Counterclaim of Defendants and Counterclaim Plaintiffs Sumo-Nan, LLC, Nan, Inc., Laumaka LLC, Patrick Shin, Mariko Kaneko Shin and Patrick Shin, Trustee of the Patrick Shin Trust [Dkt. No. 164] and (3) Regarding Remaining Issues for Trial ("Stipulation").   Dkt. No. 207. Pursuant to the Stipulation, Defendants paid Liberty Mutual the principal amount owed ($1,866,989.29) and agreed that Liberty Mutual is entitled to an unspecified amount of interest, fees and costs pursuant to the GAI.   *See* Stipulation ¶¶ 6-8. The Stipulation provides:

> 5.   All Defendants stipulate and agree that each of them are jointly and severally liable under the various General Agreements of Indemnity (including the General Agreement of Indemnity, dated October 10, 2003, as amended) and are bound by all terms of the various General Agreements of Indemnity.   This stipulation only applies to the claims of Liberty Mutual in this case and is without prejudice to any of All Defendants regarding the applicability of the various General Agreements of Indemnity with respect to any possible future claim.

6.      On April 11, 2016, Nan Defendants delivered to Liberty
        Mutual a cashier's check in the amount of $1,866,989.29
        on behalf of All Defendants as partial payment of
        Defendants' obligations under the various General
        Agreements of Indemnity.   All Defendants agree that this
        amount was the correct amount due to Liberty Mutual on
        the principal amount paid by Liberty Mutual.

7.      The Parties agree that in addition to the partial payment,
        there are additional amounts owed by All Defendants to
        Liberty Mutual under the various General Agreements of
        Indemnity.

8.      The Parties agree that the partial payment by Nan
        Defendants DOES NOT resolve the Nan Defendants' or
        Sumo Defendants' joint and several obligations under the
        General Agreements of Indemnity regarding (a) Liberty
        Mutual's claim of interest owed from the date that Liberty
        Mutual made payments under the Payment Bond, which
        Liberty Mutual claims is $246,237.58 (up through April
        11, 2016), (b) the fees and costs incurred by Liberty
        Mutual, and (c) Liberty Mutual's claim of interest owed
        on the fees and costs paid by Liberty Mutual from the date
        that Liberty Mutual made such payments, which Liberty
        Mutual claims is approximately $24,951.80 (calculated up
        through April 15, 2016), which Liberty Mutual claims will
        continue to accrue until paid (collectively referenced as
        "remaining obligations").

9.      Liberty Mutual and All Defendants agree that they will
        attempt to resolve the remaining obligations of All
        Defendants to Liberty Mutual through direct settlement
        negotiations or mediation (if agreed by all Parties).

10.     If the Parties are unable to reach a resolution on the above
        within thirty (30) days from the date of filing of this
        stipulation, the Parties agree to proceed to a jury-waived
        trial or hearing before the Honorable Derrick K. Watson

> for a determination of the amount of All Defendants'
> remaining obligations.   All Defendants further agree that
> they will only challenge the reasonableness of the
> amounts of the fees and costs and explicitly waive any
> right to challenge the reason why those fees and costs
> were incurred.   All Defendants agree not to appeal the
> Court's ruling on their remaining obligations.   Nan, Inc.
> will pay to Liberty Mutual on behalf of All Defendants the
> amount determined to be due on All Defendants'
> remaining obligations by cashier's check.

Stipulation ¶¶ 5-10.   Unable to reach agreement among themselves, or after several settlement conferences with the Magistrate Judge, Liberty Mutual filed the instant Motion.   Liberty Mutual asserts that Defendants are obligated to pay it: (1) $245,726.83 in interest from the date Liberty Mutual made payments under the Payment Bond; (2) $477,569.29 in fees and costs, including attorneys' fees and experts' fees; and (3) $40,657.15 in interest on the fees and costs.   Defendants oppose the request.

## II.   **GAI Indemnity Provision**

Under the GAI, each of the Defendants, jointly and severally, agreed to indemnify Liberty Mutual against any liability for losses, fees, costs, and expenses that Liberty Mutual incurred as a consequence of issuing bonds on behalf of Sumo-Nan or as a consequence of a breach of the GAI.   The GAI indemnity provision states, in relevant part:

SECOND: INDEMNITY – The Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified the Surety from and against all liability for losses, <u>fees, costs and expenses of whatsoever kind or nature including, but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of this Agreement</u> or a breach of any other written agreements between or for the benefit of the Surety and the Indemnitor(s) and/or Principal(s) (hereinafter referred to as "Other Agreements"), <u>court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur</u>: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants or conditions of this Agreement or Other Agreements.

GAI (emphasis added).[2]   Despite the plain language of the Stipulation and the GAI, Defendants generally dispute any obligation to pay interest, fees, or costs to Liberty Mutual.

## **DISCUSSION**

The Court first addresses Liberty Mutual's request for interest on the principal amount of Payment Bond claims.   Liberty Mutual's requests for fees and costs, and for interest on fees and costs, are discussed thereafter.

---

[2]The Nan Defendants executed the original 2003 GAI, dated October 10, 2003; and Sumo-Nan was added as a Principal and Indemnitor by its execution of Amendment No. 9, dated March 25, 2010.   *See* 2015 WL 7303523, at *1 (D. Haw. Nov. 18, 2015); Liberty Mutual Mem. In Supp. of Mot. at 4-5 and Ex. 4 (GAIs), Dkt. No. 218.

## I.   **Interest**

Liberty Mutual seeks $245,726.83 in interest from the dates it made various payments on Payment Bond claims.   It paid $1,866,989.29 to subcontractors and suppliers on claims made against the Payment Bond from October 23, 2014 through March 14, 2016.   *See* Declaration of Christine Bartholdt ¶¶ 3-6, Ex. 5 (Spreadsheet and Cancelled Checks Paid Under Bond No. 023-017-103).   Liberty Mutual seeks interest at the maximum allowable rate of 10%, under Hawaii Revised Statutes ("HRS") § 478-2,[3] from the various dates that it made the Payment Bond payments through April 11, 2016, the date that Defendants paid the principal amount of $1,866,989.29 pursuant to the parties' Stipulation.   For the reasons set forth below,

---

[3]The statute provides:

> When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year, except that, with respect to obligations of the State, interest shall be allowed at the prime rate for each calendar quarter but in no event shall exceed ten per cent a year, as follows:
>
> (1)    For money due on any bond, bill, promissory note, or other instrument of writing, or for money lent, after it becomes due;
>
> (2)    For money due on the settlement of accounts, from the day on which the balance is ascertained;
>
> (3)    For money received to the use of another, from the date of a demand made; and
>
> (4)    For money upon an open account, after sixty days from the date of the last item or transaction.
>
> As used in this section, "prime rate" means the prime rate as posted in the Wall Street Journal on the first business day of the month preceding the calendar quarter.

HRS § 478-2.

the request is granted with an interest accrual date no earlier than November 17, 2014—the date of the filing of Liberty Mutual's Complaint—and denied as to any interest accruing on Payment Bond claims paid prior to this date.

Under the plain language of the GAI, Liberty Mutual is entitled to "pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of a breach of [the GAI]."   GAI at 1.   Nothing in the parties' April 2016 Stipulation, which resolved some of the parties' claims, and established a process for resolving the balance, alters Liberty Mutual's entitlement to such interest.

Defendants' assertion to the contrary is bewildering.   According to Defendants, "the GAI specifically does not obligate Defendants to pay any interest on any payments thereunder."   Defs.' Am. Mem. In Opp. at 5 (Dkt. No. 222-2). Defendants explain that they "did not agree to pay such interest, nor can such an agreement be implied, because, unlike a promissory note, an indemnity agreement promises reimbursement of all losses and expenses and does not seek to enrich the surety by bearing interest."   *Id*.   But Defendants certainly did agree to pay such interest.   The indemnity clause of the GAI says so.   The only possible way to read the GAI in the manner urged by Defendants is to ignore the GAI.   Moreover, because the obligation is an express one, there is no need to imply or conjure an interest obligation.

Because Liberty Mutual is entitled to interest on its Payment Bond payments, the applicable interest rate and the date on which interest began to accrue must be determined.   The former is straightforward; the latter, less so.   The GAI does not prescribe the specific interest rate to apply in this context, other than to state that it shall be the "maximum rate permitted by law."   HRS § 478-2 fills the void: "When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year."   Defendants do not quarrel with the application of HRS § 478-2, other than to repeat their plainly invalid, and already rejected, assertion that they are not obligated to pay interest.   *See* Defs.' Am. Mem. In Opp. at 7 ("HRS §478-2 is not applicable because the GAI specifically does not [] obligate Defendants to pay any interest on any payments made thereunder."). Accordingly, the Court finds that interest should be awarded on Liberty Mutual's Payment Bond payments at the statutory rate of 10%.

The interest to which Liberty Mutual is entitled accrues, according to the GAI, on the date Defendants breached the agreement.   *See, e.g., Eastman v. McGowan*, 86 Hawai'i 21, 28–29, 946 P.2d 1317, 1324–25 (1997) (Affirming prejudgment interest awarded "at the rate of 10 percent per annum [in which] the date the interest was computed from was the date of the breach of the [agreement]."); *Sun v. Makainai*, 14 Haw. 495, 496 (1902) ("The general rule is that interest as damages for

the breach of a contract should be computed from the date of the breach, or, in other words, from the accrual of the right of action.").

Liberty Mutual acknowledges that such a breach occurred when Defendants "failed and/or refused to exonerate or indemnify Liberty [Mutual]."   Complaint ¶ 28; *see also id.* ¶ 33 ("Liberty [Mutual] has made repeated demands of the Defendants to comply with their indemnity obligations under the terms of the GAI, but Defendants failed and refused to perform those obligations.").   Because Liberty Mutual does not identify the precise date when Defendants "failed and/or refused" to comply with Liberty Mutual's demands for compliance with Defendants' indemnity obligations, the Court determines the date of accrual as November 17, 2014—the date Liberty Mutual filed its Complaint, declaring Defendants in breach. This date is almost certainly a conservative one.   Liberty Mutual, for instance, made a payment demand to Defendants as late as October 31, 2014, before filing this lawsuit on November 17, 2014.   Complaint ¶ 29, Ex. C (10/31/14 Demand Letter). Clearly, no lawsuit would have been necessary if Defendants had made payment on a date prior to November 17, 2014, as they ultimately did on April 11, 2016 after disavowing their obligation to do so throughout the course of the litigation.   But because the present record does not indicate when Defendants' refusal to comply with their indemnity obligations first surfaced, the Complaint date is the best

approximation the Court can identify.   *See* Declaration of Sam Barker ¶¶ 7-10 (attached as Ex. 3 to Liberty Mutual Mem. In Supp. of Mot.).

In sum, Liberty Mutual's request for interest owed pursuant to the GAI is granted in part.   The Court awards Liberty Mutual interest on its Payment Bond claims at the requested rate of 10%.   Because five such payments totaling $799,280.50 occurred prior to November 17, 2014, the earliest date by which the Court is certain of Defendants' refusal to meet their indemnity obligations, interest on these five payments must be recalculated using a November 17, 2014 accrual date.   The recalculated interest amount owing on these five payments is set forth in Table 1 below:

## TABLE 1

| Check Date | Payee | Payment Amount | Interest* |
|---|---|---|---|
| 10/23/2014 | O&E Matias Electrical Service, LLC | $647,704.69 | $90,678.66 |
| 10/29/2014 | JBL Hawaii, Ltd. | $7,100.00 | $994.00 |
| 10/31/2014 | TAB Engineers, LLC | $53,000.00 | $7,420.00 |
| 11/13/2014 | Hirota Painting Company, Inc. | $65,428.70 | $9,160.02 |
| 11/13/2014 | Pacific SBS, LLC | $26,047.11 | $3,646.60 |
| | **TOTAL** | $799,280.50 | $111,899.28 |

*Interest calculations are based on a November 17, 2014 accrual date and a principal payment date of April 11, 2016.   *See* Bartholdt Decl., Ex. 5 (Spreadsheet).

Interest on the balance of Liberty Mutual's Payment Bond claims, all of which post-date the November 17, 2014 Complaint, accrue on the date of payment,

as requested by Liberty Mutual, and are undisturbed by the Court's accrual findings.

These interest amounts are set forth in Table 2 below:

**TABLE 2**

| Check Date | Payee | Payment Amount | Interest |
|---|---|---|---|
| 11/18/2014 | Allied Pacific Builders, Inc. | $323,858.77 | $45,251.50 |
| 11/26/2014 | Aloha Steel Corp. | $31,680.00 | $4,357.08 |
| 12/03/2014 | Tu's Plumbing & Contracting | $132,066.80 | $17,910.43 |
| 12/03/2014 | Tu's Plumbing & Contracting & Hawaii Energy Systems, LLC | $21,463.20 | $2,910.76 |
| 12/04/2014 | TAB Engineers, LLC | $40,500.00 | $5,481.37 |
| 12/11/2014 | Arcadia | $110,451.82 | $14,737.00 |
| 12/22/2014 | CB Tech Services, Inc. | $102,098.00 | $13,314.70 |
| 01/30/2015 | Hako Plumbing, Inc. | $60,940.50 | $7,296.16 |
| 03/11/2015 | Contract Decor, Inc. | $1,870.20 | $203.42 |
| 03/16/2015 | Pacific Recreation Co., LLC | $19,651.25 | $2,110.49 |
| 04/15/2015 | Hako Plumbing, Inc. | $28,847.19 | $2,861.01 |
| 04/27/2015 | Solid Surface Technologies | $13,530.75 | $1,297.47 |
| 04/30/2015 | Resort Management Group, LLC | $113,967.36 | $10,834.71 |
| 05/15/2015 | Sok Su, Inc. | $9,300.00 | $845.92 |
| 08/19/2015 | Pacific Preferred Contractors Corp. | $10,800.00 | $698.30 |
| 08/21/2015 | Road Builders Corporation | $25,682.95 | $1,646.52 |
| 03/14/2016 | Resort Management Group | $21,000.00 | $161.10 |
| | **TOTAL** | $1,067,708.79 | $131,917.94 |

The total amount of interest owing to Liberty Mutual on its Payment Bond

claims is therefore $243,817.22.[4]

---

[4]$111,899.28 + $131,917.94 = $243,817.22

## II.   <u>Attorneys' Fees And Costs</u>

Liberty Mutual seeks $477,569.29 in fees and costs, including attorneys' fees and experts' fees, either as "damages" under the GAI or as the prevailing party pursuant to HRS §§ 607-14 and 607-14.5.   *See* Liberty Mutual Mem. In Supp. of Mot. at 7 n.2.   Liberty Mutual requests attorneys' fees for two law firms that worked on this matter: Bronster Fujichaku Robbins and Ogawa, Lau, Nakamura & Jew.   It divides the work performed into two categories: (1) matters relating to Payment Bond claims; and (2) litigation related to Defendants' obligations under the GAI.   Liberty Mutual notes that a significant portion of its fees was incurred defending against Defendants' Counterclaims, which were voluntarily dismissed with prejudice pursuant to the Stipulation.

Defendants deny that Liberty Mutual is entitled to any fees or costs, despite the plain language of the GAI and Stipulation.   As discussed below, the Court determines that Liberty Mutual's fees and costs are (1) authorized by the GAI and the parties' Stipulation; and (2) subject to the Court's traditional lodestar analysis to ascertain the reasonableness of the request.[5]

---

[5] *See, e.g., Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 2529298, at *10 (D. Haw. June 28, 2012) ("[A]ttorneys' fees, whether they are provided for by contract or by statute, must be reasonable and necessarily incurred by the party seeking the fee award.") (*citing Jenkins v. Wise*, 58 Haw. 592, 574 P.2d 1337 (Haw. 1978)).

## A.   <u>Relevant Law</u>

A federal court sitting in diversity must apply state law in determining whether a party is entitled to attorneys' fees.   *See Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001).   Under Hawaii law, "[o]rdinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement."   *Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286, 305, 141 P.3d 459, 478 (2006) (citation and quotation marks omitted); *DFS Group, L.P. v. Paiea Props.*, 110 Hawai'i 217, 219, 131 P.3d 500, 502 (2006) (quoting *TSA Int'l, Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 263, 990 P.2d 713, 733 (1999) ("Generally, under the 'American Rule,' each party is responsible for paying his or her own litigation expenses.   A notable exception to the 'American Rule,' however, is the rule that attorneys' fees may be awarded to the prevailing party where such an award is provided for by statute, stipulation, or agreement.")).   Because Liberty Mutual is the prevailing party here within the meaning of HRS § 607-14, and the GAI provides the contractual basis by which fees and costs should be awarded, Liberty Mutual's request is granted, as set forth below.[6]

---

[6]Although Liberty Mutual frames its request as a motion for damages, the cases it relies upon in support are factually and procedurally distinguishable.   *See* Liberty Mutual Mem. In Supp. of Mot. at 7-8.   For example, *Travelers Casualty & Surety Co. of Am. v. Brenneke* was before the

## B.    <u>Liberty Mutual Is Entitled To Fees And Costs</u>

Liberty Mutual is entitled to fees under the GAI by operation of HRS § 607-14, a statutory exception to the American Rule. *DFS*, 110 Hawai'i at 219, 131 P.3d at 502. The statute mandates the recovery of fees when a contract, such as the GAI, provides for the same, in writing, or when an action is in the nature of assumpsit, and states, in pertinent part:

---

district court on the insurer's motion for summary judgment on the issue of damages under an indemnity agreement. 551 F.3d 1132, 1134 (9th Cir. 2009). Here, Liberty Mutual did not file a motion for summary judgment on the issue of damages due under the GAI. *See* Local Rule 56.1 (detailing requirements of motions for summary judgment). Liberty Mutual also cites to *Hartford Fire Insurance Co. v. P & H Cattle Co.* as an example of a case in which a court awarded a surety its attorneys' fees, costs, and interest under an indemnity agreement. That case too involved a successful motion for summary judgment on the issue of indemnity. As part of the order granting summary judgment, the district court also analyzed the insurer's fee request pursuant to Kansas law (*i.e.*, "the prevailing party in a lawsuit may recover attorneys' fees where the fees are specifically authorized by statute or contract"), concluding that the insurer was entitled to recover its fees under the terms of the indemnity agreement, and directed the parties "to comply with D. Kan. Rule 54.2 regarding the procedure for awarding attorney's fees." 451 F. Supp. 2d 1262, 1284 (D. Kan. 2006), *aff'd*, 248 F. App'x 942 (10th Cir. 2007).

    Here, Liberty Mutual declared its willingness to comply with the requirements of Local Rules 54.2 (taxation of costs) and 54.3 (motions for attorneys' fees and related non-taxable expenses). *See* Liberty Mutual Mem. In Supp. of Mot. at 7 n.2. On October 5, 2016, the Court ordered the parties to comply with the consultation process provided in Local Rules 54.2(c) and 54.3(b) by no later than October 19, 2016. The Court directed Liberty Mutual to file a statement of consultation as provided by the Local Rules, in the event that the parties were unable to reach agreement through the consultation process. *See* Dkt. No. 234. Rather than participate in the consultation process as directed, Defendants took the position that the Court did not have jurisdiction to consider Liberty Mutual's request for fees and costs. *See* Dkt. Nos. 235, 237, 238, and 239. These Local Rules, however, do not impose a jurisdictional requirement. *See, e.g., Klemm v. Astrue*, 543 F.3d 1139, 1143 (9th Cir. 2008) (Noting that "filing requirements dictated by local rules are not jurisdictional.") (citing *Loya v. Desert Sands Unified Sch. Dist.*, 721 F.2d 279, 280 (9th Cir. 1983)). Nor is there any basis to challenge the Court's jurisdiction over this action generally, or over the fee component specifically. In any event, in light of Defendants' refusal to participate meaningfully in the consultation process, on October 13, 2016, the Court directed that no further effort was required on the part of Liberty Mutual to comply with Local Rules 54.2 and 54.3. *See* Dkt. No. 236.

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee.   The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed.

HRS § 607-14.[7]   *See also Eastman v. McGowan*, 86 Hawai'i 21, 31, 946 P.2d 1317, 1327 (1997) (Attorneys' fees may be awarded under HRS § 607-14 "in three types of cases: (1) all actions in the nature of assumpsit; (2) all actions on a promissory note; and (3) contracts in writing that provide for an attorney's fee.").

Liberty Mutual is the prevailing party because it obtained payment in full of its Payment Bond claims from Defendants, pursuant to the April 2016 Stipulation.

---

[7]HRS § 607-14 limits the award of attorneys' fees to 25% of the judgment.   Although judgment has not yet been awarded here, the fees awarded do not exceed 25% of the amount of the principal payment ($1,866,989.29) made by Defendants to Liberty Mutual on April 11, 2016 pursuant to the Stipulation.   Therefore, the Court finds that the fee award need not be capped in order to comply with HRS § 607-14.

That achievement is consistent with the partial summary judgment against Sumo-Nan that Liberty Mutual obtained on its Count I claim that "Sumo-Nan breached its obligations under the GAI."   2015 WL 7303523, at *1 ("Sumo-Nan is obligated to indemnify Liberty Mutual under the applicable agreements of indemnity[.]"); *see id.* at *4 ("Sumo-Nan breached the GAI by failing to indemnify, exonerate, and hold harmless Liberty Mutual.   Accordingly, Liberty Mutual is entitled to summary judgment on Count I against Sumo-Nan.").   *See Ranger Ins. Co. v. Hinshaw*, 103 Hawai'i 26, 31, 79 P.3d 119, 124 (2003) ("Neither HRS § 607-14 nor HRCP Rule 54(d) require a judgment on the merits. . . .   [T]he plain language of HRS § 607-14 does not require a judgment on the merits.   *Wong* and *Kona Enters.* illustrate that a dismissal of Ranger's action, albeit voluntary, is sufficient to deem a defendant to be the prevailing party and the plaintiff the losing party.") (citing *Wong v. Takeuchi*, 88 Hawai'i 46, 49, 961 P.2d 611, 614 (1998), and *Kona Enters. v. Estate of Bernice Pauahi Bishop*, 229 F.3d 877, 889 (9th Cir. 2000)); *see also Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1039 (D. Haw. 2011) ("Under Hawaii law, a party may be deemed the 'prevailing party' entitled to an award of attorneys' fees under HRS § 607-14 without successfully litigating the merits of the party's claim.").   Equally important, Liberty Mutual obtained a dismissal with prejudice of each of Defendants' Counterclaims, again pursuant to

the Stipulation.   Having thus obtained what it asked for in principal, and

conversely, Defendants having obtained nothing, there can be little doubt that

Liberty Mutual is the prevailing party in this action.

As the prevailing party, the GAI holds Defendants jointly and severally

responsible for:

> fees, costs and expenses of whatsoever kind or nature including, but not limited to . . . court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which [Liberty Mutual] may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bond; or (2) by having executed or procured the execution of any Bond; or (3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or Other Agreements; or (4) in enforcing any of the covenants or conditions of this Agreement or Other Agreements.

GAI at 1.[8]   The Court reviews Liberty Mutual's claimed "fees, costs and expenses"

in the section below.

_____

[8]The parties confirmed in the Stipulation that Defendants are bound by the terms of the GAI.   *See* Stipulation ¶¶ 5, 7.   Moreover, Defendants acknowledged -

> 8.       . . . the Nan Defendants' or Sumo Defendants' joint and several obligations under the General Agreements of Indemnity regarding (a) Liberty Mutual's claim of interest owed from the date that Liberty Mutual made payments under the Payment Bond, which Liberty Mutual claims is $246,237.58 (up through April 11, 2016), (b) the fees and costs incurred by Liberty Mutual, and (c) Liberty Mutual's claim of interest owed on the fees and costs paid by Liberty Mutual from the date that Liberty Mutual made such

## C.    Determination Of Fees And Costs Award

Hawaii courts calculate reasonable attorneys' fees based on a method that is nearly identical to the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   *See DFS*, 110 Hawai'i at 222, 131 P.3d at 505.   The Court determines a reasonable fee by multiplying the number of hours reasonably expended by a reasonable hourly rate.   *See id.* at 222–23, 131 P.3d at 505–06.   Hawaii courts consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits

---

> payments, which Liberty Mutual claims is approximately $24,951.80 (calculated up through April 15, 2016), which Liberty Mutual claims will continue to accrue until paid (collectively referenced as "remaining obligations").

> ****

> 10.     . . . All Defendants further agree that they will only challenge the reasonableness of the amounts of the fees and costs and explicitly waive any right to challenge the reason why those fees and costs were incurred. . . .

Stipulation ¶¶ 8, 10.

> resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.

*Chun v. Bd. of Trs. of Employees' Ret. Sys. of Haw.*, 106 Hawai'i 416, 435, 106 P.3d 339, 358 (2005) (citations omitted).   These factors are "guides" to determining the reasonable value of services rendered, and the Court is not required to consider each of them in every case.   *See id.* at 435, 106 P.3d at 358 (citations omitted).   In certain types of cases, some of these factors may justify applying a multiplier to the "lodestar" amount.   *See Chun v. Bd. of Trs. of Employees' Ret. Sys. of Haw.*, 92 Hawai'i 432, 442, 992 P.2d 127, 137 (2000).[9]

---

[9]Under analogous federal law, the Court generally determines a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."   *Hensley*, 461 U.S. at 433.   Second, the Court determines whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not already been subsumed in the lodestar calculation.   The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70.   The first five factors are subsumed in the lodestar calculation.   *See Morales v. City of San Raphael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996).   The sixth factor may not be considered in adjusting the lodestar calculation.   *See Black v. City & Cty. of Honolulu*, 512 Fed. App'x 666, 670 (9th Cir. 2013) (citing *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1549

### D.      **Reasonable Hourly Rate**

Hawaii courts consider the reasonable hourly rate in a manner virtually identical to the traditional lodestar formulation, and Hawaii state courts have considered federal law in determining a reasonable hourly rate.   *See, e.g., Cty. of Haw. v. C & J Coupe Family Ltd. P'ship*, 120 Hawai'i 400, 407, 208 P.3d 713, 720 (2009) (determining a reasonable hourly rate based on "the prevailing market rates in the relevant community") (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). *But see DFS Grp.*, 110 Hawai'i at 223, 131 P.3d at 506 (determining a reasonable hourly rate by calculating average of the four requested rates).   Accordingly, federal case law regarding the determination of a reasonable hourly rate is instructive in this matter.

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.   *See Webb v. Ada Cty.*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002); *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir. 1986) (Listing relevant factors to consider including the level of skill required, time limitations, the amount involved in the

---

(9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir.1993)).   Once calculated, the lodestar is presumptively reasonable.   *See Morales*, 96 F.3d at 364 n.9 ("Adjusting the lodestar on the basis of subsumed reasonableness factors after the lodestar has been calculated, instead of adjusting the reasonable number of hours or reasonable hourly rate at the first step . . . is a disfavored procedure.") (citations and quotations omitted).

litigation, the attorney's reputation and experience, the quality of the representation, the attorney's success or failure in the outcome, and the undesirability of the case.).   The reasonable hourly rate should reflect the prevailing market rates in the community.   *See Webb*, 285 F.3d at 840; *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992), *as amended on denial of reh'g*, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").   It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.   *See Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).   In support of its fee request, Liberty Mutual submitted two attorney declarations, attesting to the reasonableness of the rates of the attorneys at their respective firms.   *See* Declaration of Margery Bronster; Declaration of Roy T. Ogawa.

The three attorneys who worked on this case at Bronster Fujichaku Robbins charged the following hourly rates in this matter: Margery Bronster, Esq. ($400)[10];

_____

[10]Ms. Bronster is a partner at Bronster Fujichaku Robbins, admitted to the New York State Bar in 1983 and the Hawaiʻi State Bar in 1988.   Her typical billing rate ranges from $400 to $650 per hour.   Bronster Decl. ¶¶ 9, 10.

Sunny Lee, Esq. ($275)[11]; and Kelly Higa, Esq. ($225).[12]   The attorneys from

Ogawa, Lau, Nakamura & Jew and their respective rates charged are: Roy T.

Ogawa, Esq. ($250)[13]; Kurt K. Leong, Esq. ($200)[14]; and Kelly Higa, Esq. ($175).[15]

Based on this Court's knowledge of the community's prevailing rates, the

hourly rates generally granted within this district, the Court's familiarity with this

case, and counsels' submissions, this Court finds that the requested hourly rates

charged by Ms. Bronster, Mr. Ogawa, Mr. Leong and Ms. Higa while at Ogawa,

Lau, Nakamura & Jew are reasonable.[16]   The rates requested for Mr. Lee and for

Ms. Higa at Bronster Fujichaku Robbins, however, are excessive, and the Court

---

[11]Mr. Lee is a partner at Bronster Fujichaku Robbins, admitted to the Washington State Bar in 2004 and the Hawaiʻi State Bar in 2006.   Mr. Lee's billing rate ranges from $275 to $325 per hour.   Bronster Decl. ¶¶ 9, 10.

[12]Ms. Higa is an associate at Bronster Fujichaku Robbins and was admitted to the Hawaiʻi State Bar in 2011.   Ms. Higa's billing rate ranges from $225 to $250 per hour.   Bronster Decl. ¶¶ 9, 10. Ms. Higa worked at Ogawa, Lau, Nakamura & Jew before joining Bronster Fujichaku Robbins in March 2015.   See Liberty Mutual Mem. In Supp. of Mot. at 12 n.4.

[13]Mr. Ogawa is the President and Director at the law firm of Ogawa, Lau, Nakamura & Jew and was admitted to the Hawaiʻi State Bar in 1976.   His typical billing rate ranges from $250 to $300 per hour.   Ogawa Decl. ¶¶ 1, 6.

[14]Mr. Leong is an associate at Ogawa, Lau, Nakamura & Jew and was admitted to the Hawaiʻi State Bar in 1991.   Ogawa Decl. ¶ 6.

[15]Ms. Higa charged $175 per hour on this matter while an associate at Ogawa, Lau, Nakamura & Jew.

[16]The requested rates for Ms. Bronster, Mr. Ogawa, Mr. Leong, and Ms. Higa are well within the range of hourly rates previously granted in this district based upon each counsel's respective experience level.   See, e.g., Booth, 2015 WL 4663994, at *3 (finding $500 to be a reasonable rate for Paul Alston, an attorney with more than 40 years of experience; and $300 to be a reasonable rate for Donna Marron, an attorney with 20 years of experience); Faith Action for Cmty. Equity v. Haw. Dep't of Transportation, 2015 WL 5162477, at *5 (D. Haw. Sept. 1, 2015) (finding $175 to be a reasonable hourly rate for an associate attorney with five years of experience); Trendex Fabrics, Ltd. v. Chad Jung Kim, 2013 WL 5947027, at *8 (D. Haw. Nov. 5, 2013) (awarding attorney with seven years of experience hourly rate of $175).

adjusts the respective rates accordingly.   The Court awards Mr. Lee $250 per hour and awards Ms. Higa $200 per hour for her Bronster Fujichaku Robbins time entries.[17]   *See, e.g., Pelayo v. Platinum Limousine Servs., Inc.*, 2016 WL 5402185, at *5 (D. Haw. Sept. 27, 2016) (Setting hourly rates in a manner "designed to place counsel at the higher end of reasonable rates in this community, given the nature of this case, to ensure the availability of representation in cases where damages are low or non-existent, and to avoid stagnation of rates over time."); *Hawaii Def. Found. v.*

---

[17]Mindful that a reasonable rate should reflect the prevailing market rates in the relevant community, the Court finds that a modest reduction is warranted for Mr. Lee and Ms. Higa's hourly rates.   The Court observes that a wide range of hourly rates has been awarded to attorneys with five to twelve years of legal practice in this district, the respective levels of experience of Mr. Lee and Ms. Higa.   *See, e.g., Pelayo v. Platinum Limousine Servs., Inc.*, 2016 WL 5402185, at *5 (D. Haw. Sept. 27, 2016) (finding $225 to be a reasonable hourly rate for an attorney with eleven years of experience); *Faith Action for Cmty. Equity v. Haw. Dep't of Transportation*, 2015 WL 5162477, at *5 (D. Haw. Sept. 1, 2015) (finding $240 to be a reasonable hourly rate for an attorney with twelve years of experience); *Hawaii Def. Found. v. City & Cty. of Honolulu*, 2014 WL 2804448, at *5 (D. Haw. June 19, 2014) (awarding $200 per hour to attorney with nine years of experience and $185 per hour to attorney with 7.5 years of experience, respectively); *Valencia v. Carrington Mortg. Servs.*, 2013 WL 3223628, at *8 (D. Haw. June 25, 2013) (finding that a partner with twelve years of experience was entitled to a $250 hourly rate and that a fifth-year litigation associate was entitled to a $175 hourly rate); *Yamada v. Weaver*, 2012 WL 6019363, at *3 (D. Haw. Aug. 30, 2012) (finding that attorneys with eleven and six years of experience were entitled to hourly rates of $225 and $150 respectively); *Gunderson v. Mauna Kea Props., Inc.*, 2011 WL 9754085, at *6 (D. Haw. May 9, 2011) (awarding $175 per hour for attorney with seven years of experience and $190 for attorney with nine years of experience); *McMillon v. Hawaii*, 2011 WL 744900, at *6 (D. Haw. Feb. 22, 2011) (finding $210 to be a reasonable hourly rate for an attorney with ten years of experience).   In light of the spectrum of hourly rates awarded across different types of cases, and given the Court's knowledge of the particular facts and circumstances of this case—including Defendants' failure to meaningfully oppose the reasonableness of Liberty Mutual's requested hourly rates—the Court determines that $250 is a reasonable hourly rate for Mr. Lee and $200 is a reasonable hourly rate for Ms. Higa while at Bronster Fujichaku Robbins.

*City & Cty. of Honolulu*, 2014 WL 2804448, at \*5 n.6 (D. Haw. June 19, 2014)

(collecting cases "discussing the prevailing hourly rates in this district").

The billing records submitted by Bronster Fujichaku Robbins also include

time entries for Johnny K. Napoleon, Joden Galmiche, and Janis Fenton, who each

performed paralegal work at the rate of $100 per hour.   *See* Bronster Decl., Ex. 7

(Bronster Fujichaku Robbins Invoices).   The Court finds that the requested rate is

reasonable for paralegal work.   *See Booth*, 2015 WL 4663994, at \*4 (Finding $100

to be a reasonable rate for paralegal work in the community.).

### E.   <u>Hours Reasonably Expended</u>

For the same reasons discussed above, the Court finds that federal case law

regarding the determination of hours reasonably expended is instructive in this

matter.   The prevailing party bears the burden of proving that the fees sought are

associated with the relief requested and are reasonably necessary to achieve the

results obtained.   *See Tirona v. State Farm Mut. Auto. Ins. Co*., 821 F. Supp. 632,

636 (D. Haw. 1993) (citations omitted).   Counsel should exclude from a request

time spent that was "excessive, redundant, or otherwise unnecessary."   *Gonzales v.*

*City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (citation omitted).   The

opposing party then bears the "burden of rebuttal that requires submission of

evidence challenging the accuracy and reasonableness of the hours charged or the

facts asserted by the fee applicant in its submitted affidavits." *Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC*, 871 F. Supp. 2d 1040, 1055 (D. Haw. 2012) (citing *Gates*, 987 F.2d at 1397–98).   Defendants, however, made no effort to challenge the accuracy and reasonableness of the hours (or fees) submitted by Liberty Mutual.[18]

The Court has independently reviewed the billing records to determine the reasonableness of the hours expended and imposes its own reductions.   In doing so, the Court is obliged to explain how it determined a reasonable fee award, but it need not set forth an hour by hour analysis of the fee request.   *Gates*, 987 F.2d at 1398-99.   "Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice.   But where the disparity is larger, a more specific articulation of the court's reasoning is expected."   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)).   The Court may make a percentage reduction either to the hours claimed or in the final lodestar figure "as a practical means of trimming the fat from a fee application."   *Gates*, 987 F.2d at 1399 (quotation and citations omitted); *cf.*

---

[18]As noted, Defendants do not challenge specific time entries as unreasonable or improper. Nevertheless, Liberty Mutual ultimately bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.   *See Smothers v. Renander*, 2 Haw. App. 400, 408, 633 P.2d 556, 563 (1981) (stating that it is the prevailing party's burden to show the reasonableness of the fee and that the fee is for services reasonably and necessarily incurred).

*Morales*, 96 F.3d at 364 n.9 (explaining that the preferred method is to adjust hours claimed and not the final lodestar figure).   And the Court generally may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."   *Gonzales*, 729 F.3d at 1203 (quoting *Moreno*, 534 F.3d at 1112).[19]

"[T]he extent of a [prevailing party's] success is a crucial factor in determining the proper amount of an award of attorney's fees[.]"   *Hensley*, 461 U.S. at 440.   The Ninth Circuit has interpreted *Hensley* as establishing the general rule that "plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit.   Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims."   *Cabrales v. Cty. of L.A.*, 935 F.2d 1050, 1052 (9th Cir. 1991) (citing *Hensley*, 461 U.S. at 435; *see also Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (Holding that where claims are related, "[m]uch

---

[19]Indeed, the Ninth Circuit's decision in *Moreno* explains why the party opposing a motion for attorneys' fees bears a burden in opposing the fee request: "the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices.   If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, [the court] should normally grant the award in full, or with no more than a haircut."   *Moreno*, 534 F.3d at 1116.   As already stated, Defendants here made no such effort, either with respect to the reasonable hourly rate or with respect to the reasonableness of the hours expended, despite the Stipulation limiting Defendants' challenge to the "reasonableness of the amounts of the fees and costs."   Stipulation ¶ 10.

of counsel's time will be devoted generally to the litigation as a whole. . . .   Such a

lawsuit cannot be viewed as a series of discrete claims.").

Mindful of the principles set forth above, and after careful review of Liberty

Mutual's submissions, the Court finds that hourly reductions for clerical work,

duplicative time, and block billing are necessary and appropriate.

### 1.   Clerical Or Ministerial Tasks

Attorney time entries must be reduced to the extent they reflect billing for

clerical or ministerial work.   "[C]lerical or ministerial costs are part of an attorney's

overhead and are reflected in the charged hourly rate."   *Jeremiah B. v. Dep't of*

*Educ.*, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citing *Sheffer v. Experian*

*Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003)).

> The following is a list of tasks previously deemed clerical or
> ministerial in this district and therefore deemed
> non-compensable: reviewing Court-generated notices;
> scheduling dates and deadlines; calendering dates and deadlines;
> notifying a client of dates and deadlines; preparing documents
> for filing with the Court; filing documents with the Court;
> informing a client that a document has been filed; personally
> delivering documents; bates stamping and other labeling of
> documents; maintaining and pulling files; copying, printing, and
> scanning documents; receiving, downloading, and emailing
> documents; and communicating with Court staff.

*Haw. Motorsports Inv., Inc. v. Clayton Group Servs., Inc.*, 2010 WL 4974867, at *5

(D. Haw. Dec. 1, 2010), *adopted by*, 2010 WL 5395669 (D. Haw. Dec. 22, 2010);

*see also Booth v. Wong*, 2015 WL 4663994, at *6 (D. Haw. July 17, 2015)

("Communications with the court and reviewing notices regarding hearings and

deadlines are clerical and not compensable.   Additionally, communicating with

court staff is likewise deemed clerical in nature and is not compensable) (citing

*Nicholas M. ex rel. Laura M. v. Dep't of Educ.*, 2010 WL 234862, at *5 (D. Haw.

Jan. 21, 2010), and *Synagro Techn., Inc. v. GMP Haw., Inc.,* 2007 WL 851271, at

*12 (D. Haw. Mar. 15, 2007)).

Accordingly, the Court deducts 0.2 hours of Ms. Bronster's time,[20] 0.2 hours

of Mr. Lee's time,[21] and 0.2 hours of Ms. Higa's time spent communicating with

court staff.[22]

## 2.   **Duplicative Time**

The Court does not permit more than one attorney to bill for attending: (1) a

meeting between co-counsel; (2) a client meeting; or (3) a meeting with opposing

counsel.   *Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1039 (D. Haw. 2011).

The duplicative entries for client and co-counsel meetings, settlement conferences,

and strategy meetings between co-counsel are not the types of events for which

---

[20]Ms. Bronster's clerical entry was on 8/28/2015.   *See* Bronster Decl., Ex. 7 (Invoices).
[21]Mr. Lee's clerical time entries were on 5/20/2016 and 5/23/2016.   *See* Bronster Decl., Ex. 7 (Invoices).
[22]Ms. Higa's clerical time entries were on 7/20/2016 and 7/21/2016.   *See* Bronster Decl., Ex. 7 (Invoices).

duplicative billing is permitted.   *See, e.g., Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010) (noting that two professionals cannot bill for attending the same meeting and "when a party's counsel meet with one other, the Court deducts the duplicative time billed.").   "In such a situation, the Court typically deducts the time spent by the lowest-billing attorney."   *Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC*, 871 F. Supp. 2d 1040, 1055 (D. Haw. 2012).

Moreover, although the Court finds that the use of multiple firms is not itself unreasonable, the Court has carefully reviewed the time entries provided by Liberty Mutual and finds that many of the hours requested should be reduced for conferences, meetings, discussions, and email communications, for which multiple attorneys at the two firms billed.   In particular, the Court finds that the hours charged by counsel for teleconferences and exchanging emails with each other are excessive and duplicative.[23]   *See Booth*, 2015 WL 4663994, at *5 ("Although the Court understands that a certain amount of collaboration is to be expected when multiple firms are involved, the hundreds of time entries reflecting time spent by counsel reading and responding to emails from co-counsel are unreasonable.").

---

[23]In each instance of duplicative billing, the Court deducts the time entry from the attorney(s) billing at the lower rate(s), regardless of firm affiliation.   That is, for each conference or email exchange billed by multiple attorneys, the Court awards the time billed to the attorney with the highest hourly fee, and deducts the time entry from the lower billing attorney(s).

Accordingly, the Court deducts 1.9 hours of Mr. Lee's time,[24] 20.2 hours of Mr.

Ogawa's time,[25] 6.5 hours of Mr. Leong's time,[26] and 6.9 hours of Ms. Higa's

time.[27]

As a general rule, this Court allows two attorneys to bill for their appearances

at court proceedings when it is reasonable and necessary for a "second chair" to

appear with lead counsel.   *Sheehan*, 853 F. Supp. 2d at 1044.   The Court

recognizes that litigation often requires the participation of multiple attorneys.   *See*

*Hawaii Defense Foundation*, 2014 WL 2804448, at *8 (Noting that proceedings

may require "the participation of multiple attorneys," but "overstaffing cases

inefficiently is common, and district courts are therefore encouraged to scrutinize

fee petitions for duplicative billing when multiple lawyers seek fees.") (citations

---

[24]Mr. Lee's duplicative time entries were for conferences and communications with Ms. Bronster on 7/6/2015, 8/4/2015, 9/22/2015, 12/23/2015, 1/8/2016, and 4/7/2016.   *See* Bronster Decl., Ex. 7 (Invoices).

[25]Mr. Ogawa's duplicative time entries were for conferences and communications with Ms. Bronster and/or Mr. Lee on 3/3/2015, 3/20/2015, 3/23/2015, 3/26/2015, 3/31/2015, 4/1/2015, 4/2/2015, 4/10/2015, 4/11/2015, two entries dated 4/12/2015, 4/14/2015, two entries dated 4/22/2015, 4/27/2015, 4/28/2015, 4/30/2015, 5/26/2015, 5/29/2015, 6/3/2015, 6/5/2015, 6/9/2015, 6/16/2015, 6/18/2015, 6/22/2015, 6/26/2015, 7/6/2015, 7/7/2015, 7/8/2015, 7/14/2015, 7/28/2015, 8/6/2015, 8/18/2015, 8/24/2015, two entries dated 8/31/2015, and 11/25/2015.   *See* Ogawa Decl., Ex. 8 (Invoices).

[26]Mr. Leong's duplicative time entries were for conferences and communications with co-counsel on 3/3/2015, 3/31/2015 and 4/2/2015.   *See* Ogawa Decl., Ex. 8 (Invoices).

[27]Ms. Higa's duplicative time entries were for conferences and communications with Mr. Lee and/or Mr. Ogawa on 4/2/2015, 5/11/2015, 5/26/2015, two entries dated 6/9/2015, 6/22/2015, two entries dated 7/2/2015, 7/8/2015, and 11/2/2015.   *See* Bronster Decl., Ex. 7 (Invoices).   Because these entries occurred during her employment at Bronster Fujichaku Robbins, the Court deducts this time at the awarded rate of $200 per hour.

omitted).   Indeed, in several instances, several attorneys attended hearings on the myriad dispositive motions in this matter.[28]   Those hearings involved multiple complex issues of law and resulted in extensive orders by the Court.   Accordingly, in those instances, the Court agrees that both counsels' attendance was reasonable.

### 3.   <u>Block Billing</u>

In addition to the foregoing reductions, the Court reduces hours due to "block billing."   Block billed entries generally fail to specify a breakdown of the time spent on each task.   District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks.   *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).   *See also id.* (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); *see also Hensley*, 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")); LR 54.3(d) (requiring a "description of the work performed by each attorney and paralegal broken down by hours or fractions thereof expended on each task").

---

[28]Four different timekeepers billed for attending some combination of the hearings held on 5/21/2015, 9/18/2015, and 11/13/2015.

The Court imposes an across-the-board reduction of 20% as to the entries that are in the "block billing" format.   *See, e.g., Painsolvers, Inc.,* 2012 WL 2529298, at *3 (reducing block billed hours by 20%); *Signature Homes of Haw., LLC v. Cascade Sur. and Bonding, Inc.,* 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing block billed hours by 20%).   The Court deducts 2.3 hours of Mr. Ogawa's time and finds that this 20% reduction to the specific entries fairly balances those hours that were block billed.[29]

## F.   Total Fee Award

Based upon the foregoing, the Court finds that Liberty Mutual is entitled to the following total lodestar amount, set forth in Table 3 below:

### TABLE 3

| Timekeeper | Hours Billed | Hours Deducted | Hours Awarded | Rate | Total |
|---|---|---|---|---|---|
| Margery Bronster | 123.1 | 0.2 | 122.9 | $400 | $49,160.00 |
| Sunny Lee | 507.3 | 2.1 | 505.2 | $250 | $126,300.00 |
| Kelly Higa | 520.8 | 7.1 | 513.7 | $200 | $102,740.00 |
| Roy T. Ogawa | 440.6 | 22.5 | 418.1 | $250 | $104,525.00 |
| Kurt K. Leong | 93.1 | 6.5 | 86.6 | $200 | $17,320.00 |
| Kelly Higa[30] | 44.7 | 0 | 44.7 | $175 | $7,822.50 |
| Johnny Napoleon | 135.4 | 0 | 135.4 | $100 | $13,540.00 |
| Joden Galmiche | 0.8 | 0 | 0.8 | $100 | $80.00 |
| Janis Fenton | 0.7 | 0 | 0.7 | $100 | $70.00 |

[29]Mr. Ogawa's block-billed time entries were on 12/21/2014 and 6/29/2015.   *See* Ogawa Decl., Ex. 8 (Invoices).

[30]This line reflects Ms. Higa's time entries while employed at Ogawa, Lau, Nakamura & Jew before joining Bronster Fujichaku Robbins in March 2015.

| | |
|---|---|
| Total Fees Awarded | $421,557.50 |
| Less $6,687.69 Credit[31] | $414,869.81 |
| TAX (4.712%) | $19,548.67 |
| **TOTAL** | $434,418.48 |

The Court is satisfied that Liberty Mutual is entitled to $434,418.48 in attorneys' fees and declines to adjust this lodestar amount.

### G.    Additional Expenses: Expert Fees, Travel and Litigation Costs

Liberty Mutual requests additional fees, costs and expenses related to processing Payment Bond claims, travel costs for a client representative, and miscellaneous litigation-related expenses.   It is clear from the express terms of the Stipulation and applicable GAI that Liberty Mutual is entitled to these fees and costs, including: "outside consulting fees," "costs," "court costs," "fees, costs and expenses," and "any and all such losses, fees, costs and expenses which the Surety may sustain or incur . . . in enforcing any of the covenants or conditions of this Agreement or Other Agreements."   GAI at 1.

### 1.    Consulting Fees

Liberty Mutual requests $16,631.50 for consulting fees paid to Global Construction Services, Inc. ("GCS"), which it retained to review claims by

---

[31]The Magistrate Judge twice ordered the Nan Defendants and Sumo-Nan to pay Liberty Mutual's attorneys' fees during the course of this litigation in the following amounts: $6,437.69 (Dkt. No. 167); and $250.00 (Dkt. No. 179); totaling $6,687.69.   The Court credits this amount against the total lodestar figure.

subcontractors and vendors against the Payment Bond.   *See* Bartholdt Decl. ¶ 5, Ex. 9 (GCS Invoices).   Having reviewed the requested costs and supporting documentation, the Court finds that the GCS fees are reasonable, and Liberty Mutual is entitled to recover $16,631.50 for consulting fees paid to GCS.

### 2.   Travel Costs

Liberty Mutual requests $1,293.51 in travel expenses for Sam Barker, its client representative, to attend a court-ordered settlement conference with the Magistrate Judge.   *See* Bartholdt Decl. ¶ 6.   Having reviewed the requested costs, and in the absence of a specific objection from Defendants, the Court finds that Liberty Mutual's request for travel expenses is reasonable.   As such, Liberty Mutual is entitled to recover $1,293.51 in travel expenses.

### 3.   Litigation Costs Included On Law Firm Invoices

Liberty Mutual also seeks reimbursement for additional litigation costs incurred and charged by their law firms.   The request is not broken down as a separate request for taxable costs—rather, it is built into the total amount of fees sought by the individual firms.   That is, the invoices submitted in support of Liberty Mutual's Motion include charges for costs in addition to the hourly professional

services performed by attorneys and paralegals.[32]   The additional costs include

witness fees, process server fees, deposition transcript fees, court filing fees, postage

and photocopying costs.   The Court finds that Liberty Mutual is entitled to these

costs pursuant to the GAI.   Accordingly, Liberty Mutual is entitled to recover

$7,251.58 in additional litigation-related costs.

## III.   <u>Interest On Fees and Costs</u>

Last, Liberty Mutual seeks interest on the fees and costs awarded in the

previous section.   It contends that it is entitled to such interest "from the date that it

paid the fees and costs."   Liberty Mutual Mem. In Supp. of Mot. at 13.   The

Court's prior analysis awarding interest on Liberty Mutual's Payment Bond

payments applies equally to its request for interest on its fees and costs award.

Under the unambiguous language of the GAI, Liberty Mutual is entitled to "pre- and

post-judgment interest at the maximum rate permitted by law accruing from the date

of a breach of [the GAI]."   GAI at 1.   As discussed previously, interest accrues

from the date of breach—November 17, 2014—or the date that Liberty Mutual

actually paid the fees and costs, whichever is later.

---

[32]The law firm invoices include a total of $839.60 in costs charged by Bronster Fujichaku Robbins
and $6,411.98 in costs charged by Ogawa, Lau, Nakamura & Jew.

Liberty Mutual's request for interest owed on fees and costs pursuant to the

GAI is granted in part.   The Court awards Liberty Mutual interest at the requested

rate of 10% on the following fees and costs, set forth in Table 4 below:

### TABLE 4

| Category | Amount |
|---|---|
| Attorneys' Fees | $434,418.48 |
| Consulting Fees | $16,631.50 |
| Travel Expenses | $1,293.51 |
| Additional Litigation Costs | $7,251.58 |
| **TOTAL** | $459,595.07 |

Because Liberty Mutual is entitled to interest accruing from the later of (1) the

date it made payment on fees and costs or (2) November 17, 2014, up until the date

that Defendants satisfy their obligation to pay fees and costs as determined by this

Order, the Court cannot determine at the present time the total amount of interest due

and owing.   Accordingly, upon satisfaction of Defendants' remaining obligations,

Liberty Mutual shall calculate the amount of interest owed by Defendants pursuant

to the terms of this Order.   Liberty Mutual may file a further request for relief as

needed to secure compliance with the terms of this Order.

### CONCLUSION

For the foregoing reasons, the Court determines that Defendants' remaining

obligations due to Liberty Mutual, pursuant to the GAI and the parties' April 22,

2016 Stipulation, are as follows:

| Category | Amount |
|---|---|
| Interest on Payment Bond claim payments | $243,817.22 |
| Attorneys' Fees | $434,418.48 |
| Consulting Fees | $16,631.50 |
| Travel Expenses | $1,293.51 |
| Additional Litigation Costs | $7,251.58 |
| **TOTAL** | $703,412.29 |

Upon satisfaction of Defendants' remaining obligations, Liberty Mutual shall calculate the amount of additional interest owed on its fees and costs pursuant to the terms of this Order, and that additional obligation shall be paid forthwith.   The Court reserves ruling on the exact amount of interest owed on Liberty Mutual's fees and costs, as well as enforcement of the terms of this Order, if either becomes necessary.

IT IS SO ORDERED.

DATED: March 1, 2017 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

*Liberty Mutual Ins. Co. v. Sumo-Nan LLC et al.*, CV NO 14-00520 DKW-KSC; **ORDER DETERMINING DEFENDANTS' REMAINING OBLIGATIONS TO LIBERTY MUTUAL**